# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

JAMES BLEDSOE, et al., on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

    vs.

FCA US LLC, a Delaware corporation,
and CUMMINS INC., an Indiana
corporation,

        Defendants.

Case No. 4:16-cv-14024

Hon. Terrence G. Berg

## CUMMINS INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

Defendant Cummins Inc. ("Cummins") respectfully moves this Court pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing Plaintiffs' claims against Cummins as set forth in their Consolidated and Amended Class Action Complaint ("Complaint").

1.    As set forth in Cummins' accompanying Memorandum of Law in Support, Plaintiffs have failed to state a claim for relief against Cummins. First, Plaintiffs do not have standing to assert their claims against Cummins, as they have not alleged facts demonstrating they suffered an injury in fact, or any harm fairly traceable to Cummins' alleged acts. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (allegations of "possible future injury" do not constitute an

injury in fact); *In re Mercedes-Benz Emissions Litig.*, 2:16-cv-00881, 2016 U.S. Dist. LEXIS 168535 (D.N.J. Dec. 6, 2016) (plaintiffs' "vague reference to 'advertisements and representations'" were insufficient to demonstrate that plaintiffs' alleged injuries were fairly traceable to automaker defendant). Likewise, Plaintiffs lack standing to assert claims arising under state laws for which there is no named Plaintiff resident. *See In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 656-57 (E.D. Mich. 2011).

2.     Second, the Clean Air Act ("CAA") preempts each of Plaintiffs' state law claims asserted against Cummins. *See* 42 U.S.C. § 7543(a) ("No state or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engine subject to this part."); *see also Counts v. General Motors, LLC*, No. 1:16-cv-12541, 2017 U.S. Dist. LEXIS 20277, at *33 (E.D. Mich. Feb. 14, 2017) (CAA preempts civil action brought by same Plaintiffs' counsel to the extent it is based on alleged violations of the CAA).

3.     Third, Plaintiffs have not stated a claim for relief against Cummins arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, as Plaintiffs have not alleged Cummins' underlying predicate acts with particularity, have failed to allege that Cummins acted with the requisite scienter to support their claim, and have not alleged facts demonstrating Cummins

2

was the proximate cause of Plaintiffs' alleged harms. *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315 (6th Cir. 1999) (predicate acts of wire fraud must be pled with facts demonstrating scienter); *Thomas v. Daneshgari*, 997 F.Supp.2d 754, 762 (E.D. Mich. 2014) ("Courts have repeatedly held that in RICO cases alleging mail fraud and wire fraud as the 'predicate acts,' the underlying fraudulent activities must be pled with particularity.").

4.     Fourth, Plaintiffs have failed to adequately plead their state law claims under the heightened pleading standards of Fed. R. Civ. P. 9(b). *See, e.g., Wiggins v. Argent Mortg. Co., LLC,* 945 F. Supp. 2d 817, 824-25 (E.D. Mich. 2013) (dismissing complaint alleging fraud and civil conspiracy because the "allegations lump all of the Defendants together, [and] do not identify the time, the place or the individual who made the alleged representation"); *Picard Chem. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1128 (W.D. Mich. 1996) ("Rule 9(b) does not permit plaintiffs to 'lump' defendants together, beyond the group pleading presumption, when charging them with fraudulent actions.").

5.     In further support of this Motion, Cummins relies on the accompanying Memorandum of Law in Support, the pleadings and exhibits on file, and the Federal Rules of Civil Procedure. Cummins certifies that its counsel communicated with counsel for Plaintiffs, explaining the nature of the relief to be

3

sought by way of this motion and seeking concurrence in the relief. Opposing counsel expressly denied concurrence.

WHEREFORE, Defendant Cummins Inc. respectfully requests the Court enter an Order granting this Motion, dismissing Plaintiffs' Complaint against Cummins with prejudice, and granting Cummins such further relief as the Court deems just and appropriate.

Dated:  March 31, 2017                    Respectfully submitted,

**FOLEY & LARDNER LLP**


/s/ Vanessa L. Miller
Vanessa L. Miller (P67794)
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
(313) 234-7100
vmiller@foley.com

Michael D. Leffel
150 East Gilman Street, Suite 5000
Madison, WI 53703-1482
(608) 257-5035
mleffel@foley.com

Jeffrey A. Soble
Lauren M. Loew
321 N. Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4500
jsoble@foley.com
lloew@foley.com

*Attorneys for Defendant Cummins Inc.*

4

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JAMES BLEDSOE, et al., on behalf of
themselves and all others similarly
situated,

       Plaintiffs,

  vs.

FCA US LLC, a Delaware corporation,
and CUMMINS INC., an Indiana
corporation,

       Defendants.

Case No. 4:16-cv-14024

Hon. Terrence G. Berg

## CUMMINS INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

4835-7008-2880.9

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES...................................................................... v

STATEMENT OF ISSUES PRESENTED .......................................... xvi

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
    AUTHORITY ..................................................................... xviii

INTRODUCTION ................................................................................. 1

STATEMENT OF FACTS...................................................................... 3

    I.    Facts Pertaining To Cummins That Are Germane To This
          Motion........................................................................................ 4

          A.    Cummins Developed 6.7 Liter Diesel Engines For Use In
                FCA-Manufactured Ram Trucks.................................... 4

          B.    Plaintiffs Rely On Unspecified Testing To Allege That
                The Engines Fail To Meet State And Federal Emissions
                Standards. ....................................................................... 5

          C.    Plaintiffs Are Residents Of Eleven States................... 6

    II.    Essential Facts Missing From Plaintiffs' Complaint............... 7

    III.    The Complaint Is Laden With Extraneous And Irrelevant
            Allegations. ............................................................................. 8

ARGUMENT ..................................................................................... 10

    I.    Standard of Review................................................................. 10

    II.    Plaintiffs Lack Article III Standing For Their Claims (All
          Counts)..................................................................................... 11

          A.    Plaintiffs Cannot Show Injury In Fact........................ 12

          B.    Plaintiffs' Claims Are Not Fairly Traceable To
                Cummins........................................................................ 15

i

      C.     The *Counts* Order Is Materially Distinguishable. ..................... 17

III.   Plaintiffs Lack Standing To Assert Claims Under The Laws Of States And The District of Columbia In Which They Do Not Reside (Paragraphs 246-390, 462-788, 833-1118, 1162-1246, 1291-1455, 1500-1557, 1601-1861, 1911-1955, 2029-2159, 2204-2301). ........................................................................................ 19

IV.   Plaintiffs' State-Law Claims (Paragraphs 204-2301) are Preempted. .................................................................................... 22

      A.    Section 209 of the Clean Air Act, 42 U.S.C. § 7543(a), Preempts Claims Premised On Compliance With EPA Standards. ................................................................................ 22

      B.    The *Counts* Analysis Demonstrates That The Clean Air Act Preempts Plaintiffs' Claims Against Cummins. ................ 26

          1.    Plaintiffs Cannot Base Their State-Law Claims On Alleged Representations That Cummins Complied With EPA Standards. .................................................... 26

          2.    Plaintiffs Cannot Base Their State-Law Claims On A Fraudulent Concealment Theory. .............................. 28

V.    Plaintiffs Have Not Stated A Claim Against Cummins For Violations Of RICO, 18 U.S.C. §§ 1962(c), (d) (Count I). ................ 30

      A.    Plaintiffs Fail To Adequately Allege Predicate Acts. .............. 31

          1.    Plaintiffs' General and Conclusory Allegations Do Not Satisfy the Rule 9(b) Particularity Standards for Fraud. ...................................................................... 32

          2.    Plaintiffs Fail To Plead Facts Showing Cummins Engaged In Intentional Fraud Sufficient To Establish A Predicate Act Of Mail And Wire Fraud. ........................................................................... 33

      B.    Plaintiffs' Claims Must Be Dismissed For Failing To Establish The Existence Of An Association-in-Fact-Enterprise. ................................................................................ 36

C.    Plaintiffs Fail To Allege Facts Sufficient To Show That The Purported Predicate Acts Proximately Caused Plaintiffs' Injuries. ........................................................ 37

D.    Plaintiffs Fail To State A Claim For Violation of § 1962(d) Because Plaintiffs Have Not Adequately Pled A § 1962(c) Claim. ........................................................ 39

VI.    Plaintiffs' Various State Law Claims Fail Against Cummins As a Matter of Law. ........................................................ 39

A.    Plaintiffs' California State Law Claims Fail (California Subclass Counts I-III, V). ........................................................ 40

1.    Plaintiffs Have Not Alleged Sufficient Detail Of The Misrepresentations Forming The Basis Of Their California State Law Claims. ........................... 41

2.    Plaintiffs Have Not Pled Facts Demonstrating Their Reliance On Cummins' Alleged Acts. ................ 43

B.    Plaintiffs' Texas State Law Claims Fail (Texas Subclass Counts I and III). ........................................................ 44

C.    Plaintiffs' North Carolina State Law Claims Fail (North Carolina Subclass Counts I and III) ......................................... 45

D.    Plaintiffs' Montana State Law Claims Fail (Montana Subclass Counts I and III) ........................................................ 46

E.    Plaintiffs' Tennessee State Law Claims Fail (Tennessee Subclass Counts I and III) ........................................................ 47

F.    Plaintiffs' New Mexico State Law Claims Fail (New Mexico Subclass Counts I and III) .......................................... 47

G.    Plaintiffs' Washington State Law Claims Fail (Washington Subclass Counts I and III) .................................. 48

H.    Plaintiffs' South Carolina State Law Claims Fail (South Carolina Subclass Counts I and III) ......................................... 49

4835-7008-2880.9

I.      Plaintiffs' Michigan State Law Claims Fail (Michigan Subclass Counts I and III) ........................................................ 50

J.      Plaintiffs' Minnesota State Law Claims Fail (Minnesota Subclass Counts I and III) ........................................................ 50

K.      Plaintiffs' Illinois State Law Claims Fail (Illinois Subclass Counts I and III) ........................................................ 51

L.      Plaintiffs' Other State and District of Columbia Law Claims Fail (Other States Subclasses and District of Columbia Subclass Counts I and II) ........................................ 52

CONCLUSION ................................................................................. 56

4835-7008-2880.9

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n,*
176 F.3d 315 (6th Cir. 1999)..................................................................*passim*

*Am. Fed'n of Gov't Employees v. Clinton,*
180 F.3d 727 (6th Cir. 1999).......................................................xviii, 13

*Anger v. Accretive Health, Inc.,*
No. 14-12864, 2015 U.S. Dist. LEXIS 113637 (E.D. Mich. Aug.
27, 2015)............................................................................................ 20

*Anza v. Ideal Steel Supply Corp.,*
547 U.S. 451 (2006) ...................................................................xviii, 38

*Archdiocese of San Salvador v. FM Int'l, Inc.,*
No. 05-0237, 2006 WL 437493 (D.N.H. Feb. 23, 2006)..................... 55

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................ xix, 10

*Austin-Spearman v. AARP,*
119 F. Supp. 3d 1 (D.D.C. 2015) ....................................................... 14

*Bacon v. Countrywide Bank,*
No. 11-0107, 2012 WL 642658 (D. Idaho Feb. 8, 2012) .................... 54

*Bank of Montreal v. Avalon Capital Group, Inc.,*
No. 10-591, 2012 WL 1110691 (D. Minn. Apr. 3, 2012)................... 51

*Begala v. PNC Bank Ohio N.A.,*
214 F.3d 776 (6th Cir. 2000)..........................................................36, 37

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................xix, 10, 11

*Bender v. Southland Corp.,*
749 F.2d 1205 (6th Cir. 1984)............................................................ 31

v

*Benschoter v. Hardy,*
 202 F.R.D. 216 (E.D. Mich. 2001)................................................... 12

*Berry v. Indianapolis Life Ins. Co.,*
 608 F. Supp. 2d 785 (N.D. Tex. 2009)............................................. 45

*Beshear v. Volkswage Grp. Of Am., Inc.,*
 No. 16-0027, 2016 U.S. Dist. LEXIS 68543 (E.D. Ky. May 25,
 2016)..........................................................................xviii, 24, 29

*Birdsong v. Apple, Inc.,*
 590 F.3d 955 (9th Cir. 2009)........................................................ 14

*Bixler v. Foster,*
 596 F.3d 751 (10th Cir. 2010)....................................................... 11

*Blair v. Wachovia Mortg. Corp.,*
 No. 11-566, 2012 WL 868878 (M.D. Fla. Mar. 14, 2012) ................................ 54

*Blake v. Career Educ. Corp.,*
 No. 08-0821, 2009 WL 140742 (E.D. Mo. Jan. 20, 2009) ................................ 55

*Block v. eBay, Inc.,*
 747 F.3d 1135 (9th Cir. 2014)........................................................ 44

*Brodsky v. Match.com, LLP,*
 No. 09-2066, 2010 U.S. Dist. LEXIS 105101 (N.D. Tex. Sept. 30,
 2010)................................................................................. 45

*Bumpers v. Cmty. Bank of N. Va.,*
 367 N.C. 81 (2013).................................................................. 46

*Burton v. R.J. Reynolds Tobacco Co.,*
 884 F. Supp. 1515 (D. Kan. 1995) ................................................... 55

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
 761 F.3d 732 (7th Cir. 2014)........................................................ 52

*Cannon v. U.S. Bank, NA,*
 No. 11-00079, 2011 WL 1637415 (D. Hawai'i Apr. 29, 2011) ....................... 54

*In re Caterpillar, Inc., C13 and C15 Engine Prods. Liab. Litig.,*
 No. 14-3722, 2015 U.S. Dist. LEXIS 98784 (D.N.J. July 29, 2015) ................ 25

*Clapper v. Amnesty Int'l, USA*,
    133 S. Ct. 1138 (2013) ................................................................ xviii, 13

*Compressor Eng'g Corp. v. Thomas*,
    -- F.R.D. --, No. 10-10059, 2016 WL 7473448 (E.D. Mich. Dec.
    29, 2016) ........................................................................................ 12

*Counts v. General Motors, LLC*,
    No. 16-12541, 2017 U.S. Dist. LEXIS 20277 (E.D. Mich. Feb. 14,
    2017) ...................................................................................... *passim*

