UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES BLEDSOE, et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **FCA US LLC, a Delaware corporation, and CUMMINS INC., an Indiana corporation**, <br><br> Defendant. | 4:16-cv-14024 <br><br> **ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL DISCOVERY (ECF NO. 130),** <br><br> **AND GRANTING IN PART AND DENYING IN PART DEFENDANT CUMMINS' MOTION TO COMPEL, (ECF NO. 129)** |

This matter is before the Court on cross-motions to compel. Plaintiffs are proposed putative class members who purchased Defendant FCA's 2007-2012 Dodge Ram 2500 and 3500 trucks, which are equipped with diesel engines manufactured by Defendant Cummins, Inc. Plaintiffs' main claim is that the trucks are equipped with defeat devices that allow its diesel engines to emit nitrogen oxides at levels that exceed federal and state emissions standards and the expectations of reasonable consumers.

This discovery dispute hinges on whether Defendants must produce its calibration data and emissions software in their native format. *See* ECF No. 130. Plaintiffs, in addition, move to compel production of the Class Vehicles' Auxiliary Emissions Control Devices ("AECD")

1

disclosures that Defendant Cummins made to the Environmental Protection Agency in unredacted form. For its part, Defendant Cummins moves to compel Plaintiffs to identify and describe with particularity its basis for alleging the existence of a defeat device. *See* ECF No. 129.

These matters are fully briefed. Upon review, the Court concludes that oral argument is not necessary for the disposition of these matters. As explained below, the Court will **GRANT** Plaintiffs' motion to compel and **GRANT IN PART** and **DENY IN PART** Defendant's motion to compel.

## I. Legal Standard

The scope of discovery under the Federal Rules of Civil Procedure is broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1). District courts, however, may limit the scope of discovery "where the information sought is overly broad or would prove unduly

burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Rules 33 and 34 allow a party to serve interrogatories and requests for production of documents on an opposing party. Fed. R. Civ. P. 33, 34. A party receiving these types of discovery requests has thirty days to respond with answers or objections. Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). If the party receiving discovery requests under Rules 33 or 34 fails to respond properly, Rule 37 provides the party who sent the discovery requests the means to file a motion to compel. Fed. R. Civ. P. 37(a)(3)(B). If a court grants a Rule 37 motion to compel, or if discovery is received after a Rule 37 motion is filed, then the court must award reasonable expenses and attorneys' fees to the successful party. That is, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust. Fed. R. Civ. P. 37(a)(5)(A).

## II. Discussion

### a. Plaintiffs' Motion to Compel

Plaintiffs move to compel the inspection and production of Defendant Cummins' complete calibration data and emissions software, as well as its AECD disclosures to the EPA in unredacted form. The Court addresses each issue in turn.

3

### i. Calibration data and emissions software.

Plaintiffs seek the production of Defendant Cummins' complete calibration data and emissions software "installed in the Affected Vehicles in a 'reasonably usable form.'" ECF No. 130, PageID.14015. Specifically, in their Request for Production, Plaintiffs sought "complete copies of all calibration files used in the Affected Vehicles related to the emissions systems," along with "any software development trail, manuals, errata, configuration settings…or other documents relating to design specifications or expected functions of the emissions systems." ECF No. 130-3, PageID.14045-46. Although Defendant Cummins had produced a text file representing segments of its calibration data, Plaintiffs' expert asserts that "[t]his text-based report file is not a substitute for the native calibration files being reviewed from within the calibration software."[1] ECF No. 130-5, PageID.14150. As a result, Plaintiffs seek complete calibration data and emissions software in order

---

[1] For reasons that are not entirely clear, Plaintiffs' counsel submitted their expert's sworn declarations under the pseudonym "E1", and without any identifiable person's signature. Defendant asks that the declarations be stricken because of this omission. While the Court agrees that the declarations should not have been submitted with the name and signature of declarant omitted, that problem can be solved by requiring Plaintiffs to refile these declarations, with the name and signature of the declarant included, within 5 days of the date of this order. Plaintiffs are hereby ordered to do so.

to figure out how the purported defeat devices allow "excessive emissions despite 'passing' emissions testing." ECF No. 130, PageID.14012-14.

