IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JAMES BLEDSOE, *et al.*, individually and on behalf of all others similarly situated, | Case No. 4:16-cv-14024-TGB-RSW |
| | Hon. Terrence G. Berg |
| Plaintiffs, | Magistrate Judge R. Steven Whalen |
| v. | |
| FCA US LLC, a Delaware corporation, and CUMMINS INC., an Indiana corporation, | |
| Defendants. | |

**PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION
AND APPOINTMENT OF CLASS REPRESENTATIVES
AND CLASS COUNSEL**

Plaintiffs James Bledsoe, Michael Erben, Dawn Roberts, Marc Ganz, Marty Witberg, Martin Ward, Jeremy Perdue, James Forshaw, and Paul Chouffet, by and through counsel, respectfully move this Honorable Court for class certification pursuant to Fed. R. Civ. P. 23(a)(1)-(4) and (b)(3) on behalf of themselves and all others similarly situated and for the appointment of Counsel and Class Representatives pursuant to Fed. R. Civ. P. 23(g). The bases for this Motion are set forth in the accompanying Memorandum in Support of Plaintiffs' Motion for Class Certification, exhibits thereto, deposition testimony, the record in this case, and additional argument the Court may consider. Pursuant to Local Rule 7.1, the parties met and conferred on August 16, 2021, regarding the legal basis for certifying the proposed classes. Defendant does not concur in the relief sought in this Motion.

Specifically, Plaintiffs propose certification of the following Classes pursuant to Fed. R. Civ. P. 23(b)(3):

**Nationwide Class** (*RICO and breach of contract claims*): All persons who purchased a Class Vehicle in the United States from an FCA-authorized dealer or distributor.

**California Class** (*consumer protection and fraudulent concealment claims*): All persons who purchased a Class Vehicle from an FCA-authorized dealer or distributor in California.

**Idaho Class** (*consumer protection and fraudulent concealment claims*): All persons who purchased a Class Vehicle from an FCA-authorized dealer or distributor in Idaho.

**Illinois Class** (*consumer protection and fraudulent concealment claims*): All persons who purchased a Class Vehicle from an FCA-authorized dealer or distributor in Illinois.

**Michigan Class** (*consumer protection and fraudulent concealment claims*): All persons who purchased a Class Vehicle from an FCA-authorized dealer or distributor in Michigan.

**New Mexico Class** (*consumer protection and fraudulent concealment claims*): All persons who purchased a Class Vehicle from an FCA-authorized dealer or distributor in New Mexico.

**North Carolina Class** (*consumer protection and fraudulent concealment claims*): All persons who purchased a Class Vehicle from an FCA-authorized dealer or distributor in North Carolina.

**South Carolina Class** (*fraudulent concealment claim*): All persons who purchased a Class Vehicle from an FCA-authorized dealer or distributor in South Carolina.

**Texas Class** (*consumer protection and fraudulent concealment claims*): All persons who purchased a Class Vehicle from an FCA-authorized dealer or distributor

- 2 -

in Texas.

Plaintiffs also move for the appointment of Plaintiffs James Bledsoe, Michael Erben, Dawn Roberts, Marc Ganz, Marty Witberg, Martin Ward, Jeremy Perdue, James Forshaw, and Paul Chouffet as Class Representatives and the appointment of Hagens Berman Sobol Shapiro LLP; The Miller Law Firm P.C.; Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.; and Seeger Weiss LLP as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

DATED: September 13, 2021

Respectfully submitted,

/s/ Steve W. Berman
Steve W. Berman
Jerrod C. Patterson
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
jerrodp@hbsslaw.com

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt, Jr. (P81118)
THE MILLER LAW FIRM PC
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
JCecchi@carellabyrne.com

- 3 -

Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Telephone: (212) 584-0700
cseeger@seegerweiss.com

Paul J. Geller
Stuart A. Davidson
Mark J. Dearman
ROBBINS GELLER RUDMAN
& DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com

*Attorneys for Plaintiffs*

010649-11/1617648 V1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JAMES BLEDSOE, *et al.*, individually and on behalf of all others similarly situated, | Case No. 4:16-cv-14024-TGB-RSW |
| | Hon. Terrence G. Berg |
| Plaintiffs, | Magistrate Judge R. Steven Whalen |
| v. | |
| FCA US LLC, a Delaware corporation, and CUMMINS INC., an Indiana corporation, | |
| Defendants. | |

**PLAINTIFFS' AMENDED BRIEF IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION AND APPOINTMENT OF CLASS
<u>REPRESENTATIVES AND CLASS COUNSEL</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................1

II.    CLASS DEFINITION ..........................................................5

III.   PROFFER OF EVIDENCE COMMON TO THE CLASS ...........................5

     A.     The Class Vehicles' emission systems all share common
           components and a common function.....................................5

     B.     Common evidence will show that decreased fuel
           economy and sooting issues plagued the Class Vehicles
           from the earliest stages of development through all model
           years.........................................................................8

     C.     Cummins and FCA jointly developed and integrated the
           Class Engines for use in the Class Vehicles.......................11

     D.     Cummins and FCA jointly marketed the Class Vehicles
           using uniform advertising and representations. .................11

IV.    ARGUMENT..................................................................14

     A.     Plaintiffs satisfy all Rule 23(a) requirements.....................14

          1.     The Class is so numerous that joinder is
               impracticable..........................................................14

          2.     Numerous common issues exist because the EED
               is in all Class Vehicles. ............................................14

          3.     Plaintiffs' claims are typical of the Class because
               they arise from a common course of conduct. ...................16

          4.     Plaintiffs and counsel will adequately represent the
               interests of the Classes. ............................................17

     B.     Plaintiffs meet the Rule 23(b) factors. ..............................18

1.    Common issues predominate, because the issues
      subject to generalized proof predominate over
      issues subject only to individualized proof.............................18

      a.    Common questions of fact predominate for
            all claims........................................................................18

      b.    Common questions of law predominate for
            RICO Claims. ................................................................19

2.    Common questions of law predominate for
      Plaintiffs' contract claims. ......................................................22

3.    Common questions of law predominate for
      Plaintiffs' consumer protection act claims...............................23

      a.    Statutory Consumer Fraud Claims .................................23

            (1)    The California Class.............................................23

                   (a)    Common issues predominate
                          the CLRA claim. .......................................23

                   (b)    Common issues predominate
                          the UCL claim...........................................26

                   (c)    Common issues predominate
                          the FAL claim. ..........................................27

            (2)    The Idaho Class...................................................27

            (3)    The Illinois Class.................................................27

            (4)    The Michigan Class..............................................28

            (5)    The New Mexico Class .......................................29

            (6)    The North Carolina Class ....................................29

            (7)    The Texas Class...................................................30

010649-11/1617648 V1

4.     Common questions of law predominate for
Plaintiffs' fraudulent concealment claims. ...............................31

5.     Certification of multiple states in one class action
is routine and does not defeat predominance...........................32

C.     Common Model of Damages ...............................................................32

1.     RICO Damages ..........................................................................32

2.     Breach of Contract Damages ....................................................33

3.     Consumer protection and fraudulent concealment
damages.....................................................................................33

D.     A class action is a superior method of adjudicating this
dispute..................................................................................................34

V.     CONCLUSION.............................................................................................35

010649-11/1617648 V1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abazari v. Rosalind Franklin Univ. of Med. & Sci.*,
40 N.E.3d 264 (Ill. Ct. App. 2015) .....................................................31

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ...............................................................14

*Apr. Beguesse, Inc. v. Rammell*,
328 P.3d 480 (Idaho 2014) ..................................................................34

*In re Auto. Parts Antitrust Litig.*,
2019 WL 7877812 (E.D. Mich. Dec. 20, 2019) ..................................23

*In re Beach*,
447 B.R. 313 (Bankr. D. Idaho 2011)..................................................27

*Beattie v. CenturyTel, Inc.*,
234 F.R.D. 160 (E.D. Mich. 2006) ......................................................15

*Bledsoe v. FCA US LLC*,
378 F. Supp. 3d 626 (ED. Mich. 2019) .........................................5, 22