*Dehko v. Holder*,
    No. 13-14085, 2014 WL 2605433 (E.D. Mich. June 11, 2014)
    (Berg, J.) ....................................................................................... 11

*Dena' Nena' Henash, Inc. v. Oracle Corp.*,
    No. 07-633, 2007 WL 3232218 (N.D. Cal. Oct. 31, 2007) ................ 54

*Destifino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) ......................................................... 42

*Diversey Corp. v. Chem-Source Corp.*,
    125 N.M. 748 (N.M. Ct. App. 1998) ................................................ 47

*Duran v. Clover Foods Co.*,
    616 F. Supp. 790 (D. Col. 1985) ..................................................... 54

*Everest v. Leviton Mfg. Co.*,
    No. 04-612, 2006 WL 381832 (Sup. Ct. Me. Jan. 13, 2006) ............. 55

*Fallick v. Nationwide Mut. Ins. Co.*,
    162 F.3d 410 (6th Cir. 1998) ......................................................... 19

*Farmers Ins. Co. of Wash. v. Vue*,
    No. 26353-3, 2009 Wash. App. LEXIS 1654 (Wash. Ct. App. July
    7, 2009) ........................................................................................ 48

*Felder's Collision Parts, Inc. v. General Motors, Co.*,
    960 F. Supp. 2d 617 (M.D. La. 2013) ............................................. 55

*Fieger v. Mich. Sup. Ct.*,
    553 F.3d 955 (6th Cir. 2009) ......................................................... 12

*Frank v. D'Ambrosi,*
    4 F.3d 1378 (6th Cir. 1993)...............................................................xix, 30, 36

*Frederico v. Home Depot,*
    507 F.3d 188 (3d Cir. 2007)............................................................... 55

*Goodman v. HTC Am., Inc.,*
    No. 11-1793, 2012 WL 2412070 (W.D. Wash. June 26, 2012) ....................... 49

*Grantham & Mann, v. Am. Safety Prods.,*
    831 F.2d 596 (6th Cir. 1987)............................................................... 38

*Greenstone v. Cambex Corp.,*
    975 F.2d 22 (1st Cir. 1992)................................................................. 36

*Grizzly Sec. Armored Express, Inc. v. Bancard Svcs., Inc.,*
    384 P.3d 68 (Mont. 2016) ................................................................. 46

*Haley v. Corcoran,*
    659 F. Supp. 2d 714 (D. Md. 2009) ...................................................... 55

*Harris v. Sand Canyon Corp.,*
    274 F.R.D. 556 (D. S.C. 2010)............................................................. 49

*Henry Schein v. Stromboe,*
    102 S.W.3d 675 (Tex. 2002)............................................................... 45

*Holmes v. Behr Process Corp.,*
    No. 15-0454, 2015 WL 7252662 (N.D. Ala. Nov. 17, 2015)........................... 54

*Hoving v. Transnation Title Ins. Co.,*
    545 F. Supp. 2d 662 (E.D. Mich. 2008).................................................. 21

*In re Ins. Brokerage Antitrust Litig.,*
    618 F.3d 300 (3rd Cir. 2010) ............................................................. 11

*Jackson v. GMC,*
    770 F. Supp. 2d 570 (S.D.N.Y. 2011).............................................xviii, 25

*Jackson v. Philip Morris Inc.,*
    46 F. Supp. 2d 1217 (D. Utah 1998)..................................................... 55

*Jarrett v. Panasonic Corp. of North America*,
   8 F. Supp. 3d 1074, 1085 (E.D. Ark. 2013) ...................................................... 54

*Jefferson v. Collins*,
   905 F. Supp. 2d 269 (D.D.C. 2012) ...................................................... 54

*JL v. New Mexico Dept. of Health*,
   165 F. Supp. 3d 1048, 1082 (D. N.M. 2016) ...................................................... 48

*Johnson v. ACE Cash Express, Inc.*,
   No. 13-1186, 2014 WL 3721947 (D. Del. July 24, 2014) ................................ 54

*Jordan v. Paccar, Inc.*,
   37 F.3d 1181 (6th Cir. 1994) ...................................................... 29

*Kearney v. Equilon Enters., LLC*,
   65 F. Supp. 3d 1033, 1043 (D. Ore. 2014) ...................................................... 55

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................... 41

*Kee v. Zimmer*,
   871 F. Supp. 2d 405 (E.D. Pa. 2012) ...................................................... 55

*Kisting v. Gregg Appliances, Inc.*,
   No. 16-0141, 2016 WL 5875007 (E.D. Wis. Oct. 7, 2016) .............................. 56

*Laccinole v. Assad*,
   No. 14-0404, 2016 WL 868511 (D.R.I. Mar. 7, 2016) ...................................... 55

*Lassen v. Nissan N. Am., Inc.*,
   -- F. Supp. 3d --, No. 15-06491, 2016 WL 5868101 (C.D. Cal.
   Sept. 30, 2016) ...................................................... 14

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ...................................................... 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ...................................................... 12

*Lillien v. Peak6 Investments, L.P.*,
   417 F.3d 667 (7th Cir. 2005) ...................................................... 51

ix

*Limestone Dev. Corp. v. Vill. of Lemont, Ill.,*
  520 F.3d 797 (7th Cir. 2008).............................................................. 11

*Lipscomb v. MERS, Inc.,*
  No. 11-0497, 2011 U.S. Dist. LEXIS 85503 (E.D. Cal. Aug. 3,
  2011)................................................................................................... 42

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ............................................................xviii, 12, 13

*Macomb Interceptor Drain Drainage Dist. v. Kilpatrick,*
  896 F. Supp. 2d 650 (E.D. Mich. 2012)........................................ 37, 38

*In re Mercedes-Benz Emissions Lit.,*
  No. 16-00881, 2016 U.S. Dist. LEXIS 168535 (D.N.J. Dec. 6,
  2016)...................................................................................xviii, 15, 16

*Merrick v. Diageo Americas Supply, Inc.,*
  805 F.3d 685 (6th Cir. 2015).............................................................. 25

*Miller v. Elliott Aviation Aircraft Sales, Inc.,*
  No. 13-0161, 2014 U.S. Dist. LEXIS 192874 (S.D. Iowa Mar. 31,
  2014)................................................................................................... 55

*Minger v. Green,*
  239 F.3d 793 (6th Cir. 2001).................................................. xix, 53, 54

*Morales v. Trans World Airlines, Inc.,*
  504 U.S. 374 (1992) ..................................................................xviii, 23

*Morris Aviation, LLC v. Diamond Aircraft Indus.,*
  536 F. App'x 558 (6th Cir. 2013) ................................................ 27, 29

*Myers v. BAC Home Loans Svcg., LP,*
  No. 13-53, 2013 WL 6231715 (D. Mont. Dec. 2, 2013) .................... 46

*Nahigian v. Juno Loudoun, LLC,*
  684 F. Supp. 2d 731 (E.D. Va. 2010)................................................. 56

*Naiser v. Unilever U.S., Inc.,*
  975 F. Supp. 2d 727 (W.D. Ky. 2013) ............................................... 55

x

*NCC Sunday Inserts, Inc. v. World Color Press, Inc.,*
    692 F. Supp. 327 (S.D.N.Y. 1988)................................................................ 54

*Oestreicher v. Alienware Corp.,*
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ...................................................... 34

*In re Packaged Ice Antitrust Lit.,*
    779 F. Supp. 2d 642 (E.D. Mich. 2011).....................................xviii, 19, 20, 21

*Parrish v. Bank,*
    No. 15-0913, 2016 WL 3906814 (W.D. Okla. July 14, 2016) ..................... 55

*Patel v. Holiday Hospitality Franchising, Inc.,*
    172 F. Supp. 2d 821 (N.D. Tex. 2001)....................................................... 44

*Philip Morris Inc. v. Angeletti,*
    358 Md. 689 (2000)..................................................................................... 53

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) .................................................................................... 52

*Phillips v. Apple, Inc.,*
    No. 15-4879, 2016 U.S. Dist. LEXIS 53148 (N.D. Cal. Apr. 19,
    2016)...................................................................................................... 43, 44

*Picard Chem. Profit Sharing Plan v. Perrigo Co.,*
    940 F. Supp. 1101 (W.D. Mich. 1996)....................................................... 42

*Ram Int'l Inc. v. ADT Sec. Servs., Inc.,*
    No. 11-10259, 2011 WL 5244936 (E.D. Mich. Nov. 3, 2011)..................... 34

*Ray v. Samsung Elecs. Am., Inc.,*
    No. 15-8540, 2016 U.S. Dist. LEXIS 79260 (S.D.N.Y. June 17,
    2016)............................................................................................................ 45

*In re Refrigerant Compressors Antitrust Litig.,*
    No. 09-02042, 2012 U.S. Dist. LEXIS 98827 (E.D. Mich. July 17,
    2012)............................................................................................................ 20

*Rosen v. Tennessee Comm'r of Fin. And Admin.,*
    288 F.3d 918 (6th Cir. 2002)............................................................xviii, 19

4835-7008-2880.9

*Ruszecki v. Nelson Bach USA LTD.,*
   No. 12-0495, 2015 U.S. Dist. LEXIS 151946 (S.D. Cal. June 25,
   2015) .................................................................................................. 40

*Ryden v. Tomberlin Auto. Group,*
   No. 11-1215, 2012 U.S. Dist. LEXIS 139212 (S.D. Ind. Sept. 27,
   2012) .................................................................................................. 55

*Sanderson v. HCA-The Healthcare Co.,*
   447 F.3d 873 (6th Cir. 2006) ............................................................ 42

*Sanford v. Nat'l Ass'n for the Self-Employed, Inc.,*
   264 F.R.D. 11 (D. Me. 2010) ............................................................ 53

*Sateriale v. R.J. Reynolds Tobacco Co.,*
   697 F.3d 777 (9th Cir. 2012) ............................................................ 43

*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
   473 U.S. 479 (1985) .......................................................................... 38

*Select Comfort Corp. v. Tempur Sealy Int'l, Inc.,*
   11 F. Supp. 3d 933 (D. Minn. 2014) ................................................ 51

*Shain v. Advanced Techs. Grp., LLC,*
   No. 16-10369, 2017 U.S. Dist. LEXIS 27438 (E.D. Mich. Feb. 28,
   2017) .................................................................................................. 50

*Shlesinger v. Bank of America, N.A.,*
   No. 11-2020, 2012 WL 2995698 (D. Nev. July 23, 2012) ................ 55

*Smith v. Commonwealth Gen. Corp.,*
   589 F. App'x 738 (6th Cir. 2014) ..................................................... 24

*Smith v. Lawyers Title Ins. Co.,*
   No. 07-12124, 2009 U.S. Dist. LEXIS 16140 (E.D. Mich. 2, 2009) ................ 20

*Smith v. Pfizer Inc.,*
   688 F. Supp. 2d 735 (M.D. Tenn. 2010) .......................................... 47

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection
   HDTV Television Litig.,*
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...................................... 41, 43

xii

*Sony/ATV Music Publishing LLC v. 1729172 Ontario, Inc.*,
No. 14-1929, 2016 WL 4239920 (M.D. Tenn. Aug. 11, 2016) ........................ 47

*Stanley v. Huntington Nat. Bank*,
No. 11-0054, 2012 WL 254135 (N.D. W. Va. Jan. 27, 2012) .......................... 56

*Storino v. Borough of Point Pleasant Beach*,
322 F.3d 293 (3d Cir. 2003) ....................................................................... 13

*Thomas Daniels Agency, Inc. v. Nationwide Ins. Co. of Am.*,
122 F. Supp. 3d 448 (D.S.C. 2015) ............................................................. 49

*Thomas v. Daneshgari*,
997 F. Supp. 2d 754 (E.D. Mich. 2014) ..................................... xix, 10, 31, 32

*Thunander v. Uponor, Inc.*,
887 F. Supp. 2d 850 (D. Minn. 2012) ......................................................... 51

*Tietsworth v. Sears, Roebuck & Co.*,
No. 09-00288, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ......................... 35

*United States v. Brown*,
147 F.3d 477 (6th Cir. 1998) ...................................................................... 33

*United States v. DeSantis*,
134 F.3d 760 (6th Cir. 1998) ...................................................................... 34

*United States v. Sinito*,
723 F.2d 1250 (6th Cir. 1983) ............................................................. xix, 39

*Varney v. R.J. Reynolds Tobacco Co.*,
118 F. Supp. 2d 63 (D. Mass 2000) ............................................................ 55

*Vild v. Visconsi*,
956 F.2d 560 (6th Cir. 1992) ............................................................ xviii, 31

*Volbers-Klarich v. Middletown Mgmt., Inc.*,
929 N.E.2d 434 (Ohio 2010) ...................................................................... 53

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*,
249 S.W.3d 301 (2008) .............................................................................. 47

4835-7008-2880.9

*In re Welding Fume Prods. Liab. Litig.*,
  245 F.R.D. 279 (N.D. Ohio 2007).................................................................52

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ......................................................................................13

*Wiggins v. Argent Mortg. Co., LLC*,
  945 F. Supp. 2d 817 (E.D. Mich. 2013)...................................................xix, 42

*Williams v. Scottrade, Inc.*,
  No. 06-10677, 2006 WL 2077588 (E.D. Mich. July 24, 2006).........................50

*Williamson v. Allstate Ins. Co.*,
  204 F.R.D. 641 (D. Ariz. 2001) ....................................................................54

*Young v. Bristol-Myers Squibb Co.*,
  No. 16-0108, 2017 U.S. Dist. LEXIS 24730 (N.D. Miss. Feb. 22,
  2017)..............................................................................................................55

**Statutes**

18 U.S.C. § 1961, *et seq.* ..........................................................................*passim*

42 U.S.C. § 7401, *et seq.* ..........................................................................*passim*

Ala. Code § 8-19-10(f) ...................................................................................52

Cal. Bus. & Prof. Code § 17500, *et seq.* ...............................................40, 41, 42, 43

Cal. Bus. & Prof. Code § 17200, *et seq.* ...........................................40, 41, 42, 43, 44

Cal. Civ. Code § 1750, *et seq.* ...............................................................40, 41, 42, 43

La. Stat. Ann. § 51:1409(A) ............................................................................52

Minn. Stat § 8.31(3)(a) ...................................................................................50

Minn. Stat. § 325.67 .......................................................................................50

Minn. Stat. § 325F.69(1) .................................................................................50

Minn. Stat. § 325F.70(1) .................................................................................50

Miss. Code Ann. § 75-24-15(4).........................................................................52

xiv

Mont. Code Ann. § 30-14-101, *et seq.* ....................................................................... 46

Mont. Code Ann. § 30-14-133(1) ............................................................................... 46

N.C. Gen. Stat. §§ 75-1.1, *et seq.* ....................................................................... 45, 46

N.M. Stat. Ann. § 57-12-1, *et seq.* ......................................................................... 48

O.C.G.A. § 10-1-399(a) ............................................................................................. 52

S.C. Code Ann. § 39-5-140(a) .................................................................................. 49

S.C. Code Ann. § 56-15-10 (b) ................................................................................. 49

Tenn. Code Ann. § 47-18-109(a)(1) .......................................................................... 47

Tex. Bus. & Com. Code § 17.41, *et seq.* ................................................................. 44

**Other Authorities**

40 C.F.R. § 86.004-2 ................................................................................................. 5

40 C.F.R. § 86.004-16 ............................................................................................... 30

40 C.F.R. § 86.1809-12 .............................................................................. 6, 22, 23, 29

46 C.F.R. §§ 86.101, *et seq.* ..................................................................................... 7

Fed. R. Civ. P. 8(a)(2) ............................................................................................... 10

Fed. R. Civ. P. 9(b) ........................................................................................... *passim*

Fed. R. Civ. P. 23 ................................................................................................. 19, 21

H.R. Rep. No. 90-728, *reprinted in* 1967 U.S.C.C.A.N. 1938 ............................... 23

U.S. Const. art. III, § 2, cl. 1 .................................................................................... 11

4835-7008-2880.9

## STATEMENT OF ISSUES PRESENTED

(1)    Where Plaintiffs have not alleged that they have incurred any financial harm as a result of any actions by Cummins Inc. ("Cummins"), do Plaintiffs have standing to assert their claims against Cummins?