Defendant Cummins responds that it has already produced a "complete, unredacted and searchable calibration" data set in accordance with its obligations under the Stipulation and Order Governing the Collection and Production of Documents and Electronically Stored Information, the Federal Rules of Civil Procedure, and this Court's Model ESI Order. ECF No. 135, PageID.14289. Defendant Cummins argues that what it has produced already complies with the "reasonably usable form" standard. *Id.* at PageID.14292-93. For that reason, Defendant asserts that the kind of production that Plaintiffs seek here would be duplicative. *Id.* In addition, Defendant Cummins reasons that it is not obligated to produce its calibration data in native format because such data constitute "proprietary trade secrets" that would allow Plaintiffs to view "***any*** Cummins engine in ***any*** vehicle or other engine platform found in the field." *Id.* at PageID.14290. (emphasis in original). Defendant Cummins explains that its competitive advantage would suffer "catastrophic" damage as a result of inadvertent or unauthorized disclosure of such data. *Id.*

Both parties agree that the nature of the alleged defeat devices is one of, if not, *the* central issue in this case. *See* ECF No. 129, PageID.13926; ECF No. 130, PageID.14012. And as explained in the

5

section below, Plaintiffs claim that their response to Defendant's motion to compel depends on their ability to understand and interpret the nature of the calibration data and emissions software. Furthermore, other than claiming that such data are proprietary trade secrets, Defendant Cummins has not provided authority supporting the withholding of data in its native format, especially where parties have agreed to a protective order to account for sensitive commercial materials. ECF No. 135, PageID.14295. Defendant points out that "the parties' ESI Stipulation does not require production calibrations in native file format" and that "the parties agreed that the only files that are required to be produced in native format are 'Non-redacted Microsoft Excel files and nonprintable files.'" ECF No. 135, PageID.14292 (citing ECF No. 113, PageID.13698-99). But an agreement that specifies that certain kinds of files must be produced in native format does not necessarily prohibit the production of other kinds of records in native format.

In any event, even if the data are proprietary trade secrets, by Defendant Cummins' own admission, that data has already been disclosed—albeit in a non-native format. Defendant Cummins insists that the data provided are "complete, unredacted, and searchable." ECF No. 135, PageID.14289. If the confidentiality protections in place are sufficient to safeguard the data already disclosed, it is unclear why their being trade secrets would prevent production in native format. Plaintiffs

6

are merely asking to make that production more accessible and comprehensible. A more relevant inquiry, therefore, might be whether compelling Defendant Cummins to disclose its complete calibration data and emissions software would be disproportionate or unduly burdensome. But Defendant Cummins makes no such showing.

Instead, Defendant Cummins argues that because it has already produced the calibration data in a text file, it is no longer obligated to produce the same information in native format. ECF No. 135, PageID.14292. Defendant Cummins points to the fact that the text file is "printable, searchable, and written in English rather than computer code" as proof that its method of production is satisfactory. *Id.* at PageID.14293. But Plaintiffs' expert declaration states that the non-native format is much more difficult to use or interpret. *See* ECF No. 130-5. For instance, Plaintiffs' expert attests that he is "completely unable to rely on the data in this report file by itself to form any opinions about the [engine control unit's] behavior." *Id.* at PageID.14151. In addition, based on the text files alone, Plaintiffs' expert "cannot determine what specifically they pertain to just from the labels, and without any supporting documentation that explains the logic of how and when these calibration values are used." *Id.* at PageID.14150. Plaintiffs' expert cannot use such a "text-based report file" to determine "a vehicle's combustion and emissions behavior." *Id.* Moreover, Plaintiffs claim that

7

"Cummins deliberately converted select segments of the calibration parameters into unintelligible text files." ECF No. 130, PageID.14013. This "selective conversion destroys the dynamic operational structure inherent in the native files that is necessary to understanding the data." *Id.*

The Advisory Committee Notes under Rule 34 explicitly prohibit producing parties from taking data in its native format and converting it to a different form "that makes it more difficult or burdensome" to use the information efficiently. Fed. R. Civ. P. 34 Adv. Comm. (2006). The record suggests that may have happened here. In short, the production Plaintiffs seek is relevant, not subject to any privileges, and Defendant has not established that disclosure in native format would be disproportionate or unduly burdensome.