*Bobbitt v. Acad. of Ct. Reporting, Inc.*,
252 F.R.D. 327 (E.D. Mich. 2008) ......................................................35

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ...............................................................28

*Brazil v. Dell Inc.*,
585 F. Supp. 2d 1158 (N.D. Cal. 2008)...............................................31

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008).............................................................................21

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015).................................................26

010649-11/1617648 V1

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) ............................................................................15

*City of Charleston v. Hotels.com, LP*,
  487 F. Supp. 2d 676 (D.S.C. 2007) ...................................................................31

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) .................................................................30

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
  270 F.R.D. 521 (N.D. Cal. 2010).......................................................................22

*Daffin v. Ford Motor Co.*,
  458 F.3d 549 (6th Cir. 2006) .............................................................16, 18, 19

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ...........................................................................25

*In re Delphi Corp. Sec.*,
  248 F.R.D. 483. (E.D. Mich. 2008) ...................................................................17

*Edwards v. Ford Motor Co.*,
  603 F. App'x 538 (9th Cir. 2015) ......................................................................25

*Ehret v. Uber Techs., Inc.*,
  2015 WL 7759464 (N.D. Cal. Dec. 2, 2015)...............................................24, 26

*Ellis v. J.P. Morgan Chase & Co.*,
  950 F. Supp. 2d 1062 (N.D. Cal. 2013) .............................................................32

*In re EpiPen Mktg., Sales Practices & Antitrust Litig.*,
  2020 WL 1180550 (D. Kan. Mar. 10, 2020) .....................................................33

*Evans v. Ameriquest Mortg. Co.*,
  2003 WL 734169 (Mich. Ct. App. Mar. 4, 2003)...............................................28

*Everett v. TK-Taito, LLC*,
  178 S.W.3d 844 (Tex. Ct. App. 2005)................................................................34

*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) .............................................................................15

010649-11/1617648 V1

*Fejzulai v. Sam's West, Inc.*,
205 F. Supp. 3d 723 (S.D.C. 2016) ...................................................................23

*G&M Farms v. Funk Irrigation Co.*,
808 P.2d 851 (Idaho 1991) ..............................................................................31

*Giammanco v. Giammanco*,
625 N.E.2d 990 (Ill. Ct. App. 1993) .................................................................34

*In re GM Air Conditioning Mktg. & Sales Practices Litig.*,
406 F. Supp. 3d 618 (E.D. Mich. 2019) ...........................................................28

*Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*,
728 F. Supp. 2d 1170 (D.N.M. 2010) ...............................................................34

*Guido v. L'Oreal, USA, Inc.*,
2013 WL 3353857 (C.D. Cal. July 1, 2013)......................................................24

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989)...........................................................................................20

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
238 Cal. App. 4th 124 (2015) ...........................................................................31

*Herremans v. BMW of N. Am., LLC*,
2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) .....................................................26

*Hunter v. Guardian Life Ins. Co. of Am.*,
593 S.E.2d 595 (N.C. Ct. App. 2004)................................................................31

*Johannessohn v. Polaris Indus., Inc.*,
450 F. Supp. 3d 931 (D. Minn. 2020)................................................................34

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ..........................................................................23

*Keegan v. Am. Honda Motor Co.*,
284 F.R.D. 504 (C.D. Cal. 2012).................................................................15, 19

*State ex. rel. Kidwell v. Master Distribs., Inc.*,
101 Idaho 447, 615 P.2d 116 (1980) ................................................................27

010649-11/1617648 V1

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) .................................................................21, 22

*Lazar v. Superior Court*,
  909 P.2d 981 (Cal. 1996) ......................................................................34

*LFM Real Estate Ventures, LLC v. SunTrust Bank*,
  2012 WL 6114242 (W.D.N.C. Dec. 7, 2012)....................................................29

*Lohman v. Daimler-Chrysler Corp.*,
  166 P.3d 1091 (N.M. Ct. App. 2007) ...............................................................31

*Lopez v. Nissan N. Am., Inc.*,
  201 Cal. App. 4th 572 (2011) ............................................................27

*McVicar v. Goodman Glob., Inc.*,
  2015 WL 4945730 (C.D. Cal. Aug. 20, 2015) .................................................26

*Media Network, Inc. v. Long Haymes Carr, Inc.*,
  678 S.E.2d 671 (N.C. Ct. App. 2009).................................................30

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014).................................................24

*Newby v. Enron Corp.*,
  2010 WL 9077875 (S.D. Tex. Jan. 19, 2010).................................................31

*Ohst v. Crehan*,
  2021 WL 2390036 (Mich. Ct. App. June 10, 2021) ..........................................34

*Parkinson v. Hyundai Motor Am.*,
  258 F.R.D. 580 (C.D. Cal. 2008).......................................................19

*Porcell v. Lincoln Wood Prods., Inc.*,
  713 F. Supp. 2d 1305 (D.N.M. 2010).................................................29

*In re Porsche Cars N. Am., Inc.*,
  880 F. Supp. 2d 801 (S.D. Ohio 2012) .............................................33

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ..............................................................34

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979)...................................................................................32

*Rikos v. Procter & Gamble Co.*,
799 F.3d 497 (6th Cir. 2015) ...............................................................14, 32

*Roberts v. Saffell*,
760 N.W.2d 715 (Mich. Ct. App. 2008)..................................................31

*Rodriguez v. Berrybrook Farms, Inc.*,
672 F. Supp. 1009 (W.D. Mich. 1987) ....................................................15

*Rosen v. J.M. Auto Inc.*,
270 F.R.D. 675 (S.D. Fla. 2009)..............................................................19

*Samson Lone Star Ltd. P'ship v. Hooks*,
497 S.W.3d 1 (Tex. Ct. App. 2016).........................................................34

*Schnellmann v. Roettger*,
645 S.E.2d 239 (S.C. 2007) .....................................................................34

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985)..................................................................................19

*Seekamp v. It's Huge, Inc.*,
2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ..........................................22

*Shearill v. Amini-Ghomi*,
2020 WL 7312036 (N.M. Ct. App. Dec. 7, 2020).....................................34

*Smith, Allen, Mendenhall, Emons & Selby v. Thomson Corp.*,
862 N.E.2d 1006 (Ill. Ct. App. 2006) ......................................................33

*Solum v. CertainTeed Corp.*,
2015 WL 6505195 (E.D.N.C. Oct. 27, 2015)...........................................29

*Spradling v. Williams*,
566 S.W.2d 561 (Tex. 1978) ....................................................................30

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012)..............................................................24

010649-11/1617648 V1

*Tershakovec v. Ford Motor Co.*,
 -- F. Supp. 3d --, 2021 WL 2700347 (S.D. Fla. July 1, 2021)...........................32

*Torres v. S.G.E. Mgmt., LLC*,
 838 F.3d 629 (5th Cir. 2016) .................................................................21

*Tyson Foods, Inc. v. Bouaphakeo*,
 577 U.S. 442 (2016)..............................................................................18

*In re U.S. Foodservice Inc. Pricing Litig.*,
 729 F.3d 108 (2d Cir. 2013) .......................................................21, 22

*Waller v. Hewlett-Packard Co.*,
 295 F.R.D. 472 (S.D. Cal. 2013) ..........................................................26

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
 722 F.3d 838 (6th Cir. 2013) .......................................................15, 35

*Williams v. Apple, Inc.*,
 -- F.R.D. --, 2021 WL 2186223 (N.D. Cal. May 28, 2021) ...............33

*Window World of Baton Rouge, LLC v. Window World, Inc.*,
 2018 WL 4649493 (N.C. Super. Sept. 26, 2018) ...............................34

*Wolin v. Jaguar Land Rover N. Am., LLC*,
 617 F.3d 1168 (9th Cir. 2010) ....................................................15, 18

## STATUTES

815 ILCS 505/2 ...........................................................................................28

18 U.S.C. § 1961(4) ....................................................................................20

18 U.S.C. § 1962(c) ......................................................................................3

Cal. Civ. Code § 1780(a) ...........................................................................33

Idaho Civ. Code § 48-603 ..........................................................................27

Mich. Comp. Laws § 445.903(1) ...............................................................28

N.C. Gen. Stat. § 75-1.1(a) ........................................................................29

N.M. Stat. Ann. § 57-12-2(D)....................................................................29

Tex. Bus. & Com. Code § 17.46(a) ........................................................................30

### OTHER AUTHORITIES

40 Fed. Reg. 5002–5193 (Jan. 18, 2001) ...............................................................11

## STATEMENT OF ISSUES PRESENTED

1.      Over 420,000 Class Vehicles have been sold in the United States. Do Plaintiffs satisfy the numerosity requirement of Rule 23(a)(1)?