Cummins says:    No.

(2)    Where Plaintiffs assert claims arising under the laws of 39 states for which there is no named Plaintiff, and thus no harm suffered in any of these 39 states, do Plaintiffs have standing to assert claims under the laws of these 39 states?

Cummins says:    No.

(3)    Where Plaintiffs' claims are premised on Cummins' violation of the Clean Air Act (the "CAA") and standards promulgated by the Environmental Protection Agency, can Plaintiffs avoid the long-reach of the CAA's broad preemption provision?

Cummins says:    No.

(4)    Where Plaintiffs do not plead facts identifying any affirmative misrepresentations by Cummins, nor any facts suggesting Cummins acted with the intent to deceive Plaintiffs, have Plaintiffs stated an actionable cause of action under the Racketeer and Influenced Corrupt Organizations ("RICO") Act?

Cummins says:    No.

4835-7008-2880.9

(5)    Where several of the state consumer protection acts under which Plaintiffs bring their claims bar class action proceedings, where Plaintiffs have failed to plead actual reliance on any alleged acts or statements by Cummins, where Cummins had no legal duty to disclose any information to Plaintiffs relating to the subject matter of this litigation, and where Plaintiffs lump the Defendants together and fail to identify separate alleged acts by Cummins, have Plaintiffs stated cognizable claims for relief for fraudulent concealment and violation of various state consumer protection acts and complied with Rule 9(b)'s heightened pleading requirement?

Cummins says:    No.

4835-7008-2880.9

## STATEMENT OF CONTROLLING
## OR MOST APPROPRIATE AUTHORITY

**I.    Plaintiffs Lack Of Standing To Assert All Claims**

- *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

- *Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138 (2013)

- *Am. Fed'n of Gov't Employees v. Clinton*, 180 F.3d 727 (6th Cir. 1999)

- *In re Mercedes-Benz Emissions Lit.*, 16-00881, No. 2016 U.S. Dist. LEXIS 168535 (D.N.J. Dec. 6, 2016)

**II.    Plaintiffs Lack Standing To Assert Claims Arising Under The Laws Of States For Which There Are No Named Plaintiff Residents.**

- *Rosen v. Tennessee Comm'r of Fin. And Admin.*, 288 F.3d 918 (6th Cir. 2002)

- *In re Packaged Ice Antitrust Lit.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011)

**III.    The Clean Air Act Preempts Plaintiffs' State-Law Claims**

- *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)

- *Beshear v. Volkswage Grp. Of Am., Inc.*, No. 16-0027, 2016 U.S. Dist. LEXIS 68543 (E.D. Ky. May 25, 2016)

- *Jackson v. GMC*, 770 F. Supp. 2d 570 (S.D.N.Y. 2011)

- *Counts v. General Motors, LLC*, No. 16-12541, 2017 U.S. Dist. LEXIS 20277 (E.D. Mich. Feb. 14, 2017)

**IV.    Plaintiffs Fail To State A RICO Claim Against Cummins**

- *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)

- *Vild v. Visconsi*, 956 F.2d 560 (6th Cir. 1992)

- *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315 (6th Cir. 1999)

xviii

- *Frank v. D'Ambrosi*, 4 F.3d 1378 (6th Cir. 1993)

- *United States v. Sinito*, 723 F.2d 1250 (6th Cir. 1983)

- *Thomas v. Daneshgari*, 997 F. Supp. 2d 754 (E.D. Mich. 2014)

## V.     Plaintiffs Have Not Adequately Pled Their State-Law Claims Against Cummins

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

- *Minger v. Green*, 239 F.3d 793 (6th Cir. 2001)

- *Wiggins v. Argent Mortg. Co., LLC*, 945 F. Supp. 2d 817 (E.D. Mich. 2013)

xix

## INTRODUCTION

Despite Plaintiffs' extensive efforts to invoke the Volkswagen scandal by citing multiple studies performed in *other* countries of *other* vehicles equipped with *other* engines, Defendant Cummins Inc. ("Cummins") is *not* Volkswagen. The 6.7 liter diesel engines at issue here are not the same diesel engines used by Volkswagen. Plaintiffs' purported Consolidated and Amended Class Action Complaint (the "Complaint" or "Compl.") is a transparent attempt to piggyback on to the Volkswagen scandal without any plausible connection to the parties and vehicles at issue here. The Court should dismiss Plaintiffs' Complaint for numerous independent reasons.

First, Plaintiffs do not have standing. Plaintiffs have not alleged any specific wrongdoing by Cummins and, also, have not alleged a single dollar in harm caused by Cummins. Instead, Plaintiffs speculate they may face some unspecified harm at some unspecified future time. Allegations of hypothetical damages, disconnected from specific Cummins action, do not satisfy the Constitution's requirement that a litigant suffer an "injury in fact." Plaintiffs' Complaint hinges on their claimed testing of one 2012 Ram 2500 truck, using a methodology that the Environmental Protection Agency ("EPA") has not approved. Plaintiffs' reliance on European studies of completely *different* automobiles equipped with completely *different* engines do not assist them in stating a plausible claim for relief.

1

Second, the Clean Air Act (the "CAA") preempts Plaintiffs' state law claims. Indeed, in a case filed in this District by the same Plaintiffs' counsel raising substantially similar allegations of vehicles equipped with defeat devices to circumvent EPA regulations, Judge Ludington recognized that the CAA preempts such claims to the extent they are based on alleged violations of the CAA. *Counts v. General Motors, LLC*, No. 16-12541, 2017 U.S. Dist. LEXIS 20277, at *33 (E.D. Mich. Feb. 14, 2017) ("*Counts*"). Each of Plaintiffs' claims rests on the allegation that the Dodge Ram Truck vehicles (the "Ram Trucks") containing Cummins engines do not meet EPA emissions standards. Given that these vehicles indisputably in fact met EPA emissions standards, this Complaint should not exist. Because Plaintiffs cannot prevail on their claims against Cummins absent proof that Cummins violated EPA standards and regulations, the CAA expressly preempts Plaintiffs' state-law claims.

Third, Plaintiffs have not stated a claim arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). Although Plaintiffs rely solely on predicate acts of mail and wire fraud, Plaintiffs do not allege that Cummins committed a single such act. Plaintiffs' general and conclusory allegations fail to distinguish Cummins' purported acts from the acts of co-defendant FCA US LLC ("FCA") or any other unspecified third-party. Further,

2

Plaintiffs do not plead facts showing that Cummins proximately caused their alleged harm.

Fourth, even if Plaintiffs had standing, and even if the CAA did not preempt Plaintiffs' state-law claims, Plaintiffs have still failed to adequately plead any claims arising under state law against Cummins. Because each of these claims sound in fraud, Plaintiffs must meet the heightened pleading standards of Rule 9(b). Plaintiffs have fallen short of this standard. Plaintiffs fail to distinguish their claims between Cummins and FCA, fail to identify any alleged statement or representation by Cummins that Plaintiffs relied upon, and fail to identify any specific act or omission that caused any specific Plaintiff harm.

## STATEMENT OF FACTS

Although Plaintiffs have dressed up their Complaint with 2301 separately-numbered paragraphs, spread out over 810 pages, to confer the false appearance of detail sufficient to meet their pleading obligations, the allegations specific to Cummins are scant.[1]

---

[1] The allegations herein are from Plaintiffs' Complaint, and are accepted as true solely for the purposes of this Motion.

4835-7008-2880.9

I.      **Facts Pertaining To Cummins That Are Germane To This Motion.**

    A.      **Cummins Developed 6.7 Liter Diesel Engines For Use In FCA-Manufactured Ram Trucks.**

Cummins and FCA "developed the 6.7 liter diesel engine with a sophisticated NOx adsorber" (hereinafter, the "Engines") that is used in certain Dodge 2500 and 3500 Ram Trucks. Compl., ¶ 11.[2] Plaintiffs allege that the NOx adsorber is "intended to reduce oxides of nitrogen (NOx) contained in the exhaust of the engine to levels sufficient to allow the vehicle to meet State and Federal emission certification requirements." *Id.*, ¶ 119. When the NOx adsorber has reached full capacity of the nitrogen it can store, Plaintiffs allege it releases hydrocarbons that interact with the nitrogen to convert it to harmless particles (during the so-called "regeneration mode"). *Id.*, ¶¶ 120-122.

Plaintiffs allege that Cummins and FCA marketed the 2500 and 3500 Ram Trucks carrying these Engines as meeting all state and federal emissions standards and offering the "strongest, cleanest, quietest best-in-class" engine on the market. *Id.*, ¶¶ 10-13. Plaintiffs rely upon a set of documents that Cummins issued to its shareholders, in which Cummins touts its commitment to developing technology that contributes to a cleaner environment. *Id.*, ¶¶ 71-77. Plaintiffs further cite press releases that Cummins issued, attesting to the production of Chrysler Group pickup

---

[2] Although not pertinent to the Motion, in truth, the adsorber is not contained in the Engine, but rather in the aftertreatment system contained in each Ram Truck.

trucks containing Cummins engines and a long-standing business relationship between Cummins and FCA that dates back to 1989. *Id.*, ¶¶ 78-86.

**B.    Plaintiffs Rely On Unspecified Testing To Allege That The Engines Fail To Meet State And Federal Emissions Standards.**

The crux of Plaintiffs' Complaint is their allegation that, contrary to the statements referenced above, the Dodge 2500 and 3500 Ram Trucks do not, in fact, "meet the relevant emission standards." *Id.*, ¶ 124. To make this allegation, Plaintiffs rely on testing performed on one, single unspecified 2012 Ram 2500 that contains a Cummins Engine, "using a portable emission measurement system (PEMS)." *Id.* Plaintiffs do not allege any facts that would support a finding they tested to any recognizable standard. Plaintiffs do not cite any EPA testing that has found the Engines to fail emissions standards. Plaintiffs do not cite any public statement of any regulatory authority in the U.S. or abroad alleging that the Engines fail to meet emissions standards.

Plaintiffs allege that Cummins evaded EPA emissions standards by installing a "defeat device" in the Engines, which caused the Ram Trucks to release emissions at a rate in excess of their performance under EPA-regulated testing conditions when operated in the real world. *Id.*, ¶¶ 181-183, 216. A defeat device is an undisclosed "auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." 40

5

C.F.R. § 86.004-2. The CAA prohibits the installation of defeat devices in heavy duty truck engines. 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1809-12(a).

### C.    Plaintiffs Are Residents Of Eleven States.

The fifteen named Plaintiffs reside in California, Texas, North Carolina, Montana, Tennessee, New Mexico, Washington, South Carolina, Michigan, Minnesota, and Illinois, respectively. Compl., ¶¶ 27-40. They each purchased Ram Trucks. *Id.*[3] Plaintiffs do not allege the circumstances of their purchase of the Ram Trucks. They do not allege what led them to purchase the Ram Trucks. They do not allege what they relied upon when deciding to purchase the Ram Trucks. Instead, the Complaint contains the same formulaic allegations for each of the fifteen Plaintiffs:

> FCA and Cummins knew about, manipulated, or recklessly disregarded the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel" as compared to gasoline vehicles, complied with United States emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy. Plaintiff selected and ultimately purchased his vehicle, in part, because of the Clean Diesel system, as represented through advertisements and representations made by the Defendants. Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine

---

[3] The allegations specific to Plaintiff Alan Strange are in a paragraph numbered "4," although it is located between Paragraphs 34-35. *See* Complaint, p. 25.

system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had high emissions compared to gasoline vehicles and the fact that the Defendants had designed part of the emissions reduction system to emit very high emissions for extended periods at a high rate of frequency during normal driving conditions. Had Defendants disclosed this design, and the fact that the Affected Vehicle actually emitted pollutants at a much higher level than gasoline vehicles do, and at a much higher level than a reasonable consumer would expect, and emitted unlawfully high levels of pollutants, and would require Plaintiff to pay out-of-pocket costs to fix it, Plaintiff would have received these disclosures, and would not have purchased the vehicle, or would have paid less for it.

*Id.*, ¶¶ 27-40 (identical allegations included for each of the four Plaintiffs).

Plaintiffs seek "out-of-pocket loss and future attempted repairs, future additional fuel costs," and other forms of monetary damages, including treble damages, punitive damages, and the recovery of attorneys' fees. *Id.*, ¶ 25.