Accordingly, the Court grants Plaintiffs' motion to compel Defendant Cummins to produce its emissions software and calibration data installed in the vehicles at issue in their native format. Production will be done pursuant to the parties' Stipulation and Order Governing the Collection and Production of Documents and Electronically Stored Information, ECF No. 113, and Stipulation and Order Regarding Non-waiver of Privileges and Production of Privilege Logs, ECF No. 115. In order to mitigate concerns about inadvertent disclosures, Defendant Cummins is ordered to load its calibration files and emissions software

onto a single secured stand-alone laptop that may not be connected to any network or external storage device, whether wirelessly or by direct connection. Plaintiffs must store the laptop in a locked storage container and may not remove or export the data. *See In re Facebook PPC Advertising Litigation*, 2011 WL 1324516, at *3 (N.D. Cal. 2011).

### ii. Unredacted AECD disclosures.

Plaintiffs next seek the production of information regarding AECDs[2] in the Class Vehicles that Defendant Cummins disclosed to the EPA—and Plaintiffs want this information produced in an unredacted format. ECF No. 130, PageID.14003. Plaintiffs argue that "Cummins is inappropriately redacting its AECDs, without any valid explanation for doing so." *Id.* at PageID.14020. For instance, Joseph Sawin, a Defendant Cummins employee responsible for "personally reviewing and submitting AECD disclosures for multiple engine platforms," attests that in responding to Plaintiffs' request for AECD disclosures, he identified and redacted portions that "have no apparent connection to Plaintiffs' allegations." ECF No. 135-5, PageID.14310. But he "did not redact the

---

[2] In its previous Order, the Court defined AECDs as "devices that alter the normal operation of the emissions system in a vehicle. AECDs are necessary to ensure adequate performance in certain scenarios, and are not illegal on their own. But when an AECD is designed to circumvent emissions standards requirements, and is not disclosed in the application for a certificate of conformity, it is called a 'defeat device,' and it is illegal." *Bledsoe v. FCA US LLC*, 378 F. Supp.3d 626, 633 (E.D. Mich. 2019).

9

headings or subheadings of these sections" in order to provide "a log of redacted information." *Id*. While Defendant Cummins argues that it is only redacting portions that are not relevant to the issues in this case, Plaintiffs reply that this Court has deemed that "***all*** of the AECDs are relevant in this case." ECF No. 130, PageID.14003. (emphasis in original). When Defendant Cummins submits AECD documents for regulatory review, "all AECDs for a single engine are contained in the same document." ECF No. 135, PageID.14294-95.

This means that if Defendant Cummins produces the AECD documents for a particular vehicle that were provided to the EPA, then the requesting party would have access to every AECD for that vehicle. Defendant Cummins asserts that "disclosing the irrelevant redacted sections of the AECD Disclosures would significantly harm Cummins." *Id*. at PageID.14298. Specifically, Defendant Cummins argues that in order to protect its competitive advantage, Plaintiffs should only be allowed to view the AECDs that are relevant to the issues in this case. In addition, Defendant Cummins contends that it is redacting portions of the AECD disclosures that constitute trade secrets. *Id*. at PageID.14295-96.

Plaintiffs reply that the AECDs "disclosed to the EPA all relate to the Class Vehicles" because "they work in tandem with each other" to operate the vehicle and "do not function independently." ECF No. 140,

PageID.17804. As a result of "this complex interplay of systems, distinguishing between relevant and irrelevant AECDs is impossible." *Id.*

In considering the parties' briefs, the Court is unpersuaded by Defendant Cummins' argument that it may "redact individual AECDs that do not relate in any way to Plaintiffs' allegations or Defendants' defenses." *See* ECF No. 135, PageID.14295. Relevance redactions are generally inappropriate, especially where parties have agreed to a Stipulation and Order governing the process for designating certain materials as confidential or highly confidential. *See* ECF Nos. 113 and 115; *see also Weidman v. Ford Motor Company*, 2021 WL 236072, at *4 (E.D. Mich. 2021) (holding that the parties' proposed order rendered relevance redactions "unnecessary and improper.").

Consequently, the Court orders Defendant Cummins to produce its Class Vehicles' AECD disclosures to the EPA in unredacted format. As with the production of its complete calibration data and emissions software, Defendant Cummins shall produce such materials in the same single secured stand-alone laptop described in Section II(a)(i) of this Order. *See Facebook Advertising Litigation*, 2011 WL 1324516, at *3. Production of the unredacted AECD disclosures shall be subject to the parties' Stipulation and Order Governing the Collection and Production of Documents and Electronically Stored Information, ECF No. 113, and

11

Stipulation and Order Regarding Non-waiver of Privileges and Production of Privilege Logs, ECF No. 115.