2.      The Class Vehicles all contain an Excessive Emissions Device ("EED") that uniformly causes excessive emissions during real-world driving conditions and decreased fuel economy. All owners of the Class Vehicles overpaid at the point of sale because they purchased trucks with an undisclosed EED. The commonality requirement of Rule 23(a)(2) requires Plaintiffs to present a common question of law or fact that can be resolved on a classwide basis. Have Plaintiffs met the commonality standard?

3.      Plaintiffs must demonstrate that class representatives' claims are typical of the class, and that they (through counsel) will adequately represent the interests of the class. Each class representative owns a Class Vehicle, overpaid for the vehicle at the point of sale, and was not told about the EED by either defendant. They have each pledged to vigorously prosecute this case through counsel, who have worked assiduously to conduct a pre-filing investigation, prepare and file detailed complaints, respond to multiple motions to dismiss, and retain experts at their expense to test and analyze the Class Vehicles. Have Plaintiffs met the typicality and adequacy requirements of Rule 23(a)(3) & (4)?

4.      Plaintiffs' claims include a myriad of common legal questions, including

whether Defendants engaged in a racketeering enterprise, whether FCA breached its contract in delivering a vehicle that did not perform as advertised, whether Defendants' omissions violate state consumer protection statutes, and whether Defendants engaged in fraud or deception in designing, marketing, and selling vehicles they knew performed poorly in real-world conditions. There are no common individual questions that will predominate at trial. Have Plaintiffs met the Rule 23(b)(3) predominance requirement?

5.     Plaintiffs seek to certify one nationwide class and eight state-specific classes corresponding to the place of purchase of the remaining class representatives. By design, the law is the same within each class, and courts routinely certify classes in similar circumstances. Is certification of Plaintiffs' nine classes manageable?

6.     Plaintiffs have offered two straightforward models of damages to calculate damages corresponding to their theory of liability. Relying on Plaintiffs' expert Ted Stockton, a recognized expert in the field, Plaintiffs propose models that (1) calculate the amount of overpayment at the point of sale (based on the advertised cost of the "ultra-clean" premium of the Class Vehicles), and (2) calculate the increased costs to the consumer from the vehicles' decreased fuel economy. Have Plaintiffs presented an adequate model of damages for their remaining claims?

7.     Putative class members have no discernable incentive to pursue claims against Defendants on their own, particularly when the costs are prohibitively high

and the benefit is comparatively low. There is no other known case concerning the EED in the country, and there are no real difficulties in litigating this case on a classwide basis. Have Plaintiffs met the Rule 23(b)(3) superiority requirement by demonstrating that prosecuting this case on a classwide basis is superior to resolving thousands of individual claims?

Plaintiffs answer: "Yes."

## STATEMENT OF CONTROLLING OR
## MOST IMPORTANT AUTHORITY

**A.**   **Commonality**

    1.    *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015)

    2.    *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1997)

    3.    *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)

**B.**   **Typicality and Adequacy**

    1.    *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)

    2.    *In re Delphi Corp. Sec.*, 248 F.R.D. 483 (E.D. Mich. 2008)

**C.**   **Predominance**

    1.    *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)

    2.    *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)

    3.    *Torres v. S.G.E. Mgmt., LLC*, 838 F.3d 629 (5th Cir. 2016)

    4.    *Klay v. Humana, Inc.*, 392 F.3d 1241 (11th Cir. 2004)

    5.    *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014)

    6.    *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015)

    7.    *Tershakovec v. Ford Motor Co.*, -- F. Supp. 3d --, 2021 WL 2700347 (S.D. Fla. July 1, 2021)

    8.    *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 2020 WL 11880550 (D. Kan. Mar. 10, 2020)

010649-11/1617648 V1

**D.**   **<u>Adequacy</u>**

1.   *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 854 (6th Cir. 2013)

2.   *Bobbit v. Acad. of Ct. Reporting, Inc.*, 252 F.R.D. 327 (E.D. Mich. 2008)

## I.    INTRODUCTION

Certain FCA trucks equipped with a 6.7-liter Cummins diesel engine[1] are designed with an emission system that emits pollutants in real-world driving conditions that drastically exceed U.S. environmental standards (the "Excessive Emissions Device" or "EED"). This system, jointly designed and marketed by Defendants, is in every Class Vehicle. In their haste to push these vehicles to market, Defendants worked together to develop a vehicle that offered the *appearance* of meeting U.S. emissions standards and meeting customer demand for high fuel economy, but in truth performed substantially worse in real-world conditions. *See* Ex. 1 (Smithers Rep.) § 7.

The root cause of the EED is excessive soot buildup beyond the emissions system's capabilities. As a result, all Class Vehicles are designed to divert fuel to burn off the soot in "active regeneration" mode,[2] which significantly reduces fuel economy. All Class Vehicles are also designed to eliminate harmful nitrous oxides *less* often at higher vehicle speeds during real-world driving, while leaving the frequency unchanged during the federal test protocol. This caused increasing tailpipe NOx emissions far in excess of EPA limits when driven in real-world conditions. *Id.*

---

[1] "Class Vehicles" as used herein are 2007–2012 model year 2500 and 3500 Dodge Ram diesel vehicles with a 6.7-liter engine. "Subject Engines" are the Class Vehicles' engines.

[2] "Active regeneration" mode refers to the process by which soot trapped in the filter is cleared.

010649-11/1617648 V1

By designing the vehicles in this manner, Defendants created the *appearance* of environmentally friendly and fuel-efficient vehicles because they recognize that excessive emissions and fuel economy are material to consumers. In 2007, Cummins presented FCA (then known as Chrysler) with an "Environmental Award" for development of the Class Vehicles. The announcement by Cummins touted its "close partnership" with FCA in "*meeting and exceeding both regulatory requirements and customer needs*." Cummins claimed that the Class Vehicles were the first to achieve the new NOx standard "three years early." *Id.* It then claimed that the Class Vehicle "*maintains fuel efficiency compared to the 2006 model*. It also *maintains the diesel engine's 30 percent fuel economy savings over gasoline engines*, and thus lowers CO2 emissions." Ex. 3 (Cummins 2007 Sustainability Report) (emphasis added). Plaintiffs' expert Juston Smithers' testing of the Class Vehicles reveals that these claims about fuel economy are false: he calculated that average fuel economy reduction during active regeneration on the highway was nearly 20%, with a corresponding decrease in fuel economy overall. Ex. 1 (Smithers Rep.) § 11.4.

The poor emissions and fuel economy performance of the Class Vehicles on the road was caused by Defendants' desire to rush the vehicles to market, and was entirely avoidable. *Id.* § 7.3. Based on the Smithers analysis, a comparable Dodge Ram gasoline truck does not experience a notable drop in performance in real-world driving. For a 2012 Dodge Ram diesel, the emissions are at least five times the U.S.

standards over 30% of the time, and at least 10 times the standards over 10% of the time. *See id.* at 31. Not so for gasoline vehicles, which are below the standard nearly all the time. *Id.* at 37.

Common evidence will demonstrate that Defendants' claims about the Class Vehicles' performance, including comparisons to gasoline vehicles, are demonstrably false or omit material facts. Compounding the falsity of these statements is that the Defendants *deliberately designed* the vehicles to operate in this manner. They *deliberately designed* all of the vehicles to frequently enter active regeneration in real-world driving to address their soot problem, at the expense of fuel economy, emissions, and the customer. Plaintiffs are accordingly injured by (a) paying a diesel premium—and a "ultra-clean" diesel premium—for a diesel package that was not in the Class Vehicles; and (b) paying for additional fuel as a direct result of the EED and corresponding drop in fuel economy.