## II.   Essential Facts Missing From Plaintiffs' Complaint.

Plaintiffs' Complaint lacks numerous factual allegations that are vital to pleading their claims against Cummins. While Plaintiffs' alleged PEMS testing of a single Ram Truck is at the center of Plaintiffs' claims against Cummins, Plaintiffs do not specify when or where the testing was conducted, or who performed the testing. Plaintiffs likewise do not specify whether the testing was performed by someone qualified to perform such testing, or in a manner consistent with EPA regulations. *See* 46 C.F.R. §§ 86.101 *et seq.* Plaintiffs also do not allege whether the subject vehicle belonged to any of the named Plaintiffs, the condition

7

of the subject vehicle, whether the subject vehicle had been modified, or even how Plaintiffs acquired the subject vehicle. These omissions are critical, as the PEMS method upon which Plaintiffs rest their theory has never been adopted as a measure of compliance under any regulation issued by the EPA. If Plaintiffs did not perform the test in compliance with EPA regulations, the results of Plaintiffs' PEMS testing are meaningless.

Plaintiffs' conclusory allegations that Cummins made misrepresentations are likewise devoid of required facts. First, Plaintiffs do not allege facts establishing that Cummins knew that the Engine would not meet emission standards. Second, Plaintiffs do not cite any promotional materials or campaigns by Cummins to the general population relating to the Engines. Third, Plaintiffs do not identify any statements or advertisements from Cummins on which Plaintiffs relied to buy the Ram Trucks. Fourth, Plaintiffs do not allege any concrete harm that they suffered because of Cummins' alleged actions. They do not identify a single dollar in harm incurred arising out of their purchase of Ram Trucks and attributable to misconduct by Cummins.

## III.   The Complaint Is Laden With Extraneous And Irrelevant Allegations.

Rather than allege these required facts, Plaintiffs' Complaint is replete with allegations that do not pertain to Cummins, FCA or Plaintiffs. The first company referenced in Plaintiffs' Complaint is not Cummins, not FCA, but Volkswagen

4835-7008-2880.9

Group of America ("VW")—a non-party. *See* Compl., ¶ 4. Plaintiffs devote multiple paragraphs to what they call the "Worldwide Emissions Scandal," in which VW admitted to manufacturing diesel cars containing "defeat devices" that allowed VW to flout emissions standards. *See id.*, ¶¶ 1, 4-8, 107-113. Plaintiffs also repeatedly reference various studies of European automobiles, in which certain vehicles were found to emit more nitrogen "on real world trips while they passed laboratory tests." *Id.*, ¶ 108; *see also id.*, ¶¶ 110-113. Plaintiffs do not allege any connection between VW's admissions and the European studies and Cummins. That is because ***there is no such connection***—Cummins did not manufacture any engines for VW that were subject to the recall, and neither Cummins nor its engines are the subject of ***any*** of the studies that Plaintiffs cite. Plaintiffs' allegations regarding foreign studies of different automobiles equipped with engines made by different manufacturers have no bearing on this case. *See id.,* ¶¶ 108-113.

Plaintiffs' Complaint also includes numerous allegations regarding the EPA's Notice of Violation issued in January 2017 pertaining to the model year 2014-2016 Dodge Ram 1500 EcoDiesel and 2014-2016 Jeep Grand Cherokee EcoDiesel vehicles. *Id.*, ¶¶ 114-129. However, these vehicles are not equipped with Cummins engines (and Plaintiffs do not allege otherwise).

9

## ARGUMENT

I. **Standard of Review.**

Federal Rule of Civil Procedure 8(a)(2) requires Plaintiffs to set forth in their Complaint "a short and plain statement of the claim showing that [they are] entitled to relief." Fed R. Civ. P. 8(a)(2). This requires Plaintiffs to allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must disregard conclusory allegations, as "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Thomas v. Daneshgari*, 997 F. Supp. 2d 754, 759 (E.D. Mich. 2014) (Berg, J.) (quoting *Iqbal*, 556 U.S. at 678).[4]

Plaintiffs' fraud allegations face a heightened pleading standard requiring them to "state with particularity the circumstances constituting fraud or mistake." Fed R. Civ. P. 9(b). This standard requires "'a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Advocacy Org. for Patients and Providers v. Auto Club*

---

[4] A compendium of unpublished cases is attached as Exhibit A.

10

*Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir. 1999) (quoting *Coffey v. Foamex L.P.,* 2

F.3d 157, 161-62 (6th Cir. 1993)). Moreover, Plaintiffs must allege facts sufficient

"to support an inference that [the alleged misrepresentations] were knowingly

made.'" *Id.* (quoting *Coffey,* 2 F.3d at 162).

Given the expensive costs associated with RICO cases and the extensive

discovery commensurate with RICO allegations, Plaintiffs face more demanding

pleading requirements. *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 370 (3rd

Cir. 2010) (RICO defendants should not be subjected to the expense of discovery

on the basis of threadbare claim); *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir.

2010) (affirming dismissal of RICO complaint); *Limestone Dev. Corp. v. Vill. of

Lemont, Ill.,* 520 F.3d 797, 802-03 (7th Cir. 2008) (*Twombly* "teaches that a

defendant should not be forced to undergo costly discovery unless the complaint

contains enough detail, factual or argumentative, to indicate that the Plaintiff has a

substantial case").

## II.    Plaintiffs Lack Article III Standing For Their Claims (All Counts).

It is a bedrock principle of Constitutional law that federal courts may hear

only "cases or controversies." U.S. Const. art. III, § 2, cl. 1. This is a "cradle-to-

grave requirement that must be met in order to file a claim in federal court and that

must be met in order to keep it there." *Dehko v. Holder,* No. 13-14085, 2014 WL

2605433, at *3 (E.D. Mich. June 11, 2014) (Berg, J.) (quoting *Fialka-Feldman v.*

*Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011)). From Article III's limitation of the judicial power to resolving "cases" and "controversies," courts have deduced a set of requirements that together make up the "irreducible constitutional minimum of standing." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (internal quotation omitted). Plaintiffs must allege sufficient facts demonstrating that they suffered (1) an "injury in fact," (2) that is "fairly traceable" to the alleged acts of the defendant, and (3) it is "likely, as opposed to merely speculative," that a favorable decision of the Court will redress their asserted injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Fieger v. Mich. Sup. Ct.*, 553 F.3d 955, 962 (6th Cir. 2009); *Benschoter v. Hardy*, 202 F.R.D. 216, 220 (E.D. Mich. 2001). Plaintiffs bear the burden of meeting each element. *Benschoter*, 202 F.R.D. at 220. Plaintiffs have not met this burden.

### A.    Plaintiffs Cannot Show Injury In Fact.

An injury in fact "must be an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. An injury is not "concrete and particularized" unless it "affect[s] the plaintiff in a personal and individual way" and "must actually exist." *Compressor Eng'g Corp. v. Thomas*, -- F.R.D. --, No. 10-10059, 2016 WL 7473448, at *9 (E.D. Mich. Dec. 29, 2016) (quoting *Soehnlen*

12

*v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016)). Allegations of "***possible future injury***" do not constitute an injury in fact. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Plaintiffs' allegations of harm are typical examples of speculation of future injury. Plaintiffs contend that Cummins caused them harm because "***when and if*** FCA recalls the Affected Vehicles and degrades the diesel engine performance and fuel efficiency in order to make the Affected Vehicles compliant with EPA standards, Plaintiffs and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased." Compl., ¶ 133 (emphasis added). However, if one cannot describe an injury "without beginning the explanation with the word 'if,'" then the plaintiff's asserted harm is, "in reality, conjectural." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 297-98 (3d Cir. 2003); *see also Am. Fed'n of Gov't Emps. v. Clinton*, 180 F.3d 727, 731 (6th Cir. 1999) ("Numerous acts and facts may injure [plaintiffs] in some unknowable and speculative fashion, but something more is needed to establish standing to sue."). Plaintiffs' allegations are precisely the type of "some day" speculation that cannot establish standing. *Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or

4835-7008-2880.9

indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

Plaintiffs' allegation that they would not have purchased the Ram Trucks had they known of those vehicles' alleged higher emissions at the time of purchase, Compl., ¶ 133, does not save them. To establish injury in fact at the pleading stage, Plaintiffs must allege more than that they overpaid for an allegedly defective product. *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 973 (C.D. Cal. 2014). Courts reject assertions of standing based on similar claims of overpayment, recognizing their speculative nature. *See, e.g., Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (affirming dismissal explaining that claims of overpayment are insufficient because "the alleged loss in value does not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk of hearing loss to other consumers who may or may not choose to use their iPod in a risky manner"); *Lassen v. Nissan N. Am., Inc.*, -- F. Supp. 3d --, No. 15-06491, 2016 WL 5868101, at *10 (C.D. Cal. Sept. 30, 2016) (dismissal where claimed injury from overpayment of vehicles because the price of the defective key fobs was included in the vehicles' price and because the value of their vehicle had diminished); *Austin-Spearman v. AARP*, 119 F. Supp. 3d 1, 13 (D.D.C. 2015) (dismissing complaint due to speculative nature of harm, explaining "a plaintiff is not entitled to demand perfect realization of every hope and dream

14

with respect to contract performance; instead, the plaintiff has received the benefit of her bargain where the defendant has substantially performed on the contract").

Plaintiffs received precisely what they bargained for—Ram Trucks that passed EPA emissions testing. Plaintiffs do not allege any facts demonstrating that the real-world emissions performance of the Engines, following approval by CARB and EPA, was an integral basis for their purchase, nor do they allege that Plaintiffs' Ram Trucks are even failing emissions standards.  Nor have Plaintiffs alleged facts plausibly showing that the Ram Trucks' resale value has, in fact, lowered because of the acts alleged in the Complaint. Plaintiffs' assertions of overpayment are simply another form of their speculative allegations of potential harm that are insufficient to confer Article III standing.

### B.    Plaintiffs' Claims Are Not Fairly Traceable To Cummins.

In a nearly identical case involving diesel emissions, the Court held that Plaintiffs' claims were not fairly traceable so as to establish standing. *In re Mercedes-Benz Emissions Litig.*, 2:16-cv-00881, 2016 U.S. Dist. LEXIS 168535 (D.N.J. Dec. 6, 2016) ("*Mercedes*"). As in this case, the same Plaintiffs' counsel rested their claims on fraud and misrepresentation, alleging that Mercedes misled consumers into purchasing vehicles by misrepresenting the environmental impact of these vehicles during on-road driving. *Id.* at *1. And like here, the *Mercedes* plaintiffs relied on representations made in press releases and advertisements. *Id.* at

15

*2-3. The *Mercedes* plaintiffs alleged that they would not have purchased the vehicles and/or would have paid less for them had Mercedes been truthful in its representations regarding emissions. *Id.* at *2-3.

The *Mercedes* court held that these allegations did not confer standing. *Id.* at *12-14. The plaintiffs' "vague reference to 'advertisements and representations' [wa]s insufficient to prove reliance (or 'causation') on any alleged misrepresentations." *Id.* at *18. While the plaintiffs' complaint referenced many advertisements, the court held that the allegations were insufficient because "no plaintiff has alleged that he or she relied upon any of the cited advertisements in deciding to lease or purchase one of Defendants' vehicles." *Id.* at *20. Plaintiffs could not hinge their causation element of standing on general advertising. *Id.*

Plaintiffs' claim against Cummins is even further attenuated than in *Mercedes*. Plaintiffs do not identify any advertisements allegedly issued or sponsored by Cummins concerning the Engines. Instead, the documents on which Plaintiffs rely are press releases or other materials to Cummins' investors. Compl., ¶¶ 71-86. And even if Plaintiffs had alleged the existence of any such advertisements issued or sponsored by Cummins, no individual Plaintiff alleged that he relied upon any particular advertisement when deciding to purchase a Ram Truck. Accordingly, Plaintiffs have not alleged facts sufficient to show that any such injury is "fairly traceable" to any alleged actions by Cummins.

16

4835-7008-2880.9

## C.     The *Counts* Order Is Materially Distinguishable.

In *Counts*, Judge Ludington rejected the Defendants' standing challenge, concluding that the *Counts*' plaintiffs had adequately pled an "injury in fact" that was "fairly traceable" to GM's alleged conduct. *Counts*, 2017 U.S. Dist. LEXIS 20277, at *18-22. The court's reasoning as to each of these holdings, however, does not apply to Plaintiffs' allegations as to Cummins.

First, in concluding that the *Counts* plaintiffs had adequately alleged an "injury in fact" caused by GM's deceptive behavior, the court relied on the plaintiffs' allegations recounting "numerous studies and reports from European authorities finding that GM vehicles are noncompliant with European emission regulations, despite meeting those regulations when tested in laboratory settings." *Id.* at *17. Judge Ludington rejected GM's argument that these studies were not probative to the *Counts* plaintiffs' allegations of harm because they involved different GM vehicles.  In the court's view, the studies plausibly showed the same activity occurred in the Chevrolet Cruze vehicles at issue in *Counts* because "GM's vehicles share common designs, including engines" and "GM does not start anew each time it designs a vehicle." *Id.* at *18. That reasoning does ***not*** apply to Cummins. ***None*** of the studies cited in Plaintiffs' Complaint involved a Cummins engine, much less one of the Engines at issue in this case. *See* Compl., ¶¶ 108-113. As a result, there is no "common design" connecting the Engines at issue here to

17

any engine in the unrelated studies or any engine found to have exceeded emissions standards under real world conditions.

Second, in declining to follow *Mercedes*, Judge Ludington concluded that to meet the "fairly traceable" requirement under Sixth Circuit precedent, "the plaintiff need only allege injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Counts*, 2017 U.S. Dist. LEXIS 20277, at *24 (quoting *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 796 (6th Cir. 2009) (internal quotations omitted)). The court held GM's alleged conduct met this standard because GM engaged in "false advertising [that] created an artificially high market price that Plaintiffs paid" for the vehicles. *Id.* at *25. Judge Ludington concluded that this advertising by GM, when paired with the alleged installation of a defeat device, rendered the plaintiffs' harms "fairly traceable" to GM. *Id.* Here, however, Plaintiffs have not alleged that Cummins engaged in any "false advertising" relating to the Engines. Plaintiffs do not identify a single Cummins advertisement or marketing statement published to induce Plaintiffs (or other consumers) to purchase the Ram Trucks equipped with the Engines.[5] As a result, Plaintiffs' alleged harm is not fairly traceable to Cummins' alleged actions.