### b. Defendant Cummins' Motion to Compel

Defendant Cummins challenges Plaintiffs' response to Interrogatory No. 2 and moves to compel Plaintiffs "to provide a complete and substantive response." *See* ECF No. 129. Interrogatory No. 2 asks, in essence, for Plaintiffs to "identify and describe with particularity all defeat devices" that are allegedly "present in the Subject Vehicles." ECF No. 129-2, PageID.13939. Defendant Cummins argues that Plaintiffs' unwillingness to provide a response to this question "prejudices Cummins' ability to defend against" allegations that it "install[ed] defeat devices in the RAM Trucks." ECF No. 129, PageID.13925.

Plaintiffs objected to Interrogatory No. 2, ECF No. 129-2, PageID.13939, in the following ways:

**Objections**:

Plaintiffs object to this Interrogatory based on General Objection Nos. 8, 9, and 10.[3]

---

[3] General Objection No. 8 states "Plaintiffs object on the ground that the Interrogatory is a contention interrogatory and is therefore premature."
General Objection No. 9 states "Plaintiffs object on the ground that the Interrogatory is premature in that it calls for expert discovery."
General Objection No. 10 states "Plaintiffs object on the ground that the Interrogatory seeks information already in Cummins' possession." ECF No. 129-2, PageID.13935.

12

> Plaintiffs object to this Interrogatory based on Objection to Definition No. 2.[4]
>
> **Response**:
>
> *See* Objections.
>
> Plaintiffs will not provide a response at this time, but will supplement as required by the Federal Rules of Civil Procedure and Court orders, including pretrial schedule orders.

*See* ECF No. 129-2, PageID.13939, Plaintiffs' Objections and Response to Defendant Cummins Inc.'s First Set of Interrogatories. (emphasis in original).

Plaintiffs also argue that their responses were limited because "Cummins has deliberately and systematically withheld evidence that Plaintiffs need to answer" Interrogatory No. 2. ECF No. 133, PageID.14229. Plaintiffs allege that their expert "reviewed Cummins' discovery materials" and concluded that "he could not render an opinion" about how the emissions systems operate. *Id*. In fact, it is the information that Plaintiffs seek in their own motion to compel that "is necessary and essential to intelligibly answer Interrogatory No. 2." *Id*. Plaintiffs state that once they receive complete calibration data and emissions software,

---

[4] Definition No. 2 states "Plaintiffs object to the words 'any other person' in the definition of 'Plaintiff' or 'Plaintiffs' (Definition No. 2) on the grounds that the words are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of the case." *Id*. at PageID.13936.

they "intend to fully describe the defeat devices, including how they work, in their expert reports." ECF No. 133, PageID.14231.

Defendant Cummins counters that requiring Plaintiffs to disclose what it knows now would be useful in learning about the allegations against it. ECF No. 129, PageID.13927-28. Furthermore, Plaintiffs cannot argue that it must wait for the expert report because "the information is within Plaintiffs' possession," therefore they do not "require additional analysis" from their expert prior to responding. ECF No. 129, PageID.13928.

Interrogatories are governed by Rule 33 of the Federal Rules of Civil Procedure. Interrogatories are "not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). For instance, "contention interrogatories," serve legitimate and useful purposes, "such as ferreting out unsupportable claims, narrowing the focus and extent of discovery, and clarifying the issues for trial." *In re Dow Corning Corp.*, 2010 WL 3927728, at *12 (E.D. Mich. 2010) (citing *Starcher v. Correctional Med. Sys., Inc.*, 144 F.3d 418, 421 n.2 (6th Cir. 1998)). Contention interrogatories may take several forms, including asking a party "to state what it contends, or whether it makes a specified contention; to state all the facts upon which it bases a contention; to state the legal or theoretical basis for contention; and to explain or defend how the law invoked applies

to facts. *Schweinfurth v. Motorola, Inc.*, 2007 WL 6025288, at *5 (N.D. Ohio 2007) (citations omitted). Parties serving contention interrogatories must establish good reason that "answers to well-tailored questions will contribute meaningfully to clarifying the issues in he case, narrow the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56." *Id.* (quoting *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985)).