To protect and compensate all truck owners, Plaintiffs seek certification of nine classes. The first class consists of truck owners who purchased a Class Vehicle in the United States from an FCA-authorized dealer or distributor, to compensate them for injury to property under the RICO statute, *see* 18 U.S.C. § 1962(c), and for FCA's breach of contract. The remaining eight state-specific classes, corresponding to the place of purchase of the remaining Plaintiffs, seek overpayment damages and additional expenses as a result of Defendants' consumer protection act violations and

fraudulent concealment of the excessive emissions and decreased fuel economy.

Rule 23's requirements are readily met here, for all classes, as all class members have common issues arising from the purchase of Class Vehicles that suffer from excessive emissions and decreased fuel economy. Defendants did not disclose this material fact to consumers, and indeed, falsely assured customers that they were meeting U.S. emissions standards and fuel economy benchmarks that they knew full well they were not meeting. As a result, Plaintiffs and members of all classes were induced into overpaying for diesel trucks that did not offer the full diesel package.

Because Plaintiffs and hundreds of thousands of class members were economically harmed by Defendants' deceptive marketing and fraudulent conduct in the same manner in each class, and their interests are aligned, the proposed classes meet the numerosity, typicality, and adequacy requirements under Rule 23(a)(1), (3), and (4). Whether all Class Vehicles suffer from excessive emissions and decreased fuel economy, and whether Defendants' omissions were objectively deceptive, are core issues that can be answered once for all class members, satisfying Rule 23(a)(2). The requirements of Rule 23(b)(3) are also met, as common issues will predominate over individual ones because evidence common to members of each class will be used to prove liability and damages. Finally, class certification is a superior form of adjudicating these claims because it would be grossly inefficient and uneconomical for class members to proceed individually, and the case is manageable.

## II.    CLASS DEFINITION

Plaintiffs seek to certify the classes identified in Plaintiffs' Motion for Class Certification in prosecuting the remaining claims under RICO, breach of contract, consumer protection statutes, and fraudulent concealment. *See Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 650 (ED. Mich. 2019). In particular, Plaintiffs seek Rule 23(a) and (b)(3) certification of one nationwide class and eight state-specific classes on behalf of the remaining nine plaintiffs representing consumers who purchased a Class Vehicle from an FCA-authorized dealer or distributor.[3]

## III.    PROFFER OF EVIDENCE COMMON TO THE CLASS

### A.    The Class Vehicles' emission systems all share common components and a common function.

Defendants have designed, manufactured, distributed, and sold hundreds of thousands of Class Vehicles throughout the country, all of which produce excessive emissions in real-world driving conditions and suffer from decreased fuel economy as a result of the undisclosed EED. The design, components, and function of the emission system are identical for all material purposes in all engines in all Class Vehicles. *See* Ex. 1 (Smithers Rep.) §§ 7.1, 10.1–10.2; Ex. 5 at -25962.

The emission system hardware is controlled by proprietary Cummins software referred to as "calibration." The calibration controls the conditions under which the

---

[3] The remaining plaintiffs and their states of purchase are: James Bledsoe (CA), Michael Erben (ID), Dawn Roberts and Marc Ganz (IL), Marty Witberg (MI), Martin Ward (NM), Jeremy Perdue (NC), James Forshaw (SC), and Paul Chouffet (TX).

emission system operates—e.g., the temperature and pressure thresholds, the duration of operation, the occurrence of active regeneration, and vehicle speed. Ex. 1 (Smithers Rep.) at App'x F; *see also* Ex. 6 (Brett Fathauer Dep.) at 78:5–12. ███████████

███████████████████████████████████████████████████████████

███████████████████████████ *See* Ex. 7 (Donald Altermatt Dep.) at 54:14–55:10.

███████████████████████████████████████████████████████████

███████████████████████████████████████████ *See* Ex. 8 (Phil Evans Dep.) at 145:3–21, 149:9–20.

The Class Vehicles' emission system uses the same components and technology to perform the same function in all Class Vehicles: the supposed reduction of tailpipe emission of certain pollutants to levels at or below limits set by the EPA and CARB. These pollutants include Nitrous Oxides, referred to as "NOx," and particulate matter, also called "soot." Ex. 1 (Smithers Rep.) § 5.2.5; *id.* at 3.

Class Vehicles use the Diesel Particulate Filter ("DPF") to manage soot emission, which traps soot before it passes through the tailpipe. This filter must be periodically purged or "regenerated" by using additional fuel to create heat, which essentially burns up the soot and clears the filter. *Id.* This process is sometimes referred to as a "desoot." The consequences of excessive sooting are myriad, including

███████████████████████████████████████████[4] All Class

---

[4] Ex. 7 (Donald Altermatt Dep.) at 49:4–50:22; Ex. 8 (Phil Evans Dep.) at 31:5–13,

Vehicles also use a NOx adsorber catalyst to reduce tailpipe NOx emissions. Ex. 1 (Smithers Rep.) § 5.2.4. The adsorber traps NOx on a catalyst bed and periodically activates a "deNOx event" that regenerates the system by using fuel to aid the chemical reactions, which allow it to eliminate the trapped NOx and renew its ability to trap the pollutant. This NOx regeneration has the effect of creating additional soot which must be managed by the DPF. *Id.* Both DPF regeneration and NOx regeneration in the Class Vehicles depend on additional fuel, the use of which necessarily results in lowered overall, long-term fuel economy. *Id.*

More frequent deNOx events generally result in the need for the DPF to capture and manage more soot; Defendants ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ *See* Ex. 11; Ex. 12. More frequent deNOx events also result in decreased fuel economy, such that reducing the number of deNOx events can improve fuel economy. Ex. 1 (Smithers Rep.) § 5.2.4. But one of the consequences of the reduction in deNOx frequency is the increase in harmful NOx emissions. *Id.* Accordingly, ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████. *See* Ex. 13. The testing results performed by Juston

---

60:23–61:24; Ex. 9; Ex. 10.

Smithers, Plaintiffs' engineering expert, are entirely consistent with and corroborate these basic principles. As one example, the four Class Vehicles tested by Plaintiffs' expert had NOx emissions nearly five times the EPA standard of 200 mg/mile during city driving, even as these same vehicles passed emissions testing on the dynamometer. *See* Ex. 1 (Smithers Rep.) § 6.

**B.    Common evidence will show that decreased fuel economy and sooting issues plagued the Class Vehicles from the earliest stages of development through all model years.**

As part of the engine development, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆ *See* Ex. 14 at -695277. ▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Ex. 14 at -695280.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

- 8 -

████████████████████████████ *See* Ex. 15. ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 16 ███████████████████; Ex.

17 at -542419; Ex. 18.

           ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Ex. 9. ██████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 8 (Phil Evans Dep.) at 31:5–13,

60:23–61:24; Ex. 10. ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

- 9 -



Ex. 9 at -76507–08.

Ex. 9 at -76505–06.

*See, e.g.*, Ex. 17; Ex. 25.

---

[5] *See* Ex. 6 (Brett Fathauer Dep.) at 173:18–174:19; Ex. 19; Ex. 20 (Steve Anderson Dep.) at 155:4–8 ); 158:4–11 ( ; 176:19–177:22 ).

[6] Ex. 10; *see also* Ex. 21; Ex. 22; Ex. 23; Ex. 24.

**C.    Cummins and FCA jointly developed and integrated the Class Engines for use in the Class Vehicles.**

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████ *See*

Ex. 14. ████████████████████████████████████

████████████████████████████████████████████

█████████████████████████.[7] ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████[8] ███████████████████

███████████████████████████████████ *Id.*

**D.    Cummins and FCA jointly marketed the Class Vehicles using uniform advertising and representations.**

In 2001, the EPA announced emission regulation applicable to on-highway, medium-duty diesel engines such as those of the Class Vehicles, which required manufacturers to incorporate emissions after-treatment systems into their diesel engines to meet new emission standards for various pollutants. *See* 40 Fed. Reg.

---

[7] *See, e.g.*, Ex. 26 as an exemplar of a ████████████████████████ ██████████████

[8] *See* Ex. 7 (Donald Altermatt Dep.) at 107:15–109:18.