---

[5] Moreover, the CAA preempts state-law claims premised on the installation of defeat devices in the Engines, as the CAA expressly prohibits the use of such

### III.   Plaintiffs Lack Standing To Assert Claims Under The Laws Of States And The District of Columbia In Which They Do Not Reside (Paragraphs 246-390, 462-788, 833-1118, 1162-1246, 1291-1455, 1500-1557, 1601-1861, 1911-1955, 2029-2159, 2204-2301).

Plaintiffs are residents of fifteen states. *See* Compl., ¶¶ 27-40. Yet, Plaintiffs assert claims arising under the laws of every state and the District of Columbia. As a matter of law, Plaintiffs cannot assert claims arising under the laws of states to which they have no connection. "[A]t the outset of litigation, class representatives without personal standing cannot predicate standing on injuries suffered by members of the class but which they themselves have not or will not suffer." *Rosen v. Tennessee Comm'r of Fin. and Admin.*, 288 F.3d 918, 928 (6th Cir. 2002); *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (a "potential class representative must demonstrate individual standing vis-à-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action"). Plaintiffs cannot obtain relief under the laws of states (and the District of Columbia) where they do not even reside and where they cannot have been injured. *See In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011). That Plaintiffs attempt to certify Rule 23 subclasses consisting of consumers in each of these states and D.C. does not change the result. *Id.* at 656-57; *see also id.*

---

defeat devices. *See infra,* § 4. As a result, to the extent that Plaintiffs' assertions of standing depend upon their allegations that Cummins employed defeat devices, Plaintiffs cannot proceed on any such claims asserting violations of state law.

19

at 655-56 (citing numerous cases where courts considered standing issues before class certification and found that named plaintiffs could not bring claims from states in which they do not reside). The "claims of states in which [Plaintiffs] do not reside do 'little more than name the preserve on which they intend to hunt.'" *Id.* at 658 (quoting *Cornelius v. Fidelity Nat'l Title Co.*, No. 08-754, 2009 WL 596585, at *9 (W.D. Wash. Mar. 9, 2009)); *see also In re Refrigerant Compressors Antitrust Litig.*, No. 09-02042, 2012 U.S. Dist. LEXIS 98827, at *27-29 (E.D. Mich. July 17, 2012) (following *Packaged Ice* and dismissing claims made under the laws of states where the named plaintiffs did not reside) (quoting *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 157 (E.D. Pa. 2009)).

The majority of courts in this District have concluded that standing should be decided before the class certification stage, recognizing that a "ruling as to the named plaintiff's standing depends in no way upon the standing of proposed class members" so that "the named plaintiffs' standing is not 'logically antecedent' to the issue of class certification." *See Packaged Ice*, 779 F. Supp. 2d at 655; *see also Anger v. Accretive Health, Inc.*, No. 14-12864, 2015 U.S. Dist. LEXIS 113637, at *13 (E.D. Mich. Aug. 27, 2015); *In re Refrigerant Compressors Antitrust Litig,*, 2012 U.S. Dist. LEXIS 98827, at *29; *Smith v. Lawyers Title Ins. Co.*, No. 07-12124, 2009 U.S. Dist. LEXIS 16140 (E.D. Mich. 2, 2009) (each considering standing issues prior to class certification and holding that plaintiffs cannot assert

20

claims arising under states for which there is no named plaintiff resident); *but see Counts*, 2017 U.S. Dist. LEXIS 20277, at \* 30; *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008) (declining to address standing prior to class certification briefing). These courts have recognized that to defer analysis of standing until after a class is certified "would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union." *Packaged Ice*, 779 F. Supp. 2d at 655 (quoting *Wellbutrin XL Antitrust Litig.*, 260 F.R.D. at 155).

The court in *Counts* recognized these very risks. *See Counts*, 2017 U.S. Dist. LEXIS 20277, at \*29 (deferring standing inquiry until after class certification could allow the case to "proceed[] for months, at considerable expense to the parties, before a Court without jurisdiction," and stating such an "outcome is unacceptable"). Nevertheless, although it conceded that "deferring the question of standing for purpose of rule 23 may subject GM to discovery on all claims, including those which Plaintiffs have standing to bring only if the class is certified," the *Counts* court erroneously concluded this approach was "acceptable." *Id.* The *Counts* court justified postponing its standing inquiry because "the crux of Plaintiffs' claims (and thus the crux of the discovery sought)" concerned whether GM's engines were equipped with a defeat device. *Id.* ("If GM designed a 'defeat

21

device' for the Chevrolet Cruze, every Chevrolet Cruze will presumably have that device, regardless of where it was manufactured or sold").

This reasoning, respectfully, is incomplete. The *Counts* court held that the CAA preempts any state law claim based on alleged violations of that statute. *Counts*, 2017 U.S. Dist. LEXIS 20277, at *33. The CAA, in turn, expressly bars the use of defeat devices. *See* 42 U.S.C. § 7522(a)(3)(b); *see also* 40 C.F.R. § 86.1809-12(a) ("No new light-duty vehicle, light-duty truck, medium-duty passenger vehicle, or complete heavy-duty vehicle shall be equipped with a defeat device"). Thus, discovery will not be centralized and focused solely on whether the Engines are equipped with defeat devices because, under the CAA, Plaintiffs cannot proceed with their state-law claims based on a theory that the Engines were equipped with defeat devices. As a result, Cummins will face significant prejudice as a result of expanded discovery if the Court delays its standing analysis of Plaintiffs' state-law claims. Accordingly, the Court should dismiss the state law claims asserted in paragraphs 246-390, 462-788, 833-1118, 1162-1246, 1291-1455, 1500-1557, 1601-1861, 1911-1955, 2029-2159, 2204-2301 with prejudice.

**IV.    Plaintiffs' State-Law Claims (Paragraphs 204-2301) are Preempted.**

**A.    Section 209 of the Clean Air Act, 42 U.S.C. § 7543(a), Preempts Claims Premised On Compliance With EPA Standards.**

Congress enacted the CAA to "prevent a chaotic situation from developing in interstate commerce in new motor vehicles" by exerting federal oversight of the

22

manufacture of automobiles. H.R. Rep. No. 90-728, *as reprinted in* 1967 U.S.C.C.A.N. 1938, 1956-57. The CAA accomplishes Congress's mission two ways. First, under the authority granted to it by the CAA, the EPA has established uniform emission standards and testing protocols for motor vehicles in the United States, along with a set of enforcement provisions and penalties for ensuring compliance with these regulations. *See* 42 U.S.C. § 7521.[6] Second, Congress included a broad preemption provision in the CAA to prevent precisely the type of *ad hoc* emission standards that Plaintiffs seek to impose here.[7]

Section 209 of the CAA provides in pertinent part: "No state or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engine subject to this part." 42 U.S.C. § 7543(a). Congress's deployment of the phrase "relating to" signifies its desire to be "deliberately expansive" and to "express a broad preemptive purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84

---

[6] These regulations include 40 C.F.R. § 86.1809-12, which prohibits the use of "defeat devices" to circumvent emissions standards in normal vehicle use.

[7] Congress carved out an exception that allows California, upon EPA approval, to establish its own emission standards and regulations. CAA § 209(b), 42 U.S.C. § 7543(b). Nothing in Section 209, however, empowers Plaintiffs to enforce their own emission standards based on a test procedure that is not based on any regulations promulgated by EPA or the California Air Resources Board ("CARB").

23

(1992); *see also Smith v. Commonwealth Gen. Corp.*, 589 F. App'x 738, 744 (6th Cir. 2014) ("Courts give an expansive construction to the term 'relates to.'").

Plaintiffs' state-law claims fall within the broad reach of Section 209's preemption provision, as these claims reflect Plaintiffs' attempt to "enforce" a "standard relating to the control of [vehicle] emissions." Plaintiffs' case is premised on their claim that the Ram Trucks do not meet emission standards. Plaintiffs allege that Defendants engaged in fraud in the emissions application and certification process through the implementation of a defeat device in the Engines, allowing FCA to sell vehicles that do not meet emissions standards. Compl., ¶¶ 124, 174, 213-216, 224. The alleged falsity of Cummins' and FCA's "misrepresentations" hinges on whether the Ram Trucks containing the Engines are in violation of emissions standards. If the Ram Trucks meet the EPA's emissions standards, then the factual basis underlying each of Plaintiffs' claims falls away. Put another way, Plaintiffs seek to "enforce" their PEMS testing "standard" on the Ram Trucks over the EPA testing that resulted in the EPA's approval of the Engines.

Courts confronted with similar state law claims alleging the use of defeat devices have uniformly concluded that the CAA preempts such claims. *See Beshear v. Volkswagen Grp. of Am., Inc.*, No. 16-0027, 2016 U.S. Dist. LEXIS 68543, at *12 (E.D. Ky. May 25, 2016) ("*Volkswagen*") (CAA preempts Kentucky

24

tort and Consumer Protection Act claims where claims were "premised on allegations that Defendants' purportedly 'clean diesel' vehicles actually emitted levels of nitrogen oxides (NOx) by a factor of up to forty (40) times the allowable emission limits" through the use of defeat devices); *Jackson v. GMC*, 770 F. Supp. 2d 570, 579 (S.D.N.Y. 2011) (CAA preempts negligence and strict products liability claims where plaintiffs alleged design of defendants' buses violated EPA's emissions standards); *see also In re Caterpillar, Inc., C13 and C15 Engine Prods. Liab. Litig.*, No. 14-3722, 2015 U.S. Dist. LEXIS 98784, at *33 (D.N.J. July 29, 2015) (CAA did not preempt certain breach of warranty claims where "the alleged failure [asserted in these claims] is not a failure to perform as an EPA-compliant engine, but a failure to perform as an engine at all," while CAA did preempt claim alleging defendant breached express warranty that vehicle complied with EPA emissions standards).[8]

---

[8] *Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685 (6th Cir. 2015) is not to the contrary. *Merrick* involved compliance with the CAA's emissions standards by a whiskey distillery, not a vehicle. As a result, § 209's preemption of any efforts by states to "enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines" did not apply to *Merrick*.

25

**B.** **The *Counts* Analysis Demonstrates That The Clean Air Act Preempts Plaintiffs' Claims Against Cummins.**

    **1.** **Plaintiffs Cannot Base Their State-Law Claims On Alleged Representations That Cummins Complied With EPA Standards.**

Although Judge Ludington declined to dismiss the *Counts'* complaint on preemption grounds, his analysis demonstrates why Plaintiffs cannot proceed with their state law claims here. The *Counts* court made two holdings that in tandem preclude Plaintiffs from pursuing their state law claims against Cummins.

First, the court held that to "the extent Plaintiffs are seeking damages based solely on GM's violations of the CAA, those claims are preempted." *Counts*, 2017 U.S. Dist. LEXIS 20277, at *33; *see also id* at *35 ("to the extent Plaintiffs are suing GM for manufacturing a vehicle that emits 'more than a certain amount of NOx or particulate emissions' in violation of EPA regulations or that is not equipped with properly functioning and federally required 'emission-control technology,' their claims are preempted by the CAA").

Second, the court held that the affirmative statements forming the basis of Plaintiffs' misrepresentation claims constituted mere "puffery." *Id.* at *54 (quoting *Seaton v. TripAdvisor, LLC*, 728 F.3d 592, 598 (6th Cir. 2013)). The court concluded that "statements regarding cleanliness are nonactionable puffery, especially when nothing about the statement is quantifiable." *Id.* at *56. The court likewise dismissed any claims based on alleged statements touting the Cruze's

26

"more efficient combustion" and improved "performance." *Id.* The only verifiable

assertion that could plausibly support an actionable claim for fraud, Judge

Ludington recognized, was GM's alleged statement that "Cruze Diesel emissions

are below strict U.S. environmental standards." *Id.* at \*59. But as the court had

otherwise held, the CAA preempts any claims that relied on GM's assertions that

the Cruze complied with EPA standards.

This same analysis applies to Plaintiffs' Complaint here. Plaintiffs premise

their claims against Cummins on specific statements to Cummins shareholders:

- Cummins builds engines to "lead to a cleaner, healthier, safer environment,"

- the "application of the right technology on the Dodge Ram is an extension of the joint clean diesel development work Cummins and DaimlerChrysler have performed together for nearly two decades,"

- the "6.7L diesel engine is the strongest, cleanest, quietest heavy-duty diesel pickup truck engine available on the market,"

- "[i]n 2007, Dodge and Cummins produced the cleanest heavy-duty diesel pickup in the market," and

- "Cummins is proud to supply engines for the award-winning Ram Heavy Duty and to continue working with [FCA] to develop best-in-class products that customers can trust and depend on now and in the future."

*See* Compl., ¶¶ 73-74, 76, 79, 82, 85-86. These statements are all non-actionable

puffery. *See, e.g., Morris Aviation, LLC v. Diamond Aircraft Indus.*, 536 F. App'x

558, 563 (6th Cir. 2013) (affirming dismissal of fraud claims arising from sale of

airplane, holding attestation's of plane's engine's "quality" and "reliability" were

27

"plainly self-serving opinions, puffery on which no buyer would reasonably rely");

*see also Counts*, 2017 U.S. Dist. LEXIS 20277, at *56-57 (holding similar

assertions and statements made in advertisements were non-actionable puffery).

Once these non-actionable statements of puffery are stripped from Plaintiffs'

Complaint, the only alleged misrepresentations attributed to Cummins that remain

are statements attesting to the Engines' compliance with EPA emissions standards.

*See* Compl., ¶ 71 ("Every Dodge Ram pickup will comply with the 2010 NOx and

PM emissions standards"), ¶ 78 ("Cummins engineers determined that certifying

the Dodge Ram pickup truck to the 0.2 g/mi 2010 NOx emission standard early

would provide Cummins with significant commercial and technical advantages"), ¶

82 ("The 6.7L diesel engine . . . is the first to meet the 2010 EPA emissions

regulations in all 50 states"), ¶ 85 ("Dodge and Cummins produced the cleanest

heavy-duty diesel pickup in the market by meeting U.S. Environmental Protection

Agency (EPA) 2010 emissions levels a full three years in advance"). As the court

in *Counts* recognized, Plaintiffs cannot base their claims on any of these alleged

assertions because the CAA preempts all such claims.