However, "a court may postpone a response to contention interrogatories until discovery is closer to completion." *Dow Corning*, 2010 WL 3927728, at *12 (citing Fed. R. Civ. P. 33(a)(2)). Contention interrogatories need not be answered until after designated discovery has closed. *See* 8A Wright & Miller, Federal Practice and Procedure, § 2167. The purpose is to protect "the responding party from being hemmed into fixing its position without adequate information." *Dow Corning*, 2010 WL 3927728, at *12 (citing *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 233 (E.D.N.Y. 2007)).

Here, Interrogatory No. 2 is relevant to the core issue of whether Defendant Cummins knowingly installed defeat devices in the vehicles at issue. However, Defendant Cummins "has the burden of proving how an earlier response serves the goals of discovery." *See Schweinfurth*, 2007 WL 6025288, at *5. Defendant Cummins argues that they are entitled to

a more complete response because Plaintiffs' allegations went "beyond merely alleging there was a gap" when they alleged that Defendants "knowingly and intentionally equipped the RAM Trucks with a prohibited defeat device." ECF No. 134, PageID.14282.

Plaintiffs, however, have already disclosed what evidence they have in support of their allegations: that emissions testing has revealed a discrepancy in the performance of Defendant Cummins' diesel engines. For instance, through informal supplements to its interrogatory responses, ECF No. 133, PageID.14230. Plaintiffs also provided a detailed table in their response to Interrogatory No. 6, which asks for identification of "the test file associated with" their emissions tests. ECF No. 129-2, PageID.13942. And in any event, a review of Plaintiffs' Second Consolidated and Amended Class Action Complaint is inconsistent with Defendant Cummins' characterization about the extent of Plaintiffs' allegations. *See* ECF No. 62, PageID.8341-44.

So, while perhaps little will be accomplished by compelling Plaintiffs to provide a complete and substantive response to Interrogatory No. 2 when they lack the underlying information to do so, it is nevertheless wrong for them to avoid supplying a good faith answer, even if part of that answer is an admission that they do not currently know for certain what the exact nature of the defeat device is or how it works. As far as a detailed answer, Plaintiffs' argument that they cannot

fully respond to Interrogatory No. 2 without the production of materials they are asking for in their own motion to compel appears to be justified at this time. *See* ECF No. 129. Indeed, attempting to provide a complete response to Interrogatory No. 2 before the satisfaction of Plaintiffs' own motion to compel would be an inefficient use of time and resources.

Furthermore, production of complex information in its native form naturally calls for the use of an expert to analyze that information. That expert will then need time to process and interpret the complex information for Plaintiffs' review. Although Defendant Cummins contends that it risks prejudice because an unsatisfactory answer to Interrogatory No. 2 weakens its ability "to defend against Plaintiffs' vague allegations" regarding its diesel truck engines, Plaintiffs cannot be forced to provide answers that they do not currently possess. Indeed, Defendant Cummins is in the better position at this point to analyze and make conclusions about its own products.

Therefore, the Court will order Plaintiffs to supplement their response to Interrogatory No. 2 by providing a good faith answer consistent with whatever facts Plaintiffs currently possess, and qualified by whatever explanations may be necessary, including if appropriate an admission of a lack of sufficient knowledge or information. In such an answer Plaintiffs may also indicate that their full and complete response to the Interrogatory will be provided after they receive adequate

information involving complete calibration data, emissions software, and AECD disclosures. *See id.* If Plaintiffs require an expert to process said disclosures in order to respond to Interrogatory No. 2, then Plaintiffs shall supplement their response when they produce their expert report. *See* ECF No. 127, PageID.13916.

## CONCLUSION

For all the reasons stated above, the Court **GRANTS** Plaintiffs' motion to compel and **GRANTS IN PART** and **DENIES IN PART** Defendant Cummins' motion to compel. Defendant Cummins is directed to disclose its complete calibration data in native format, including its emissions software, pursuant to the directives outlined in this Order. Defendant Cummins is further directed to produce its Class Vehicles' AECD disclosures to the EPA in unredacted form. In addition, Plaintiffs are directed to answer Interrogatory No. 2 to the best of their current ability, as well as provide a more complete and substantive response to that Interrogatory after they have received the necessary materials to do so. Finally, Plaintiffs are ordered to refile any of the sworn declarations that were submitted under the pseudonym "E1" in a form bearing the true name and signature of the declarant.

**IT IS SO ORDERED.**

Dated: April 30, 2021    s/Terrence G. Berg
                                        TERRENCE G. BERG
                                        UNITED STATES DISTRICT JUDGE