010649-11/1617648 V1

5002–5193 (Jan. 18, 2001). For a portion of these standards, regulatory limits were phased in beginning in 2007, and took full effect in model year 2010. *Id.*

Defendants researched this key attribute and saw a market opportunity.[9] As the FCA corporate witness testified, ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████  *Id.* at 176:13-21.

████████████████████████████████████████████████

████████████████████████████████████████████████.[10]

Defendants broadcast that the Class Vehicles would not exceed the 2010 federal emissions standards and met all state emissions requirements—even voluntarily complying with the 2010 federal emissions standards in 2007. Indeed, FCA admitted that, based upon its advertising and marketing campaign, ███████████████

████████████████████████████████████████████████████

████████████████████████████.[11] ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[9] Ex. 27 (David Sowers Dep.) at 164:8–20, 183:8–22; Ex. 28 ████████████████
████████████████████████████████████████████████████
██████████████████████

[10] *Id.* at 21:3–22:24, 171:6–172:18, 179:6–24.

[11] *Id.* at 17:12–18:24, 120:4–122:4, 130:17–23, 172:3–18, 205:1–206:3.

- 12 -

███████████ *See* Ex. 5 at -25957.

Defendants marketed the trucks accordingly, representing the Class Vehicles as "clean diesel," "ultra clean emissions," "cleanest diesel engines," "specifically developed to meet U.S. heavy duty truck emission standards for 2010 in all 50 states," "virtually eliminate particulate matter emissions," and "environmentally responsible."[12] And customers had to pay for these purported benefits, through two separate premiums applied to all Class Vehicles. First, ████████████████ ███████████████████████████████████████████████████████████. Ex. 27 (David Sowers Dep.) at 123:11–124:2. Second, there was a "*clean* diesel premium" of $995 included on the Monroney sticker attached to all Class Vehicles.[13]

During the class period, Defendants also uniformly and consistently marketed that the Class Vehicles delivered "superior," "improved," "best," and "increased" fuel economy—affirming the fact that Defendants knew fuel economy was an important consideration for consumers.[14] There were no material differences in marketing strategy or content, both across the Class Vehicles and across the United States. *Id.* FCA knew that fuel economy was a major factor in consumer decision to buy a diesel

---

[12] Ex. 29 (first page); Ex. 30 at -21424; Ex. 31 (first page); Ex. 32; Ex. 33; Ex. 34 at -17614.

[13] Ex. 2 (Stockton Rep.) ¶ 15; *see also* Ex. 35 (Plaintiff Martin Witberg Dep.) at 39:22–24 ("on the Monroney Label it clearly states, BlueTec Ultra Clean Diesel you pay $995 for").

[14] Ex. 28; Ex. 36 (first page); Ex. 37; Ex. 38 at -67365-66; Ex. 39 at -22974; Ex. 40 (first page); Ex. 41; Ex. 42 (2010 Dodge Ram Brochure).

vehicle. *See supra* at 2.

Common evidence that will not vary by class member will show that Defendants failed to disclose, at point of sale communications or elsewhere, that: (1) the fuel economy in Class Vehicles actually decreased from the fuel economy seen in prior models; (2) frequent desooting in Class Vehicles would decrease fuel economy and increase emissions; (3) actual on-road emissions in Class Vehicles were much higher than the emissions standards; and (4) Class Vehicles entered active regeneration more frequently in real-world driving than under testing.[15]

## IV.   ARGUMENT

### A.   Plaintiffs satisfy all Rule 23(a) requirements.

#### 1.   The Class is so numerous that joinder is impracticable.

The Class Vehicles in this case number over 420,000,[16] easily meeting the numerosity standard. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) (finding 35 class members sufficient to meet numerosity).[17]

#### 2.   Numerous common issues exist because the EED is in all Class Vehicles.

Commonality requires "a common question that will yield a common answer for the class (to be resolved later at the merits stage), and that that common answer relates to the actual theory of liability in the case." *Rikos v. Procter & Gamble Co.*,

---

[15] Ex. 27 (David Sowers Dep.) at 255:12–256:8, 259:22–260:4.
[16] Ex. 2 (Stockton Rep.) at Tab 5, p.1.
[17] Unless otherwise indicated, all internal citations and quotations are omitted.

799 F.3d 497, 505 (6th Cir. 2015).[18] This "standard is not that demanding," requiring only a single common question of law or fact. *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 168 (E.D. Mich. 2006). "[T]he commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998). Where a defendant engaged in conduct that affects a group, one or more of the elements of the claim will generally be common to all affected persons. *Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009, 1015 (W.D. Mich. 1987); *see also In re Whirlpool*, 722 F.3d at 854.

In automobile consumer protection cases, commonality is "easily satisf[ied]" where claims "involve," among other things, "the same alleged defect" found "in vehicles of the same make and model." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010); *see, e.g.*, *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 524 (C.D. Cal. 2012) (finding commonality relating to uniform rear suspension defect); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016) (commonality satisfied where GM inaccurately communicated vehicle safety ratings "allow[ing] it to command a price premium").

---

[18] Although Plaintiffs must identify common questions of law or fact, district courts are "admonishe[d]" to limit its inquiry to determining whether Rule 23 requirements are met, and "not turn class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851–52 (6th Cir. 2013).

Common issues abound here, including the existence of the EED, presence of excessive emissions and lower than expected fuel economy in the Class Vehicles, Defendants' knowledge of the same, the failure to disclose these issues to consumers, the materiality of these omissions, and whether Plaintiffs overpaid at the point of sale and/or incurred additional expense because of the excessive emissions and decreased fuel economy. *See* Ex. 1 (Smithers Rep.) § 11.4. Commonality is satisfied here.

### 3. Plaintiffs' claims are typical of the Class because they arise from a common course of conduct.

The proposed classes satisfy Fed. R. Civ. P. 23(a)(3), which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Class representatives all own a Class Vehicle, which is sufficient to meet typicality, even if they have different experiences with their vehicles. *See* Ex. 43 (excerpts of Plaintiffs' Fact Sheets); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 533 (6th Cir. 2006) (typicality satisfied when named plaintiff and other class members' claims "arise from the same practice (delivery of non-conforming vehicle), the same defect (the allegedly defective throttle body assembly), and are based on the same legal theory (breach of express warranty)," even when defect manifestation varied among class representatives). In addition, all class representatives overpaid for their vehicles at the point of sale, no class representative was informed of excessive emissions or decreased fuel economy prior to purchase, and testing results of three class representatives' vehicles were entirely consistent with Plaintiffs' expert's testing of

Class Vehicles and his theory of what causes the excessive emissions and decreased fuel economy. *See* Ex. 1 (Smithers Rep.) § 11.4.

### 4. Plaintiffs and counsel will adequately represent the interests of the Classes.

The adequacy requirement examines whether the putative class representatives "have common interests with unnamed members of the class and it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 494. (E.D. Mich. 2008). "To a large extent, the adequacy requirement tends to merge with the commonality and typicality criteria of Rule 23(a)(2) and (3)." *Id.*

Class representatives have common interests, as outlined above, and have pledged to vigorously prosecute this case through counsel.[19] Plaintiffs' counsel have demonstrated vigorous and effective prosecution on behalf of the proposed Class, including conducting a comprehensive pre-filing investigation, preparing and filing detailed complaints, responding to Defendants' multiple motions to dismiss, reviewing tens of thousands of documents, and hiring multiple highly qualified

---

[19] *See, e.g.*, Ex. 44 (Plaintiff Jeremy Perdue Dep.) at 124:3–125:17; *id.* at 124:18–19 (asked if he was willing to stay informed about the litigation, he responded "Oh, yes, yes, yes, sir, I've been doing it for five years."); Ex. 35 (Plaintiff Martin Witberg Dep.) at 372:8–373:24; *id.* at 372:8–13 (Q: "[W]hat do you think your responsibilities are as a class representative? A: To tell my story and to present all the facts as truthful as possible to a judge and let him decide."); Ex. 45 (Plaintiff Dawn Roberts Dep.) at 143:13–144:12 (confirming her willingness to do what is required to the best of her abilities, including testifying at trial, traveling for trial, and overseeing her attorneys).

experts to determine liability, causation, and damages theories. *See* Ex. 46 (Berman Decl.) ¶ 3. Proposed class counsel[20] are adequate and satisfy the Rule 23(g) factors.