> **2.     Plaintiffs Cannot Base Their State-Law Claims On A Fraudulent Concealment Theory.**

The *Counts* court correctly held that the CAA preempted state-law claims

premised on violations of the CAA and that the alleged misrepresentations forming

the basis of those claims were non-actionable puffery, as both are supported by

28

substantial Sixth Circuit case law. *See, e.g., Morris Aviation*, 536 F. App'x at 563 (observing that commercial puffery cannot support a fraud claim); *Jordan v. Paccar, Inc.*, 37 F.3d 1181, 1185 (6th Cir. 1994) (same); *Volkswagen*, 2016 U.S. Dist. LEXIS 68543, at *12 (CAA preempts state-law claims alleging violation of EPA). The *Counts* court erred, however, in nevertheless allowing the plaintiffs to proceed with their complaint under a fraudulent concealment theory. It did so on the basis that the plaintiffs had made an "initial showing that GM had a duty to disclose the existence of a 'defeat device.'" *Counts*, 2017 U.S. Dist. LEXIS 20277, at *61-62 ("If Plaintiffs' allegations are true, GM installed a 'defeat device' on the Cruze. The only plausible purpose of such a device is to create the appearance of low emissions without the reality of low emissions. . . . This is sufficient to constitute active concealment"). This conclusion errs by overlooking the fact that the inclusion of a defeat device violated the CAA. *See* 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1809-12(a) ("No new light-duty vehicle, light-duty truck, medium-duty passenger vehicle, or complete heavy-duty vehicle shall be equipped with a defeat device"). Thus, by the reasoning of the *Counts* court's own preemption analysis, plaintiffs' claims were contingent on GM's compliance with the CAA; the CAA preempts any such claims.

Here, Plaintiffs cannot base their claims on the alleged concealment of a defeat device in the Engines. The CAA equally bars the use of defeat devices

29

(Section 203(a)(3)(B)) and the marketing of engines that exceed emission standards (Section 203(a)(1)). The implementation of defeat devices is inextricably tied to allegations of noncompliance with EPA emission standards. This is because a defeat device is, by definition, a device that "reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation." 40 C.F.R. § 86.004-16. Accordingly, a claim based on Cummins' alleged use of a defeat device is materially *identical* to a claim based on Cummins' assertion that it complied with relevant emission standards. In essence, Plaintiffs' claims are premised on their allegation that the Engines do not meet EPA emissions standards and thus violate the CAA, and Plaintiffs seek to impose a penalty on Cummins for this alleged failure to meet such standards. Section 209 of the CAA expressly preempts this attempt to enforce emissions standards for Plaintiffs' private gain.

## V.      Plaintiffs Have Not Stated A Claim Against Cummins For Violations Of RICO, 18 U.S.C. §§ 1962(c), (d) (Count I).

To adequately plead an underlying RICO claim in violation of 18 U.S.C. § 1962(c), Plaintiffs must plead facts plausibly demonstrating "1) there were two or more predicate offenses; 2) the existence of an enterprise engaged in or affecting interstate or foreign commerce; 3) a nexus between the pattern of racketeering activity and the enterprise; and 4) an injury to [their] business or property by reason of the above." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993)

30

(citing *Beneficial Standard Life Ins. Co. v. Madariaga,* 851 F. 2d 271, 274 n.5 (9th Cir. 1988)). Plaintiffs' allegations do not establish that Cummins committed two predicate offenses, was engaged in a RICO enterprise, or that Plaintiffs suffered an injury to their business or property by reason of Cummins' alleged actions.

### A.     Plaintiffs Fail To Adequately Allege Predicate Acts.

Plaintiffs' RICO claim rests solely on allegations that Defendants engaged in predicate acts of mail and wire fraud. *See* Compl., ¶¶ 153-54, 156-57, 159-61. "Courts have repeatedly held that in RICO cases alleging mail fraud and wire fraud as the 'predicate acts,' the underlying fraudulent activities must be pled with particularity." *Thomas v. Daneshgari,* 997 F. Supp. 2d 754, 762 (E.D. Mich. 2014). Given the frequent invocation of the mail and wire fraud predicate act and its potential for abuse, "[c]ourts rigorously enforce Fed. R. Civ. P. 9(b)'s pleading requirements in RICO cases in which the 'predicate acts' are mail fraud and wire fraud, and have further required" plaintiffs to allege when and how each mailing furthered the scheme. *Id.* at 763; *see also Vild v. Visconsi,* 956 F.2d 560 (6th Cir. 1992) ("To satisfy the requirements [of Rule 9(b)], the plaintiff must allege specifically times, places, contents, and victims of the underlying fraud."); *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir. 1984) (RICO claims dismissed because plaintiff "failed to allege the time, place, and contents of the specific misrepresentations upon which he relied"). The Complaint lacks these details.

31

  1. **Plaintiffs' General and Conclusory Allegations Do Not Satisfy the Rule 9(b) Particularity Standards for Fraud.**

  Plaintiffs do not allege the "when and how" of the alleged mail fraud. While Plaintiffs quote Cummins press releases and investor reports, Compl., ¶ 71-86, they do ***not*** allege that they relied on any such statements in deciding to purchase a Ram Truck.[9] Plaintiffs also do not allege ***which*** "advertisements and representations" from ***which*** Defendant formed the basis of their purchasing decision. Likewise, while Plaintiffs allege predicate acts consisting of "[a]dditional fraudulent applications for COCs and EOS," "[f]raudulently obtained COCs and EOS," and "[f]alse or misleading communications to the public and to regulators," *see* Compl., ¶ 174, Plaintiffs do not specify how these transmissions were false, who was responsible for them, and whether any Plaintiff relied upon them.[10] Plaintiffs are not even sure that either Defendant used the mail or wires to deliver or ship anything. *Id.* ("the transmission, delivery and shipment of the following [was done] by the RICO Defendants ***or third parties***") (emphasis added).

  With no alleged facts connecting communications by Cummins to Plaintiffs, Plaintiffs fail to adequately allege any mail or wire fraud predicate acts. *See Thomas*, 997 F. Supp. 2d at 762-63 (because plaintiffs failed "to set out which

---

 [9] Plaintiffs also fail to allege facts that any of the statements attributed to Cummins were in fact false. *See infra*, § V.A.2.

 [10] "COCs" refer to EPA Certificates of Conformity, while "EOS" refer to Executive Orders issued by CARB. *See* Compl., ¶ 159.

Defendant mailed, or caused to be mailed, a particular written item or made a certain interstate telephone call, and when these acts occurred," this Court held the plaintiffs' "conclusory allegations of mail fraud and wire fraud . . . fail to satisfy the requirements of Rule 9(b)" and dismissed the complaint).

**2.  Plaintiffs Fail To Plead Facts Showing Cummins Engaged In Intentional Fraud Sufficient To Establish A Predicate Act Of Mail And Wire Fraud.**

Plaintiffs relying on mail and wire fraud predicate acts must allege facts reflecting (1) a scheme to defraud and (2) the use of mails or other interstate electronic communication in furtherance of the scheme. *United States v. Brown*, 147 F.3d 477, 483 (6th Cir. 1998). As the Sixth Circuit has recognized, to demonstrate a scheme to defraud sufficient to state a claim for mail or wire fraud, a plaintiff must satisfy the elements of a claim for intentional fraud:

> A scheme to defraud consists of intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the designed end. To allege intentional fraud, there must be proof of misrepresentations or omissions which were reasonably calculated to deceive persons of ordinary prudence and comprehension. Thus, the plaintiffs must allege with particularity a false statement of fact made by the defendant which the plaintiff relied upon.

*Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (quoting *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 389-90 (6th Cir. 1996)). As a result, Plaintiffs must plead facts plausibly showing that Cummins acted with scienter, making representations for the specific "purpose

33

of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *United States v. DeSantis,* 134 F.3d 760, 764 (6th Cir. 1998). Plaintiffs' Complaint contains no such facts.

First, Plaintiffs only identify two statements attributed to Cummins as purportedly false:

- "FCA and Cummins vigorously marketed the Adsorber Engine, and the Dodge Ram 2500 and 3500 with the Adsorber Engine, as the 'strongest, cleanest, quietest' diesel engine in its class." Compl., ¶ 13.

- "In 2011, Cummins stated that the 'product has been in commercial use for over four years, delighting customers with its performance and durability, and delivering on Cummins commitment to a cleaner, healthier environment.'" *Id.*

Plaintiffs contend that these statements are "deceptive and false" because the Engine "is not the 'cleanest engine in its class,' and it does not contribute to a 'cleaner, healthier environment.'" *Id.,* ¶ 15. However, these statements are non-actionable puffery that cannot form the basis of their Complaint as a matter of law. *Counts,* 2017 U.S. Dist. LEXIS 20277, at *56-57; *see also, e.g., Ram Int'l Inc. v. ADT Sec. Servs., Inc.,* No. 11-10259, 2011 WL 5244936, at *6 (E.D. Mich. Nov. 3, 2011), *aff'd,* 555 F. App'x 493 (6th Cir. 2014) ("Defendant's statements that its products were efficient, reliable, and would protect Plaintiffs' property are examples of opinion and puffery"); *Oestreicher v. Alienware Corp.,* 544 F. Supp.

34

2d 964, 973 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) ("'higher performance,' 'longer battery life,' 'richer multimedia experience,' 'faster access to data' are all non-actionable puffery"); *Tietsworth v. Sears, Roebuck & Co.*, No. 09-00288, 2009 WL 3320486, at *7 (N.D. Cal. Oct. 13, 2009) (statement that washing machine "would save the consumer energy and water . . . amounts to puffery, as the statement does not indicate how much water or energy should be consumed by the Machine and makes no verifiable comparison to any identifiable competitive machine or model").

Second, even if these statements supported Plaintiffs' misrepresentation claims, Plaintiffs failed to allege facts validating that they are false. Plaintiffs have not, for example, alleged facts demonstrating that an engine in the same class has provided better emissions performance, or has otherwise better reduced emissions than the Engines. Likewise, Plaintiffs do not allege any facts comparing the Engines' emissions performance to prior Cummins engines in FCA vehicles (or any vehicles), or that the Engines omit more emissions than Cummins represented.

Third, Plaintiffs have not alleged facts demonstrating that Cummins *knew* such statements were false when they were made. The crux of Plaintiffs' Complaint is their allegation that Plaintiffs' PEMS testing "show[s] the [Ram Trucks] do[] not meet the relevant emission standards." Compl., ¶ 124. Plaintiffs do not allege that Cummins knew this at any time. The Complaint is bereft of any

35

allegations that Cummins had reason to believe the Engines would not meet emissions standards in real-world conditions, designed the Engines to fall short of emissions standards, or made any statements regarding the Engines for the purpose of misrepresenting compliance with emissions standards. The conclusory allegation that Defendants knew the Engines would not meet emissions or that Defendants represented otherwise is insufficient. *See e.g.* Compl., ¶ 208. *Cf. Greenstone v. Cambex Corp.,* 975 F.2d 22, 25 (1st Cir. 1992) ("The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading."). Because Plaintiffs have not pled facts establishing any alleged intentional fraudulent act committed by Cummins, they have not sufficiently pled the existence of a predicate act of mail and wire fraud.

**B.  Plaintiffs' Claims Must Be Dismissed For Failing To Establish The Existence Of An Association-in-Fact-Enterprise.**

To adequately allege the existence of an association-in-fact enterprise, Plaintiffs must set forth facts showing that the association-in-fact was "an ongoing organization, its members must function as a continuing unit, and it must be separate from the pattern of racketeering activity in which it engages." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993) (citing *United States v. Turkette,* 452 U.S. 576, 583, (1981); *see also Begala v. PNC Bank Ohio N.A.,* 214 F.3d 776,

36

781-82 (6th Cir. 2000). Plaintiffs' allegations are insufficient to establish an association-in-fact enterprise.

While Plaintiffs list a string of alleged racketeering activity in which FCA and Cummins supposedly engaged (Compl., ¶ 169), their allegations do not reflect any coordination amongst the two companies nor amongst their principals or employees. These threadbare allegations do not support a RICO claim. *See, e.g., Begala,* 214 F.3d 776 at 781-82 (no association-in-fact because "the complaint essentially lists a string of entities allegedly comprising the enterprise, and then lists a string of supposed racketeering activity in which the enterprise purportedly engages" but does not allege facts "suggesting that the behavior of the listed entities is 'coordinated' in such a way that they function as a 'continuing unit'").

### C.   Plaintiffs Fail To Allege Facts Sufficient To Show That The Purported Predicate Acts Proximately Caused Plaintiffs' Injuries.

When it comes to RICO claims, "mere allegation and/or evidence that an injury to the plaintiff would not have occurred 'but for' the defendant's alleged RICO violation (that is, that the plaintiff sustained mere 'injury in fact') is insufficient to establish a right to sue under RICO." *Macomb Interceptor Drain Drainage Dist. v. Kilpatrick,* 896 F. Supp. 2d 650, 668 (E.D. Mich. 2012) (quoting *Pik-Coal Co. v. Big Rivers Elec. Corp.,* 200 F.3d 884, 889 (6th Cir. 2000)). Rather, "[w]hen a court evaluates a RICO claim for proximate causation, the central

question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

The alleged injuries Plaintiffs assert are too attenuated to be the proximate results of Cummins' alleged conduct. While Plaintiffs contend that they were damaged because "they would not have purchased or leased" the Ram Trucks had they known of the emissions performance in real-world conditions, Compl., ¶ 133, Plaintiffs do not allege any facts demonstrating that their Ram Trucks actually fail federal or state emissions standards. Moreover, Plaintiffs do not connect any alleged statements by Cummins to their purchasing decision. Nor do they identify any statements by Cummins that they supposedly relied upon. Absent this connection between Cummins' alleged actions and Plaintiffs' harm, Plaintiffs have not adequately alleged that Cummins injured Plaintiffs "by reason of a violation of section 1962." 18 U.S.C. § 1964(c); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (Plaintiffs must be "injured in [their] business or property by the conduct constituting the violation"); *Grantham & Mann, v. Am. Safety Prods.*, 831 F.2d 596, 606 (6th Cir. 1987) (affirming directed verdict to defendant where plaintiff could not demonstrate alleged misrepresentations caused plaintiff harm); *Macomb Interceptor*, 896 F. Supp. 2d at 668-69 ("Directness of relationship [i]s an imperative part of standing to sue under both the antitrust

38

statutes and RICO." *Id.* (*quoting Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 269-270 (1992)).