**B.      Plaintiffs meet the Rule 23(b) factors.**

**1.      Common issues predominate, because the issues subject to generalized proof predominate over issues subject only to individualized proof.**

Rule 23 allows a class action when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). A common question "is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized class-wide proof.'" *Tyson Foods*, *Inc. v. Bouaphakeo*, 577 U.S. 442, 454 (2016) (quoting 2 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:50, pp. 196–97 (5th ed. 2012)). In contrast, "an individual question is one where 'members of a proposed class will need to present evidence that varies from member to member.'" *Id.* As detailed below, both common questions of fact *and* law will predominate across all claims in this case.

**a.      Common questions of fact predominate for all claims.**

As noted, courts often find that common factual issues predominate in automobile class action cases involving vehicles that perform below the industry standard. *See, e.g.*, *Daffin*, 458 F.3d at 554; *Wolin*, 617 F.3d at 1173 (common issues

---

[20] The "Proposed Class Counsel" are Hagens Berman Sobol Shapiro LLP; The Miller Law Firm PC; Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.; and Seeger Weiss LLP.

predominate such as whether Land Rover was aware of and had a duty to disclose the defect and violated consumer protection laws).[21] As recounted above, the common factual questions—including the existence of the excessive emission and decreased fuel economy, Defendants' knowledge of the knowledge of the same, and class members' overpayment for the vehicles—will predominate at trial and, standing alone, are sufficient to certify the classes. *See* Rule 23(b)(3) (questions of law *or* fact must predominate); *Daffin*, 458 F.3d at 554 (affirming district court's certification of class based solely on common factual questions).

### b.    Common questions of law predominate for RICO Claims.

A RICO claim under 18 U.S.C. § 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A plaintiff must allege that she has "been injured in h[er] business or property by the conduct constituting the violation." *Id.* The conduct of Defendants in this case will be proven by common proof. This common proof includes their efforts to jointly develop and promote the Class Vehicles, ECF No. 62,

---

[21] *See also Keegan*, 284 F.R.D. at 532–34 (predominance found based on common evidence of defect, the defect's impact on vehicle safety, Honda's knowledge, and Honda's disclosures to customers); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596–97 (C.D. Cal. 2008) (predominating common issues included defendant's knowledge of defect, its duty to disclose, whether failure to disclose was material, and whether conduct violated consumer protection statutes); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 681–82 (S.D. Fla. 2009) (the "critical issue of whether the [airbag system] was defective is common to all putative class members" and "predominates over the individual issues").

SAC ¶¶ 70–106 (PageID.8386–8400), and with a common goal of developing a vehicle that passes emissions tests, but emits excessive emissions in real-world driving and engages in active regeneration at a high rate, leading to increased emissions and a drop in fuel economy.[22]

Plaintiffs will also establish the existence of an enterprise through common proof, and that proof will not differ among class members. An "enterprise" under RICO is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Common evidence here will establish an enterprise; indeed, Cummins and FCA routinely admit as much. *See supra* at 2 (referencing 2007 environmental award); Ex. 3 ("Working in a close partnership, Chrysler and Cummins achieved remarkable results in meeting and exceeding both regulatory requirements and customer needs."). Hence, Plaintiffs will prove an enterprise partly through Defendants' own admissions, and this proof will not vary among class members.

Plaintiffs will also establish a pattern of racketeering activity through common proof. This element requires "at least two acts of racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989). Here, Plaintiffs allege two predicate acts: (1) mail fraud, in violation of 18 U.S.C. § 1341, and (2) wire fraud, in violation of 18

---

[22] *See* Ex. 1 (Smithers Rep.) § 7; *see also* Ex. 6 (Brett Fathauer Dep.) at 72:19–21 ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████).

U.S.C. § 1343. *See* ECF No. 62, SAC ¶¶ 309, 312 (PageID.8496–98). These predicate acts are subject to common proof because "RICO claims predicated on mail and wire fraud do not require first-party reliance to establish that the injuries were proximately caused by the fraud." *Torres v. S.G.E. Mgmt., LLC*, 838 F.3d 629, 637 (5th Cir. 2016) (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008)). This is because the use of mail "to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any misrepresentation." *Bridge*, 553 U.S. at 648. *See Torres*, 838 F.3d at 646; *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259–61 (11th Cir. 2004) (affirming certification of nationwide RICO class when jury could reasonably infer doctor-plaintiffs relied on assurances from HMO about equitable pay); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 122 (2d Cir. 2013) (in RICO case, affirming certification of customers who overpaid pursuant to food distributor's inflated invoices scheme).

Plaintiffs' claim of a pattern of racketeering activity is subject to classwide proof. Across the class, Plaintiffs will demonstrate that Defendants engaged in the joint development, manufacture, and sale of vehicles that were ***intentionally designed*** to pass emissions tests, but in real-world driving relied on active regeneration to clean out soot by diverting fuel, which led to increased emissions and decreased fuel economy. In short, Defendants conspired to develop and sell a vehicle that ***they knew***

- 21 -

would not perform as advertised, even as they cynically celebrated environmental awards they presented each other based on this lie. *See supra* Part III.C.

### 2. Common questions of law predominate for Plaintiffs' contract claims.

Common questions of law predominate for Plaintiffs' contract claims because the elements of breach of contract—duty, breach, and injury—are the same throughout the country.[23] Courts have often certified nationwide classes based on a breach of contract claim in reliance on these common elements.[24]

Plaintiffs will establish breach of contract because none of the class members received what they bargained for, which was a truck that performed as advertised and as a reasonable consumer would expect. *See* Ex. 1 (Smithers Rep.) § 7. And the "contract" is simply the "sale of the vehicle." *Bledsoe*, 378 F. Supp. 3d at 645. These basic factual predicates are easily proven on a classwide basis.

---

[23] *See Klay*, 382 F.3d at 1263 ("A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey."); *see also id.* ("Whether a contract has been breached is a pure and simple question of contract interpretation which should not vary from state to state.").

[24] *See, e.g., Klay*, 382 F.3d at 1261 (breach of contract claim on behalf of nationwide class is based on questions of law common to the whole class); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 124 (approving certification of nationwide class asserting breach of contract when relevant contracts were "substantially similar in all material respects"); *see also In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) (certifying nationwide class based on breach of contract claim and noting that, "contrary to Conseco's representations, several courts have recognized that the law relating to the element of breach does not vary greatly from state to state"); *Seekamp v. It's Huge, Inc.*, 2012 WL 860364, at *11 (N.D.N.Y. Mar. 13, 2012) (certifying nationwide class for breach of contract claim).

### 3.   Common questions of law predominate for Plaintiffs' consumer protection act claims.

Applying the consumer protection laws of the states in which Plaintiffs purchased their vehicles, *In re Auto. Parts Antitrust Litig.*, 2019 WL 7877812, at *2 (E.D. Mich. Dec. 20, 2019), common questions of law predominate within each state-specific class (except for South Carolina).[25]

### a.   Statutory Consumer Fraud Claims

### (1)   The California Class

Plaintiffs seek certification of a California class to prosecute three California consumer fraud claims: the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 ("CLRA"); the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); and the False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL").

### (a)   Common issues predominate the CLRA claim.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale … of goods or services to any consumer." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting Cal. Civ. Code § 1770). Where, as here, a CLRA claim is premised on an omission, "the omission must be either: (1) 'contrary to a representation actually made by the defendant'; or (2) 'an omission

---

[25] Plaintiffs acknowledge that they are unable to bring a class action claim under the South Carolina Unfair Trade Practices Act. *See Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723, 725 (S.D.C. 2016) (collecting cases).

of a fact the defendant was obliged to disclose.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (citation omitted). A duty to disclose arises "(1) when there is a known defect in a consumer product and there are safety concerns associated with the product's use; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 958–59 (N.D. Cal. 2014). The evidence proffer presented above shows that the issue of Defendants' duty to disclose can be resolved with common proof. *See supra* Part III.