> **D.   Plaintiffs Fail To State A Claim For Violation of § 1962(d) Because Plaintiffs Have Not Adequately Pled A § 1962(c) Claim.**

To plausibly state a claim for a violation under 18 U.S.C. §1962(d), Plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging "the existence of an illicit agreement to violate the substantive RICO provision." *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983). For the reasons stated above, Plaintiffs have failed to adequately allege an underlying violation of §1962(c), and their § 1962(d) claim must likewise fail.

## VI.   Plaintiffs' Various State Law Claims Fail Against Cummins As a Matter of Law.

Plaintiffs are residents of eleven states: California, Texas, North Carolina, Montana, Tennessee, New Mexico, Washington, South Carolina, Michigan, Minnesota, and Illinois. Compl., ¶¶ 27-40. Plaintiffs assert claims against Cummins for fraudulent concealment and violations of these states' consumer protection statutes.[11] Although the law applicable to each of these claims is state-specific, Plaintiffs' claims against Cummins fail for one or more of the following reasons:

---

[11] Plaintiffs also allege claims for breach of contract under the laws of each of the 50 states. Plaintiffs assert these claims against Defendant FCA only, however, so Cummins does not address such claims herein.

39

- The state consumer protection act bars class action proceedings under that statute;

- Plaintiffs have failed to plead actual reliance, as required by the consumer protection act;

- Cummins had no duty to disclose information relating to the Engines; and/or

- Plaintiffs failed to plead their claims with the specificity required by Rule 9(b).

The particulars of each argument, with supporting legal authority, as it relates to the eleven states for which there is a named Plaintiff, are detailed below.

### A. Plaintiffs' California State Law Claims Fail (California Subclass Counts I-III, V).

Plaintiffs' claims arising out of California state law against Cummins include: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") (Count I, ¶¶ 391-406); (2) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA") (Count II, ¶¶ 407-428);[12] (3) violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL") (Count III, ¶¶ 429-436); and (4) fraudulent concealment (Count V, ¶¶ 442-461).[13] Although pled

---

[12] Plaintiffs have additionally failed to comply with the CLRA's pre-suit notice requirement. *See Ruszecki v. Nelson Bach USA LTD.*, No. 12-0495, 2015 U.S. Dist. LEXIS 151946, at *14-17 (S.D. Cal. June 25, 2015) (dismissing CLRA claim with prejudice for failure to comply with pre-suit notice requirement).

[13] Plaintiffs' claim for breach of contract under California law (Count IV, ¶¶ 437-444) is not asserted against Cummins.

40

as separate counts, each claim rests upon identical allegations that Cummins made unspecified misrepresentations regarding the Engines' compliance with emissions standards. Accordingly, each of these counts fails because Plaintiffs have not pled with the specificity required by Rule 9(b).

### 1.    Plaintiffs Have Not Alleged Sufficient Detail Of The Misrepresentations Forming The Basis Of Their California State Law Claims.

As Plaintiffs premise each of their California state law claims on allegations of fraud, Plaintiffs must plead these counts with the heightened particularity Rule 9(b) requires. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (affirming dismissal of UCL and CLRA claims for pleadings' failure to comply with Rule 9(b)); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1090 (S.D. Cal. 2010) ("*Sony*") (dismissing UCL, CLRA, and FAL claims for lack of particularity under Rule 9(b)). Plaintiffs' California claims do not satisfy Rule 9(b), for two reasons.

First, Plaintiffs' California claims indiscriminately lump Cummins and FCA together, failing to specify the alleged acts of each defendant. Compl., ¶¶ 394 (discussing "Defendants' conduct"), ¶ 412 ("Defendants made representations concerning the benefits, efficiency, performance, and safety features of the Affected Vehicles and Adsorber Engines that were misleading"), ¶ 433 ("The Defendants have violated § 17500"), ¶¶ 444-446 (referring to "Defendants" alleged

41

misrepresentations). Plaintiffs do not explain how Cummins specifically violated their legal rights, instead making "everyone did everything" allegations that are insufficient to meet Rule 9(b). *Destifino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming dismissal of UCL claim); *see also Wiggins v. Argent Mortg. Co., LLC*, 945 F. Supp. 2d 817, 824-25 (E.D. Mich. 2013) (applying Rule 9(b) similarly, dismissing complaint alleging fraud and civil conspiracy because the "allegations lump all of the Defendants together, [and] do not identify the time, the place or the individual who made the alleged representation"); *Picard Chem. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1128 (W.D. Mich. 1996) ("Rule 9(b) does not permit plaintiffs to 'lump' defendants together, beyond the group pleading presumption, when charging them with fraudulent actions").

Second, as explained above in section V, *supra*, Plaintiffs have not identified any specific statement attributed to Cummins that they claim is false. Plaintiffs' California state law claims allege that "Defendants intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiffs and the Subclass." Compl., ¶ 395 (UCL claim); *see also id.*, ¶¶ 415, 433, 445 (making similar allegations applicable to CLRA, FAL, and fraudulent concealment claims). Rule 9(b), however, requires Plaintiffs to "specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006); *see also Lipscomb v.*

4835-7008-2880.9

*MERS, Inc.*, No. 11-0497, 2011 U.S. Dist. LEXIS 85503, at *16 (E.D. Cal. Aug. 3, 2011) (holding same to dismiss California state law claim of fraud). Plaintiffs do not identify the contents of any specific statement, made on a specific date, that they contend was false when made. Moreover, Plaintiffs have not alleged facts sufficient to demonstrate that Cummins knew any particular statement was false when it was made. *See Sony*, 758 F. Supp. 2d 1089-90. Absent such allegations, Plaintiffs have not adequately pled their California claims.[14]

### 2. Plaintiffs Have Not Pled Facts Demonstrating Their Reliance On Cummins' Alleged Acts.

California courts recognize that a plaintiff suing under the UCL, the CLRA, and the FAL must demonstrate actual reliance on the allegedly deceptive statements forming the basis of such claims. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793-94 (9th Cir. 2012); *Phillips v. Apple, Inc.*, No. 15-4879, 2016 U.S. Dist. LEXIS 53148, at *18 (N.D. Cal. Apr. 19, 2016). To establish actual reliance, Plaintiffs "must allege that the defendant's misrepresentation or nondisclosure was an immediate cause" of the conduct resulting in the Plaintiffs' alleged injury. *Id.* at *15.

---

[14] Because Plaintiffs' allegations under each state law claim are materially identical, these same shortcomings apply to Plaintiffs' pleadings under each state law claim discussed below. Accordingly, Cummins expressly incorporates by reference the arguments set forth in section VI.A, *supra*, as if stated in each of the following sections.

43

Plaintiffs have not satisfied this requirement because they have not alleged that they actually were aware of, and relied upon, any representations by Cummins relating to the Engines. *See Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014) (affirming dismissal of UCL claim where plaintiff did not rely on alleged misrepresentations). Although the Complaint includes summary allegations that Plaintiffs "reasonably relied upon the Defendants' false misrepresentations," Compl., ¶ 397, Plaintiffs do not identify *which* Cummins representations they relied upon, nor *how* they relied on any such Cummins representations. Conclusory allegations, bereft of any factual support in the Complaint, do not suffice to state a claim for relief. *Phillips*, 2016 U.S. Dist. LEXIS 53148, at *24-25.

**B.     Plaintiffs' Texas State Law Claims Fail (Texas Subclass Counts I and III).**

Plaintiffs allege two Texas state law claims against Cummins: (1) violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 *et seq.* (Count I, ¶ 2000-2003), and (2) fraudulent concealment (Count III, ¶¶ 2009-2028). Because both claims sound in fraud, Plaintiffs must plead each claim with particularity under Rule 9(b). *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001) (explaining "a plaintiff must, at a minimum, include the time, place, and contents of the false representations, as well as identify the speaker who made the misrepresentation" and that "general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one

44

from those of another do not meet the requirements of Rule 9(b)") (internal quotation omitted); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 798 (N.D. Tex. 2009). Plaintiffs must also demonstrate actual reliance to prevail on these claims. *See Brodsky v. Match.com, LLP*, No. 09-2066, 2010 U.S. Dist. LEXIS 105101, at *7-8 (N.D. Tex. Sept. 30, 2010); *Henry Schein v. Stromboe*, 102 S.W.3d 675, 686 (Tex. 2002).

Plaintiffs' formulaic allegations under their Texas state law claims are nearly identical to their allegations pertaining to their claims arising under California state law claim. Because Plaintiffs indiscriminately lump Cummins and FCA together, do not identify any specific statement attributable to Cummins forming the basis of their Texas state law claims, and do not allege facts demonstrating that they relied upon any alleged statements by Cummins, these claims must dismissed. *See Berry*, 608 F. Supp. 2d at 798; *Brodsky*, 2010 U.S. Dist. LEXIS 105101, at *7-8.

## C.   Plaintiffs' North Carolina State Law Claims Fail (North Carolina Subclass Counts I and III)

Similar to California and Texas state law, Plaintiffs' claims for fraudulent concealment and violations of North Carolina's Unfair and Deceptive Practices Act, N.C. Gen. Stat. §§ 75-1.1 *et seq.* ("NCUDPA"), must be dismissed for Plaintiffs' failure to meet Rule 9(b)'s pleading standards. *See, e.g, Ray v. Samsung Elecs. Am., Inc.*, No. 15-8540, 2016 U.S. Dist. LEXIS 79260, at *23-24 (S.D.N.Y. June 17, 2016) (dismissing NCUDPA claim alleged under North Carolina law).

45

Plaintiffs' NCUDPA claims additionally required them to plead facts demonstrating both actual and reasonable reliance on Cummins' alleged misrepresentations. *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 89 (2013). Plaintiffs' failure to plead such facts requires dismissal of their North Carolina state law claims.

### D.    Plaintiffs' Montana State Law Claims Fail (Montana Subclass Counts I and III)

Although Plaintiffs purport to represent a subclass asserting a claim under Montana's Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-101 *et seq.* ("MUTPCPA"), the MUTPCPA expressly prohibits class action complaints. Mont. Code Ann. § 30-14-133(1). Plaintiffs' fraudulent concealment claim should also be dismissed because Montana law requires a confidential or fiduciary relationship between the defendant and plaintiff to impose a duty on the defendant sufficient to support a claim for constructive fraud. *Grizzly Sec. Armored Express, Inc. v. Bancard Svcs., Inc.*, 384 P.3d 68, 79-80 (Mont. 2016). Because Plaintiffs have not alleged facts sufficient to give rise to a duty by Cummins owed to Plaintiffs, Plaintiffs' fraudulent concealment claim fails as a matter of law. Plaintiffs' Montana state law claims must also be dismissed for their failure to plead facts in accordance with Rule 9(b)'s heightened pleading standards. *See Myers v. BAC Home Loans Svcg., LP*, No. 13-53, 2013 WL 6231715, at *8 (D. Mont. Dec. 2, 2013) (applying Rule 9(b) to MUTPCPA claim).

46

### E.   Plaintiffs' Tennessee State Law Claims Fail (Tennessee Subclass Counts I and III)

Tennessee's Consumer Protection Act bars class action complaints brought under that Act. Tenn. Code Ann. § 47-18-109(a)(1); *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 308-10 (2008). Plaintiffs' fraudulent concealment claim likewise fails. Plaintiffs have not pled facts sufficient to give rise to a duty on Cummins to disclose any information to Plaintiffs. In Tennessee, "[t]he duty to disclose arises in three distinct circumstances: (1) where there is a previous definite fiduciary relation between the parties, (2) where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other, and (3) where the contract or transaction is intrinsically fiduciary and calls for perfect good faith." *Smith v. Pfizer Inc.*, 688 F. Supp. 2d 735, 752 (M.D. Tenn. 2010). Because none of these three circumstances are present here, Plaintiffs' claim fails. Further, Plaintiffs have not pled facts sufficient to meet Rule 9(b)'s heightened pleading standard. *Sony/ATV Music Publishing LLC v. 1729172 Ontario, Inc.*, No. 14-1929, 2016 WL 4239920, at *3 (M.D. Tenn. Aug. 11, 2016).

### F.   Plaintiffs' New Mexico State Law Claims Fail (New Mexico Subclass Counts I and III)

Under New Mexico law, the "gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." *Diversey Corp. v. Chem-Source Corp.*, 125 N.M. 748,

47

754 (N.M. Ct. App. 1998). Here, as explained above, Plaintiffs have not identified any false or deceptive statement made by Cummins in connection with the sale of any goods or services. Accordingly, their claim under New Mexico's Unfair Trade Practices Act, N.M. Stat. Ann. § 57-12-1 *et seq.*, fails.

Plaintiffs have likewise failed to state a claim for fraudulent concealment. In New Mexico, "a plaintiff must establish the existence of a confidential or fiduciary special relationship that gives rise to a duty to disclose." *JL v. New Mexico Dept. of Health*, 165 F. Supp. 3d 1048, 1082 (D. N.M. 2016). Plaintiffs have not pled facts sufficient to establish the existence of any confidential or fiduciary relationship between Cummins and Plaintiffs. Accordingly, Cummins owed Plaintiffs no duty of disclosure, and Plaintiffs' claim for fraudulent concealment fails.