The CLRA claim is also suitable for classwide resolution because causation and materiality are considered under an objective standard. "Under the CLRA, plaintiffs may prove causation on a classwide basis by demonstrating the materiality of the omissions." *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *11 (C.D. Cal. July 1, 2013). "Since materiality concerns objective features of allegedly deceptive advertising, not subjective questions of how it was perceived by each individual consumer, whether an omission is material presents a common question of fact suitable for class litigation." *Id.* Reliance turns on materiality, "which is judged by an objective reasonable person standard," focusing on the defendant's conduct, which "can be determined relative to the class as a whole." *Ehret v. Uber Techs., Inc.*, 2015

WL 7759464, at *13 (N.D. Cal. Dec. 2, 2015); *see also Edwards v. Ford Motor Co.*, 603 F. App'x 538, 540 (9th Cir. 2015) (reversing decision denying class certification, and holding "a finding that the defendant has failed to disclose information that would have been material to a reasonable person who purchased the defendant's product gives rise to a rebuttable inference of reliance as to the class").

Here, Defendants knew or should have known, but failed to disclose, material information to consumers, including the existence of excessive emissions and decreased fuel economy. Defendants withheld this information, which even they acknowledged is highly material to consumers. Defendants' duty to disclose this information, their failure to disclose, and the materiality of this information are all common to the California Class as a whole, and predominate over any individual issue any California class member may face.

Plaintiffs will also show that all California class members were exposed to Defendants' material omissions. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226–27 (9th Cir. 2015). As in *Daniel*, FCA here used its dealers as channels of communication with consumers, requiring consumers to return to the dealers for warranty repairs, circulating TSBs and service messages to dealers, and distributing vehicle literature through its dealers. *Id.* at 1227. Plaintiffs will present classwide evidence that Defendants could have, but did not, disclose or caused to be disclosed the excessive emissions or the decreased fuel economy through FCA's authorized

- 25 -

dealerships, thus establishing classwide exposure to FCA's omissions. Classwide exposure to omissions is also established where, for instance, the defendant undertook "extensive and long running advertising campaigns." *McVicar*, 2015 WL 4945730, at *11. Defendants undeniably engaged in a long-running campaign to sell the vehicles as "ultra clean" vehicles with "superior," "improved," "best," and "increased" fuel economy. *See supra* Part III.D. Certification is appropriate here.

### (b)    Common issues predominate the UCL claim.

The UCL prohibits "practices which are unlawful, unfair or fraudulent." *Ehret*, 2015 WL 7759464, at *8 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009)). "Omissions can form the basis of a fraudulent prong UCL claim." *In re Carrier IQ, Inc. Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1112 (N.D. Cal. 2015). A UCL violation is shown if "members of the public are likely to be deceived" by the fraudulent omission, *Ehret*, 2015 WL 7759464, at *8 (citation omitted), which is a question of materiality. *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 485 (S.D. Cal. 2013). As with the CLRA, under the UCL "[a]ctual reliance is presumed (or at least inferred) if the omission is material." *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *18 (C.D. Cal. Oct. 3, 2014) (citation omitted). Here, Plaintiffs will establish each of these elements with no individual inquiries, for the same reasons set forth above for the CLRA claim.

### (c) Common issues predominate the FAL claim.

The FAL prohibits "untrue or misleading" advertising likely to deceive members of the public. *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 595 (2011) (quoting Cal. Bus. & Prof. Code § 17500). "A violation of the UCL's fraud prong is also a violation of the FAL, and likewise, a violation of the FAL necessarily violates the UCL." *Waller*, 295 F.R.D. at 485. For the same reasons set forth above as to the CLRA and UCL claims, the California Class' FAL claim is susceptible to generalized proof and therefore suited for class certification.

### (2) The Idaho Class

The Idaho Consumer Protection Act ("ICPA") prohibits enumerated "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," including "engaging in any act or practice that is otherwise misleading, false, or deceptive to the consumer." Idaho Civ. Code § 48-603. Plaintiffs need not prove individual reliance under the ICPA. *In re Beach*, 447 B.R. 313, 319 n.4 (Bankr. D. Idaho 2011) (citing *State ex. rel. Kidwell v. Master Distribs., Inc.*, 101 Idaho 447, 615 P.2d 116, 122–23 (1980)). Accordingly, Plaintiffs can invoke classwide proof to demonstrate that Defendants engaged in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce" in Idaho. *Kidwell*, 615 P.2d at 122.

### (3) The Illinois Class

The Illinois Consumer Fraud Act prohibits "[u]nfair methods of competition

010649-11/1617648 V1

and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2. Reliance is not a requirement under the Illinois CFA because a "statement is deceptive if it *creates a likelihood* of deception or has *the capacity* to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (emphasis added). Plaintiffs will be able to demonstrate Defendants' omissions "create[d] a likelihood" or had the "capacity" to deceive, without requiring any individual reliance inquiries. Plaintiffs can litigate Illinois CFA claims on a classwide basis.

### (4)   The Michigan Class

The Michigan Consumer Protection Act prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903(1). The statute "captures more conduct within its sweep [than common law fraud] and offers greater protection to consumers." *Evans v. Ameriquest Mortg. Co.*, 2003 WL 734169, at *3 (Mich. Ct. App. Mar. 4, 2003). Reliance is established by the reasonable person standard, and it is presumed when the defendant omits material information. *See In re GM Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 634 (E.D. Mich. 2019). Classwide proof will demonstrate here that Defendants withheld material information about the Class Vehicles, making certification of a class under this statute appropriate.

### (5)   The New Mexico Class

The New Mexico Unfair Practices Act prohibits "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D). The presumption of reliance applies where "it is logical to believe that a reasonable person … would attach importance to the omitted fact in his choice of action on the transaction in question." *Porcell v. Lincoln Wood Prods., Inc.*, 713 F. Supp. 2d 1305, 1322 (D.N.M. 2010). For the same reasons cited for other consumer protection statutes, Plaintiffs will establish the materiality of the omitted information on a classwide basis.

### (6)   The North Carolina Class

The North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). An NCUDTPA claim requires that defendant committed such an act or practice in commerce and that such act or practice proximately caused injury to plaintiff. *Solum v. CertainTeed Corp.*, 2015 WL 6505195, at *5 (E.D.N.C. Oct. 27, 2015). An act or practice is unfair or deceptive if it has "the tendency or capacity to mislead" or creates "the likelihood of deception." *LFM Real Estate Ventures, LLC v.*

*SunTrust Bank*, 2012 WL 6114242, at *10 (W.D.N.C. Dec. 7, 2012). This analysis turns on the objective materiality of the information Defendants withheld. *Media Network, Inc. v. Long Haymes Carr, Inc.*, 678 S.E.2d 671, 683–84 (N.C. Ct. App. 2009) ("[U]nfairness and deception are gauged by consideration of the effect of the practice on the marketplace[.]"). Thus, like the other consumer fraud claims, the NCUDTPA claim is well-suited for class treatment.

### (7)    The Texas Class

The Texas Deceptive Trade Practices Consumer Protection Act ("TDTPCPA") bars "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46(a). A prohibited act (or omission) can be proven by demonstrating "an act or series of acts which has the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous." *Spradling v. Williams*, 566 S.W.2d 561, 562 (Tex. 1978). Causation is an element of this claim, but as the *Spradling* court's reference to "ignorance" shows, actual reliance is not required. *Id.*

The TDTPCPA's causation requirement is susceptible to classwide proof. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1016–17 (C.D. Cal. 2015) (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2003)). Like other state consumer fraud statutes, it allows a classwide inference of reliance or causation where the omitted information would have affected consumers' purchasing decisions. *See*

- 30 -

*Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1164–65 (N.D. Cal. 2008) (comparing reliance requirements of TDTPCPA and California CLRA, and concluding: "When applied in a class setting, California courts do not appear to apply the materiality requirement in a significantly different manner from the Texas courts. … [T]he court does not find that the CLRA and [TDTPCPA] materially differ with respect to a reliance requirement."). Thus, predominance is satisfied.