### G. Plaintiffs' Washington State Law Claims Fail (Washington Subclass Counts I and III)

Plaintiffs' fraudulent concealment claim fails because Plaintiffs have not pleaded facts sufficient to establish that Cummins breached any duty to disclose information to them. "Absent an affirmative duty to disclose material facts, a defendant's silence does not constitute fraudulent concealment or misrepresentation." *Farmers Ins. Co. of Wash. v. Vue*, No. 26353-3, 2009 Wash. App. LEXIS 1654, at *9 (Wash. Ct. App. July 7, 2009) (quoting *Crisman v. Crisman*, 931 P.2d 163 (1997)). As Plaintiffs have not pleaded facts to support the existence of a fiduciary relationship necessary to give rise to a duty to disclose, *id.*

48

at 166-67, Plaintiffs' fraudulent concealment claim fails. Moreover, Plaintiffs' Washington state law claims must also be dismissed for their failure to plead facts in accordance with Rule 9(b)'s heightened pleading standards. *Goodman v. HTC Am., Inc.*, No. 11-1793, 2012 WL 2412070, at *16 (W.D. Wash. June 26, 2012) (applying Rule 9(b) to Washington Consumer Protection Act claim).

## H. Plaintiffs' South Carolina State Law Claims Fail (South Carolina Subclass Counts I and III)

South Carolina's Unfair Trade Practices Act expressly prohibits Plaintiffs' purported class action claim. S.C. Code Ann. § 39-5-140(a); *Harris v. Sand Canyon Corp.*, 274 F.R.D. 556, 565 (D. S.C. 2010). Plaintiffs' asserted claim under South Carolina's Regulation of Manufacturers, Distributors, and Dealers Act, S.C. Code Ann. § 56-15-10 *et seq.* (the "Dealers Act") does not apply, on its face, to Cummins. *See* S.C. Code Ann. § 56-15-10 (b) (defining manufacturer as "any person engaged in the business of manufacturing or assembling new and unused motor vehicles"). Likewise, Plaintiffs' claim for fraudulent concealment fails because Plaintiffs have not alleged facts demonstrating the existence of a confidential or fiduciary relationship necessary to impose a duty on Cummins to disclose information to Plaintiffs. *Thomas Daniels Agency, Inc. v. Nationwide Ins. Co. of Am.*, 122 F. Supp. 3d 448, 452 (D.S.C. 2015) (dismissing plaintiff's fraudulent concealment claim for failure to allege a relationship or contract that would give rise to defendant's duty).

49

I.    **Plaintiffs' Michigan State Law Claims Fail (Michigan Subclass Counts I and III)**

Plaintiffs' Michigan Consumer Protection Act ("MCPA") claim should be dismissed for Plaintiffs' failure to plead facts demonstrating they actually relied upon any statements by Cummins. *Shain v. Advanced Techs. Grp., LLC*, No. 16-10369, 2017 U.S. Dist. LEXIS 27438 (E.D. Mich. Feb. 28, 2017). Moreover, Plaintiffs' fraudulent concealment claim fails because Plaintiffs have not pled facts sufficient to give rise to a duty to disclose information to Plaintiffs. *See Counts*, 2017 U.S. Dist. LEXIS 20277, at *61 (observing that Michigan law requires "fiduciary or confidential" relationship between the parties to render concealment actionable). Plaintiffs' Michigan state law claims must also be dismissed for their failure to plead facts in accordance with Rule 9(b)'s heightened pleading standards. *See Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006) (dismissing MCPA claim for insufficient pleading under Rule 9(b)).

J.    **Plaintiffs' Minnesota State Law Claims Fail (Minnesota Subclass Counts I and III)**

While Minnesota's Prevention of Consumer Fraud Act does not prohibit class actions, its fraud and false advertising provisions (cited by Plaintiffs) only allow for private remedies under the Private Attorney General Statute. Minn. Stat. § 325F.69(1); Minn. Stat. § 325F.70(1); Minn. Stat. § 325.67; Minn. Stat §

50

8.31(3)(a). To bring such a claim, a plaintiff must allege that the action has a "public benefit." *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F. Supp. 3d 933, 937 (D. Minn. 2014). Where, as here, Plaintiffs seek only damages, "courts typically find no public benefit." *Id.*

Additionally, Plaintiffs have not pled facts sufficient to give rise to a duty to disclose, thus foreclosing their fraudulent concealment claim. *Bank of Montreal v. Avalon Capital Group, Inc.*, No. 10-591, 2012 WL 1110691, at *6 (D. Minn. Apr. 3, 2012) ("as a general rule, one party to a transaction has no duty to disclose material facts to the other"). Plaintiffs' Minnesota state law claims must also be dismissed for their failure to plead facts in accordance with Rule 9(b)'s heightened pleading standards. *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 876 (D. Minn. 2012).

### K.   Plaintiffs' Illinois State Law Claims Fail (Illinois Subclass Counts I and III)

Plaintiffs' fraudulent concealment claim fails because Plaintiffs have not alleged facts giving rise to any duty on Cummins to disclose information to them. *Lillien v. Peak6 Investments, L.P.*, 417 F.3d 667, 672 (7th Cir. 2005) (requiring a "confidential or fiduciary relationship" between the parties to give rise to a duty to disclose). Plaintiffs' Illinois state law claims must also be dismissed for their failure to plead facts in accordance with Rule 9(b)'s heightened pleading standards.

51

*Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736-37 (7th Cir. 2014) (Rule 9(b) applies to Illinois Consumer Fraud and Deceptive Business Practices Act when claim sounds in fraud).

### L. Plaintiffs' Other State and District of Columbia Law Claims Fail (Other States Subclasses and District of Columbia Subclass Counts I and II).

Plaintiffs assert claims under the laws of 39 separate states for which there is no named Plaintiff resident. Even if Plaintiffs did have standing to assert these claims, and even if the CAA did not preempt Plaintiffs' state law causes of action, these claims still fail on the merits.[15] First, four separate consumer protection acts under which Plaintiffs bring their purported class action claims expressly bar class action proceedings. *See* Ala. Code § 8-19-10(f) (Alabama); O.C.G.A. § 10-1-399(a) (Georgia); La. Stat. Ann. § 51:1409(A) (Louisiana); Miss. Code Ann. § 75-24-15(4) (Mississippi). Moreover, even those states that do not expressly bar class action complaints under their consumer protection statutes have recognized that proceeding on a class basis is often unworkable in light of the individual-specific

---

[15] Under choice of law principles, the Court must apply the law of the states in which the named Plaintiffs reside and thus the alleged tortious activity occurred. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (Constitution requires a separate choice-of-law determination for each plaintiff and for each defendant); *In re Welding Fume Prods. Liab. Litig.*, 245 F.R.D. 279, 291 (N.D. Ohio 2007) (in multi-district class action proceedings, the choice of law issue "must be tackled at the front end [of litigation] since it pervades every element of [Rule] 23").

4835-7008-2880.9

proof required to litigate such claims. *See, e.g., Sanford v. Nat'l Ass'n for the Self-Employed, Inc.*, 264 F.R.D. 11, 16 (D. Me. 2010) (denying class certification because plaintiffs could not show (1) that each class member relied on the defendants' statements and (2) that each class members' purchase was primarily for household purposes); *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 750 (2000) (causes of action brought under MCPA may be unsuitable for class action treatment due to the "burden placed on [plaintiffs] of proving individual reliance upon [defendants] alleged misrepresentations and material omissions"); *Volbers-Klarich v. Middletown Mgmt., Inc.*, 929 N.E.2d 434, 502 (Ohio 2010) ("[A] class action is permitted under the Act if the plaintiff alleges that the substantive provisions of the Act have been violated, and (1) a specific rule or regulation has been promulgated under R.C. 1345.05 that specifically characterizes the challenged practices as unfair or deceptive, or (2) an Ohio state court has found the specific practice either unconscionable or deceptive in a decision open to public inspection.").

Second, as described above, Plaintiffs' state-law claims fail because they sound in fraud, and Plaintiffs have failed to satisfy Rule 9(b)'s particularity requirement. *Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001) ("While state law governs the burden of proving fraud at trial in a diversity action in federal court, the procedure for pleading fraud in all diversity suits in federal court is governed

53

by the special pleading requirements of Fed. R. Civ. P. 9(b)"); *Advocacy Org.,* 176

F.3d at 322 (quoting *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir. 1993))

(This standard requires "'a plaintiff, at a minimum, to allege the time, place, and

content of the alleged misrepresentation on which he or she relied; the fraudulent

scheme; the fraudulent intent of the defendants; and the injury resulting from the

fraud.'"). Because Plaintiffs' claims arising under the various consumer protection

acts cited in the Complaint each sound in fraud, Plaintiffs must plead these claims

in accordance with Rule 9(b). *See Minger,* 239 F.3d at 800; *see also, e.g., Holmes*

*v. Behr Process Corp.,* No. 15-0454, 2015 WL 7252662, at *4 (N.D. Ala. Nov. 17,

2015); *Dena' Nena' Henash, Inc. v. Oracle Corp.,* No. 07-633, 2007 WL 3232218,

at *2 (N.D. Cal. Oct. 31, 2007) (applying Alaska law); *Williamson v. Allstate Ins.*

*Co.,* 204 F.R.D. 641, 644 (D. Ariz. 2001); *Jarrett v. Panasonic Corp. of North*

*America,* 8 F. Supp. 3d 1074, 1085 (E.D. Ark. 2013); *Duran v. Clover Foods Co.,*

616 F. Supp. 790, 793 (D. Col. 1985); *NCC Sunday Inserts, Inc. v. World Color*

*Press, Inc.,* 692 F. Supp. 327, 328 (S.D.N.Y. 1988) (applying Connecticut law);

*Johnson v. ACE Cash Express, Inc.,* No. 13-1186, 2014 WL 3721947, at *7 (D.

Del. July 24, 2014); *Jefferson v. Collins,* 905 F. Supp. 2d 269, 289 (D.D.C. 2012);

*Blair v. Wachovia Mortg. Corp.,* No. 11-566, 2012 WL 868878, at *3 (M.D. Fla.

Mar. 14, 2012); *Cannon v. U.S. Bank, NA*, No. 11-00079, 2011 WL 1637415 (D.

Hawai'i Apr. 29, 2011); *Bacon v. Countrywide Bank,* No. 11-0107, 2012 WL

642658, at *7 (D. Idaho Feb. 8, 2012); *Ryden v. Tomberlin Auto. Group,* No. 11-1215, 2012 U.S. Dist. LEXIS 139212, at *9 (S.D. Ind. Sept. 27, 2012); *Miller v. Elliott Aviation Aircraft Sales, Inc.,* No. 13-0161, 2014 U.S. Dist. LEXIS 192874, at *39-40  (S.D. Iowa Mar. 31, 2014); *Burton v. R.J. Reynolds Tobacco Co.,* 884 F. Supp. 1515, 1524 (D. Kan. 1995); *Naiser v. Unilever U.S., Inc.,* 975 F. Supp. 2d 727, 741 (W.D. Ky. 2013); *Felder's Collision Parts, Inc. v. General Motors, Co.,* 960 F. Supp. 2d 617, 639 (M.D. La. 2013); *Everest v. Leviton Mfg. Co.,* No. 04-612, 2006 WL 381832, at *3 (Sup. Ct. Me. Jan. 13, 2006); *Haley v. Corcoran,* 659 F. Supp. 2d 714, 724 (D. Md. 2009); *Varney v. R.J. Reynolds Tobacco Co.,* 118 F. Supp. 2d 63, 72 (D. Mass 2000); *Blake v. Career Educ. Corp.,* No. 08-0821, 2009 WL 140742, at *2 (E.D. Mo. Jan. 20, 2009); *Young v. Bristol-Myers Squibb Co.,* No. 16-0108, 2017 U.S. Dist. LEXIS 24730, at *41 (N.D. Miss. Feb. 22, 2017); *Shlesinger v. Bank of America, N.A.,* No. 11-2020, 2012 WL 2995698, at *6 (D. Nev. July 23, 2012); *Archdiocese of San Salvador v. FM Int'l, Inc.,* No. 05-0237, 2006 WL 437493, at *7-8 (D.N.H. Feb. 23, 2006); *Frederico v. Home Depot,* 507 F.3d 188, 202-3 (3d Cir. 2007) (applying New Jersey law); *Parrish v. Bank,* No. 15-0913, 2016 WL 3906814, at *2 (W.D. Okla. July 14, 2016); *Kearney v. Equilon Enters., LLC,* 65 F. Supp. 3d 1033, 1043 (D. Ore. 2014); *Kee v. Zimmer,* 871 F. Supp. 2d 405, 412-13 (E.D. Pa. 2012); *Laccinole v. Assad,* No. 14-0404, 2016 WL 868511, at *7-8 (D.R.I. Mar. 7, 2016); *Jackson v. Philip Morris Inc.,* 46 F. Supp.

55

2d 1217, 1222 (D. Utah 1998); *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010); *Stanley v. Huntington Nat. Bank*, No. 11-0054, 2012 WL 254135, at *7 (N.D. W. Va. Jan. 27, 2012); *Kisting v. Gregg Appliances, Inc.*, No. 16-0141, 2016 WL 5875007, at *5 (E.D. Wis. Oct. 7, 2016). Plaintiffs fail to make sufficiently specific allegations arising under state consumer fraud acts (to the extent such acts even allow them to do so with respect to a putative class). As detailed above (§ VI.A, *supra*), Plaintiffs Complaint does not pass Rule 9(b) muster. As a result, Plaintiffs' claims under any state requiring adherence to Rule 9(b) must be dismissed.

## CONCLUSION

For the reasons stated above, Cummins respectfully requests the Court grant this Motion, and dismiss Plaintiffs' Complaint against Cummins with prejudice.

Respectfully submitted,

FOLEY & LARDNER LLP

/s/ Vanessa L. Miller
Vanessa L. Miller (P67794)
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
(313) 234-7100
vmiller@foley.com

4835-7008-2880.9

Michael D. Leffel
150 East Gilman Street, Suite 5000
Madison, WI 53703-1482
(608) 257-5035
mleffel@foley.com

Jeffrey A. Soble
Lauren M. Loew
321 N. Clark Street, Suite 2800
Chicago, IL 60654-5313
(312) 832-4500
jsoble@foley.com
lloew@foley.com

*Attorneys for Defendant-Cummins Inc.*

57

4835-7008-2880.9

## CERTIFICATE OF SERVICE

I, Vanessa L. Miller hereby certify on March 31, 2017, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filing.


/s Vanessa L. Miller

58

4835-7008-2880.9