### 4. Common questions of law predominate for Plaintiffs' fraudulent concealment claims.

Plaintiffs seek certification of fraudulent concealment claims on behalf of all state classes. Each such claim requires a showing that Defendants intentionally concealed a material fact that it had a duty to disclose to Plaintiffs and class members, resulting in damages.[26] These claims are amenable to certification (on a state-by-state basis) because they require no individual inquiries into particular consumers' reliance or decision-making processes. Instead, as with the consumer fraud statutory claims, the causal element of Plaintiffs' fraudulent concealment claims will be satisfied through common evidence demonstrating that Defendants possessed material

---

[26] **CA:** *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015); **ID:** *G&M Farms v. Funk Irrigation Co.*, 808 P.2d 851, 858 (Idaho 1991); **IL:** *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 40 N.E.3d 264, 274 (Ill. Ct. App. 2015); **MI:** *Roberts v. Saffell*, 760 N.W.2d 715, 719–20 (Mich. Ct. App. 2008); **NC:** *Hunter v. Guardian Life Ins. Co. of Am.*, 593 S.E.2d 595, 598–99 (N.C. Ct. App. 2004); **NM:** *Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1098 (N.M. Ct. App. 2007); **SC:** *City of Charleston v. Hotels.com, LP*, 487 F. Supp. 2d 676, 680 (D.S.C. 2007); **TX:** *Newby v. Enron Corp.*, 2010 WL 9077875, at *20 (S.D. Tex. Jan. 19, 2010).

information confirming the existence of the EED and had a duty to disclose it, but failed to do so, to the quantifiable detriment of all members of the state classes.

### 5. Certification of multiple states in one class action is routine and does not defeat predominance.

Certification of a class for each state with a class representative is simple and easily managed at trial. *See Rikos*, 799 F.3d at 518 (6th Cir. 2015) (affirming certification of five state-specific classes). In *Tershakovec v. Ford Motor Co.*, -- F. Supp. 3d --, 2021 WL 2700347, at *21 (S.D. Fla. July 1, 2021), after considering a range of options, the court certified nine separate state-specific classes. The court noted that "manageability is a concern when there are variations in state law *within* a class, but here, the Plaintiffs have made the classes small enough that the law that applies to each class is uniform." *Id.* at *12. In this case, although the law is substantially the same *across* the classes, the law is the same *within* the class, rendering certification appropriate.

## C. Common Model of Damages

### 1. RICO Damages

Calculation of overpayment is an appropriate measure of damages for RICO claims, because it will return the "property" obtained from the consumers as a result of the racketeering.[27] *See Reiter*, 442 U.S. at 338. Ted Stockton's overpayment model

---

[27] "A consumer who has been overcharged can claim injury to property under RICO based on a wrongful deprivation of money, which is a form of property." *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1087 (N.D. Cal. 2013); *see Reiter*

based on overpayment for an "ultra-clean" diesel premium that was not delivered is accordingly appropriate for RICO claims. *See* Ex. 2 (Stockton Rep.) ¶ 20; *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 2020 WL 1180550, at *48–50 (D. Kan. Mar. 10, 2020) (overpayment model based on comparing prices in the but-for world appropriate measure of RICO damages).

## 2.     Breach of Contract Damages

Similarly, the "'difference between price paid for a product and value received' is in fact the main measure of contract damages." *Williams v. Apple, Inc.*, -- F.R.D. --, 2021 WL 2186223, at *18 (N.D. Cal. May 28, 2021); *see id.* (rejecting argument price premium damages model was improper measure of breach of contract damages). Mr. Stockton's model will offer this price premium calculation as well based on the calculation of the "ultra-clean" diesel premium that FCA advertised right on the Monroney sticker, which customers bargained for but did not receive. *See* Ex. 2 (Stockton Rep.) ¶ 15.

## 3.     Consumer protection and fraudulent concealment damages.

Overpayment damages are recoverable for violation of consumer protection statutes[28] and for fraud,[29] whether those damages are considered lost benefit of the

---

*v. Sonotone Corp.*, 442 U.S. 330, 338 (1979) ("[P]roperty comprehends anything of material value owned or possessed. Money, of course, is a form of property.").

[28] **CA:** Cal. Civ. Code § 1780(a) (CLRA); **IL:** *Smith, Allen, Mendenhall, Emons & Selby v. Thomson Corp.*, 862 N.E.2d 1006, 1009 (Ill. Ct. App. 2006) (ICFA); **MI:** *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 854–56 (S.D. Ohio 2012); **NC:**

bargain, out of pocket repair costs, or other form of damage. For example, the California Plaintiffs' UCL and FAL claims permit recovery of "the excess of what the plaintiff gave the defendant over the value of what the plaintiff received." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015). These are precisely the types of damages Mr. Stockton calculates here, both in the form of overpayment for a non-existent "ultra-clean" diesel premium, and the costs associated with low fuel economy that Defendants shifted onto customers. *See* Ex. 2 (Stockton Rep.) ¶¶ 89–93, 107–12.

## D.   A class action is a superior method of adjudicating this dispute.

A class action must be "superior to other available methods" of fair and efficient adjudication. Fed. R. Civ. P. 23(b)(3). Superiority generally flows from the predominance of common questions, because common resolution of such questions in a single lawsuit is preferable to piecemeal litigation. Because common issues substantially predominate over individual issues, the superiority of the class action

*Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 967 (D. Minn. 2020); **NM:** *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 728 F. Supp. 2d 1170, 1191 n.14 (D.N.M. 2010); **TX:** *Everett v. TK-Taito, LLC*, 178 S.W.3d 844, 858 (Tex. Ct. App. 2005) (TDTPA).

[29] **CA:** *Lazar v. Superior Court*, 909 P.2d 981, 990 (Cal. 1996); **ID:** *Apr. Beguesse, Inc. v. Rammell*, 328 P.3d 480, 490–91 (Idaho 2014); **IL:** *Giammanco v. Giammanco*, 625 N.E.2d 990, 997–1001 (Ill. Ct. App. 1993); **MI:** *Ohst v. Crehan*, 2021 WL 2390036, at *10 (Mich. Ct. App. June 10, 2021); **NC:** *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2018 WL 4649493, at *6 (N.C. Super. Sept. 26, 2018); **NM:** *Shearill v. Amini-Ghomi*, 2020 WL 7312036, at *2 n.2 (N.M. Ct. App. Dec. 7, 2020); **SC:** *Schnellmann v. Roettger*, 645 S.E.2d 239, 241 (S.C. 2007); **TX:** *Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d 1, 19 (Tex. Ct. App. 2016).

mechanism is apparent in this case.

Rule 23(b)(3) lists four non-exclusive factors to consider in determining superiority. On the first and third factors, the value of the claims is too low for class members to litigate their claims individually—and the corresponding cost is too high for any one class member to assume. *In re Whirlpool*, 722 F.3d at 861. The next factor—the extent and nature of similar litigation—favors certification, because this is the only case of its kind in the country. The final superiority factor—the likely difficulties in managing a class action—also favors certification. Because this case will be resolved by common proof, it can be tried efficiently. Plaintiffs do not foresee any serious manageability problems—and certainly none that make potentially tens of thousands of individual actions a better alternative. *Bobbitt v. Acad. of Ct. Reporting, Inc.*, 252 F.R.D. 327, 344 (E.D. Mich. 2008).

## V.    CONCLUSION

This case is tailor-made for class certification. All Class Vehicles contain an EED that causes excessive emissions and decreased fuel economy in real-world driving. These allegations can be resolved on a classwide basis using common proof. Plaintiffs' Motion should be granted.

DATED: September 13, 2021                    Respectfully submitted,

*/s/ Steve W. Berman*
Steve W. Berman
Jerrod C. Patterson
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
jerrodp@hbsslaw.com

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt, Jr. (P81118)
THE MILLER LAW FIRM PC
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
JCecchi@carellabyrne.com

Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Telephone: (212) 584-0700
cseeger@seegerweiss.com

Paul J. Geller
Stuart A. Davidson
Mark J. Dearman
ROBBINS GELLER RUDMAN
& DOWD LLP
120 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com

*Attorneys for Plaintiffs*

010649-11/1617648 V1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 13, 2021, the foregoing document was electronically filed using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ Steve W. Berman*
Steve W. Berman

010649-11/1617648 V1