# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

JAMES BLEDSOE, et al., on behalf of
themselves and all others similarly
situated,

           Plaintiffs,

    vs.

FCA US LLC, a Delaware corporation,
and CUMMINS INC., an Indiana
corporation,

           Defendants.

Case No. 4:16-cv-14024

Hon. Terrence G. Berg

# CUMMINS INC.'S OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT OF ISSUES PRESENTED.............................................. ix

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
      AUTHORITY ................................................................. xi

INTRODUCTION .................................................................................1

BACKGROUND ..................................................................................2

I.    THERE ARE MEANINGFUL DIFFERENCES IN THE TRUCKS
        AMONG THE TWO PLATFORMS AND SIX MODEL YEARS. ..............2

II.   PLAINTIFFS HAD MATERIAL DIFFERENCES WITH THEIR
        PURCHASES AND USE OF THE TRUCKS. ................................4

ARGUMENT .......................................................................................6

I.    THE COURT CANNOT CERTIFY PLAINTIFFS' PROPOSED
        CLASSES BECAUSE THEY CONSIST OF MEMBERS WHO
        LACK STANDING TO ASSERT CLAIMS AGAINST CUMMINS...........7

      A.    Plaintiffs Do Not Offer Evidence Of A Defect Device. ......................7

      B.    The *Counts* Show Cause Order Shows Plaintiffs Lack Standing. ........9

      C.    Plaintiffs And Putative Class Members Lack Standing To
             Pursue Their Fuel Economy Claims. ................................................10

      D.    RAM 3500 Purchasers Lack Standing. .............................................11

II.   INDIVIDUALIZED ISSUES PRECLUDE A FINDING OF
        PREDOMINANCE OR SUPERIORITY.......................................12

      A.    Plaintiffs' Nationwide RICO Class Cannot Be Certified...................12

            1.    Plaintiffs' Class Definition Is Overbroad ................................13

            2.    The Court Cannot Certify A Class Based On Plaintiffs'
                 Newly-Asserted EED Theory. ................................................14

a)      Smithers' PEMS Testing Was Substandard And Does Not Support His Opinions. .....................................15

b)      Plaintiffs' EED Theory Does Not Support Plaintiffs' Claim They Were Injured By Cummins' Actions. ...........................................................................16

3.      Individual Analysis As To Whether Each Class Member Suffered An Injury "By Reason Of" Cummins' Actions Will Predominate Over Common Questions. ...........................18

B.      Plaintiffs' State Law Claims Cannot Be Certified. .............................21

1.      Application Of The State Laws Preclude Certification. ...........21

a)      The State Consumer Protection Claims.........................21

b)      Fraudulent Concealment Claims. ..................................24

2.      Plaintiffs' Differential Experiences Preclude Certification. .....................................................................25

C.      Injury, Causation, And Damages Issues Preclude Certification. ........29

1.      Plaintiffs' Damages Model Does Not Fit Their Claims. ..........29

III.    PLAINTIFFS CANNOT SATISFY RULE 23(A)'S REQUIREMENTS. .......................................................................31

A.      Plaintiffs' Claims Are Not Common...................................................32

B.      Typicality............................................................................................32

C.      Several Plaintiffs Are Not Adequate Representatives ........................34

CONCLUSION .......................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abazari v. Rosalind Franklin Univ. of Med. & Sci.*,
   2015 IL App (2d) 140952 ...........................................................................24

*Akaosugi v. Benihana Nat'l Corp.*,
   282 F.R.D. 241 (N.D.Cal. 2012)...............................................................33

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................................32

*Anderson v. United States Dep't of HUB*,
   554 F.3d 525 (5th Cir. 2008) ...................................................................15

*AT&T Corp. v. Rylander*,
   2 S.W.3d 546 (Tex. App. 1999).................................................................25

*Avritt v. Reliastar Life Ins. Co.*,
   615 F.3d 1023 (8th Cir. 2010) ...................................................................7

*Bd of Educ. Of Perquimans Cty. v. Deitrick*,
   221 N.C. 38 (1942) ..................................................................................25

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ....................................................................33

*Bolin v. Sears, Roebuck & Co.*,
   231 F.3d 970 (5th Cir. 2000) ...................................................................19

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008)................................................................................18

*In re Bridgestone/Firestone Tires Prods. Liab. Litig.*,
   288 F.3d 1012 (7th Cir. 2002) .................................................................21

*Bristol-Myers Squibb Co. v. Superior Ct.*,
   137 S. Ct. 1773 (2017)............................................................................12

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir.1998) ....................................................................34

*In re Cheerios Mktg and Sales Practices Litig.*,
  No. 09-cv-2413, 2012 WL 3952069 (D.N.J. Sept. 10, 2012) ...........................31

*Chi. Male Med. Clinic, Inc. v. Ultimate Mgmt.*,
  No. 12-5542, 2012 WL 6755104 (N.D. Ill. Dec. 28, 2012) ...............................22

*Cholakyan v. Mercedes-Benz, USA, LLC*
  281 F.R.D. 534 (C.D. Cal. 2012)........................................................................34

*Clark v. Experian Info. Sols., Inc.*,
  256 F. App'x 818 (7th Cir. 2007) (Illinois).......................................................22

*Colley v. Procter & Gamble Co.*,
  No. 16-0918, 2016 WL 5791658 (S.D. Ohio Oct. 4, 2016) ............................7, 8

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)........................................................................................6, 29

*Counts v. General Motors LLC*,
  No. 1:16-cv-12541 (E.D. Mich. July 7, 2016)............................................*passim*

*Cruson v. Jackson Nat'l Life Ins. Co.*,
  954 F.3d 240 (5th Cir. 2020) ..............................................................................12

*D C Custom Freight, LLC v. Tammy A. Ross & Assocs.*,
  273 N.C. App. 220 (2020) ...................................................................................22

*Daffin v. Ford Motor Co.*,
  458 F.3d 549 (6th Cir. 2006) ..............................................................................20

*Divis v. Gen. Motors LLC*,
  No. 18-13025, 2019 WL 4735405 (E.D. Mich. Sept. 27, 2019) .......................22

*Ehret v. Uber Techs., Inc.*,
  148 F.Supp.3d 884 (N.D. Cal. 2015)..................................................................23

*Falcon v. Philips Elec. N. Am. Corp.*,
  304 F. App'x 896 (2d Cir. 2008) ...................................................................33, 34

*Frank v. D'Ambrosi*,
  4 F.3d 1378 (6th Cir. 1993) ................................................................................12

*Garrett v. Cassity*,
No. 09-1252, 2011 WL 3235633 (E.D. Mo. July 28, 2011) ..............................25

*In re Gen. Motors LLC Ignition Switch Litig.*,
407 F. Supp. 3d 212 (S.D.N.Y. 2019) ...............................................................29

*In re GM LLC Ignition Switch Litig.*,
No. 14-2543, 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ..............................13

*Gustafson v. Goodman Mfg. Co. LP*,
No. 13-8274, 2016 WL 1029333 (D. Ariz. Mar. 14, 2016) ...............................14

*Herremans v. BMW of N. Am., LLC*,
No. 14-2363, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ...............................23

*Jaber v. GC Servs. Ltd. P'ship*,
No. 2:17-cv-19371-VAR-SDD, 2019 WL 2579459 (E.D. Mich. June 24,
2019) .................................................................................................................13

*JM v. New Mexico Dep't of Health*,
No. 07-0604, 2009 WL 10698495 (D.N.M. Mar. 5, 2009) ...............................24

*Johannessohn v. Polaris Indus. Inc.*,
9 F.4th 981 (8th Cir. 2021) ...........................................................................7, 11

*Johnson v. ITS Fin. LLC*,
314 F.R.D. 441 (S.D. Ohio 2015) .....................................................................32

*Levine v. Blue Shield of California*,
189 Cal. App. 4th 1117 ......................................................................................25

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................................................................7

*Lyngaas v. Ag*,
992 F.3d 412 (6th Cir. 2021) .............................................................................12

*Marshall v. H&R Block Tax Servs. Inc.*,
270 F.R.D. 400 (S.D. Ill. 2010) ........................................................................21

*Martin v. Ford Motor Co.*,
292 F.R.D. 252 (E.D. Pa. 2013) ........................................................................28

*Matanky v. Gen. Motors LLC*,
   370 F. Supp. 3d 772 (E.D. Mich. 2019) ............................................................22

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) ..............................................................................19

*McMullen v. Joldersma*,
   174 Mich. App. 207 (1988) ................................................................................25

*Media Network, Inc. v. Long Haymes Carr, Inc.*,
   197 N.C. App. 433 (2009) ..................................................................................24

*Miller v. Mercedes-Benz USA LLC*,
   No. 06-05382, 2009 WL 1393488 (C.D. Cal. May 15, 2009)...........................35

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) ............................................................................20

*O'Shea v. Littleton*,
   414 U.S. 488 (1974).............................................................................................7

*In re OnStar Contract Litig.*,
   278 F.R.D. 352 (E.D. Mich. 2011) .......................................................22, 23, 27

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006) .............................................................................13

*Pagan v. Abbott Labs., Inc.*,
   287 F.R.D. 139 (E.D.N.Y. 2012)........................................................................34

*Pitts v. Jackson Nat. Life Ins. Co.*,
   352 S.C. 319 (Ct. App. 2002) ............................................................................25

*Porcell v. Lincoln Wood Prods., Inc.*,
   713 F. Supp. 2d 1305 (D.N.M. 2010).................................................................22

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
   223 Cal. App. 4th 1105 (2014) ..........................................................................24

*Rickman v. BMW of N. Am.*,
   No. 18-4363, 2019 WL 2710068 (D.N.J. June 27, 2019) .......................9, 11, 17

*Rosen v. J.M. Auto. Inc.*,
  270 F.R.D. 675 (S.D. Fla 2009) ............................................................21

*Sanders v. Apple Inc.*,
  672 F.Supp.2d 978 (N.D. Cal. 2009) ....................................................31

*Sautner v. Fleetwood Enters., Inc.*,
  No. 05-73252, 2007 WL 1343806 (E.D. Mich. May 8, 2007) ..........22

*Shipp v. Memphis Area Office, Tennessee Dep't of Employment Security*,
  581 F.2d 1167 (6th Cir. 1978) ..............................................................34

*Simington v. Lease Fin. Grp., LLC*,
  No. 10-6052, 2012 WL 6681735 (S.D.N.Y. Dec. 14, 2012) ..............15

*Sosna v. Iowa*,
  419 U.S. 393 (1975) ...............................................................................35

*Sowards v. Rathbun*,
  134 Idaho 702 (2000) .............................................................................25

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) .........................................................20, 33

*Stout v. J.D. Byrider*,
  228 F.3d 709 (6th Cir. 2000) ................................................................21

*Taylor v. McNichols*,
  149 Idaho 826 (2010) .............................................................................22

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
  MDL No. 2545, 2018 WL 3586182 (N.D. Ill. July 26, 2018) ..........18

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*,
  288 F.R.D. 445 (C.D. Cal. Jan. 9, 2013) .............................................15

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ........................................................................7, 11

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) .................................................................18

*Vasalle v. Midland Funding LLC*,
 708 F.3d 747 (6th Cir. 2013) ...............................................................32

*In re Vioxx Class Cases*,
 180 Cal. App. 4th 116 (Cal. Ct. App. 2009)....................................23, 27

*In re Volkswagen "Clean Diesel" Mktg. Sales Pracs., & Prods. Liab. Litig.*,
 500 F. Supp. 3d 940 (N.D. Cal. 2020)..................................................30

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011)......................................................................6, 31, 32

*Wall v. Michigan Rental*,
 852 F.3d 492 (6th Cir. 2017) ........................................................12, 18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
 617 F.3d 1168 (9th Cir. 2010) .............................................................20

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*,
 No. 3:09-md-02100, 2012 WL 865041 (S.D. Ill. Mar. 13, 2012) ....................27

## Statutes

18 U.S.C. § 1961 *et seq.*......................................................................*passim*

Tex. Bus. & Com. Code § 17.50(a)(1)(B) ............................................22

## Other Authorities

Fed. R. Civ. P. 23 ...............................................................................*passim*

U.S. CONST., ART. III...........................................................................*passim*

## STATEMENT OF ISSUES PRESENTED

(1)    Should the Court certify Plaintiffs' nationwide RICO class and nine separate state subclasses where:

(a) Plaintiffs have expressly disclaimed any evidence that the MY 2007-2012 Dodge 2500 and 3500 RAM Trucks (the "Trucks") are equipped with defeat devices, have not identified any information that Cummins should have disclosed to the Environmental Protection Agency or California Air Resources Board but failed to disclose, and Plaintiffs' purported expert tested only a single RAM 3500 Truck, such that Plaintiffs and putative class members lack standing to assert any claims relating to the emissions performance of their Trucks;

(b)   Plaintiffs have not identified any representations made by Cummins regarding the Trucks' fuel economy, the Trucks' fuel economy performance can differ significantly depending on the customer's use of the Truck, and Plaintiffs have testified to different expectations and results such that Plaintiffs lack standing to assert any claims relating to their Trucks' fuel economy or, at most, resolving such claims would require an individualized analysis incompatible with class proceedings?

**Cummins says:    No.**

(2)    Where Plaintiffs' deposition admissions reveal that they had different expectations relating to their Trucks' emissions and fuel economy performance, that

they use their Trucks differently, that they purchased their Trucks for different reasons, and in response to individual factors and communications (rather than any centralized messaging by Cummins), and where their claims are based in fraud and therefore require proof of materiality, reliance and causation, can this Court certify Plaintiffs' nationwide RICO class and various state subclasses where individual issues predominate over common questions?

**Cummins says:    No.**

(3)    Where the Plaintiffs and class members are subject to unique defenses (including that they removed their Truck's emissions system and installed an illegal aftermarket device, and that they spoliated evidence by selling their Trucks even after becoming parties to this litigation), and where several of the named Plaintiffs are not even members of the state subclasses that they purport to represent, can this Court find Plaintiffs satisfied Rule 23's commonality, typicality and adequacy requirements?

**Cummins says:    No.**

## STATEMENT OF CONTROLLING
## OR MOST APPROPRIATE AUTHORITY

**I.    THE COURT CANNOT CERTIFY PLAINTIFFS' PROPOSED CLASSES BECAUSE THEY CONSIST OF MEMBERS WHO LACK STANDING TO ASSERT CLAIMS AGAINST CUMMINS.**

- *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)

- *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981 (8th Cir. 2021)

- *Counts v. General Motors LLC*, No. 1:16-cv-12541 (E.D. Mich. July 7, 2016)

- *Rickman v. BMW of N. Am.*, No. 18-4363, 2019 WL 2710068 (D.N.J. June 27, 2019)

**II.    INDIVIDUALIZED ISSUES PRECLUDE A FINDING OF PREDOMINANCE OR SUPERIORITY.**

- *Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000)

- *In re OnStar Contract Litig.*, 278 F.R.D. 352 (E.D. Mich. 2011)

- *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp.3d 212 (S.D.N.Y. 2019)

**III.    PLAINTIFFS CANNOT SATISFY RULE 23(A)'S REQUIREMENTS.**

- *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

- *Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)

- *Shipp v. Memphis Area Office, Tennessee Dep't of Employment Security*, 581 F.2d 1167 (6th Cir. 1978)

## **INTRODUCTION**

Plaintiffs' claims that they overpaid for their Trucks because the Trucks allegedly operate differently in real-world use than as disclosed to the Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB," and collectively with EPA, the "Regulators") cannot be resolved on a class-wide basis. <u>First</u>, Plaintiffs and putative class members lack Article III standing, precluding certification because they cannot show an "injury in fact." As this Court observed, "all of Plaintiffs' purported injuries hinge" on their claims that the Trucks "contain defeat devices" and therefore perform differently than represented to them when purchased. Dkt. 60 at 30. But Plaintiffs now admit they have not identified any defeat device and have no evidence the Trucks perform differently than as disclosed to the Regulators. To the extent Plaintiffs now focus on expected fuel economy to support their claims, based on Plaintiffs' testimony, this raises individualized standing questions that preclude certification.

<u>Second</u>, to determine whether class members overpaid for their Trucks based on Cummins' alleged misrepresentations or omissions will require individualized analysis that will predominate over common questions, rendering a single trial unmanageable. To satisfy the elements of their RICO, fraudulent concealment, and consumer protection claims, Plaintiffs and putative class members must show reliance and/or causation, among other things. Admissions from Plaintiffs who did

not consider any representation about the Trucks' emissions in making their purchasing decision, did not consider the Trucks' emissions a material factor, or who are satisfied with their Trucks' fuel economy and verified that it met their expectations, highlights that this individualized analysis is necessary to determine who, if anyone, has a recoverable claim. Further, variations in vehicles and, as Plaintiffs' expert admits, external factors—such as personal driving practices, geography, the temperature and road grade where the Truck is driven, among many others—affect the Trucks' emission and fuel efficiency, and must also be individually analyzed.

Third, Plaintiffs cannot satisfy Rule 23(a). Plaintiffs' admissions, including that they altered aftertreatment systems with illegal devices, they are not a member of the defined class they seek to represent, and they sold their Truck, along with other admissions, give rise to unique defenses and highlight the lack of adequacy, or typicality, and commonality.

## BACKGROUND

## I.   THERE ARE MEANINGFUL DIFFERENCES IN THE TRUCKS AMONG THE TWO PLATFORMS AND SIX MODEL YEARS.

Although Plaintiffs group all of the Trucks under the collective definition of "Class Vehicles," there are material differences in the Trucks. First, the Trucks consist of two separate platforms: RAM 2500 and RAM 3500. A 3500 weighs more, generates more torque, and has a higher towing capacity. The regulatory NOx

2

standard is twice (.4 g/mi) the limit applicable to a 2500. Expert Report of Ryan Harrington ("Harrington Rep."), attached as Ex. 1, at §§ 3.2, 4.3.6.

Second, the Trucks were developed as two platforms. Engines for model years ("MY") 2007 through 2009 were referred internally as "Project Blackbird." *Id.* at § 5. For MY 2010, Cummins conducted a comprehensive update under "Project Blackhawk." *Id.* The engines for MY 2010-2012 included different calibrations (software), different hardware and different precious metals. Cummins continually made changes to the Trucks. These changes include, for example (*id.* at § 6.2):

- For MY 2008, Cummins installed a new NOx Adsorber catalyst ("NAC"), which is responsible for reducing the emission of NOx, with different precious metal loading;

- For MY 2009, Cummins installed a new EGR valve; and

- For MY 2010, Cummins installed a new NAC (which resulted in less frequent active regenerations), a new washcoat, and devised a new soot filter strategy that resulted in fewer active regenerations.

Cummins also made software changes through calibration updates and running changes: MY 2007 (22 calibrations, 6 running changes); MY 2008 (27 calibrations, 15 running changes); MY 2009 (12 calibrations, 4 running changes); MY 2010 (12 calibrations, 3 running changes); MY 2011 (16 calibrations, 3 running changes); and MY 2012 (15 calibrations, 4 running changes). *Id.* at §6.2.[1] To the

---

[1] For a more complete description of the Trucks' development and technology, *see* Expert Report of Ryan Harrington, attached as Ex. 1, at §§ 3.2, 4-6.

3

extent these calibrations affected the frequency and conditions of active regenerations, they were disclosed. *Id.*

## II.   PLAINTIFFS HAD MATERIAL DIFFERENCES WITH THEIR PURCHASES AND USE OF THE TRUCKS.

The named Plaintiffs' testimony reveals differences in their experiences, expectations, and use of the Trucks. Plaintiff Jeremy Perdue removed the DPF from his Truck and replaced it with an illegal aftermarket device that ***increased*** NOx emissions. Perdue Dep., Ex. 2, 99:18-112:24. Two Plaintiffs testified they did not consider the emissions performance in making purchasing decisions. Erben Dep., Ex. 3, 158:21-159:3; Roberts Dep., Ex. 4, 125:18-22, 128:3-14. Those who considered emissions simply expected the Trucks to meet legal limits.[2]

Although Plaintiffs now claim the Trucks did not meet their fuel economy expectations, ***no*** Plaintiffs could attribute their fuel economy expectations to anything written or said by Cummins. Three Plaintiffs testified they had an unquantifiable expectation but could not identify what it was based on.[3] Six Plaintiffs

---

[2] Bledsoe Dep., Ex. 5, 78:7-10; Chouffet Dep., Ex. 6, 45:2-17; Ganz Dep., Ex. 7, 68:3-20; Forshaw Dep., Ex. 8, 218:10-219:3; Ward Dep., Ex. 9, 92:12-22; Witberg Dep., Ex. 10, 142:11-143:11; Perdue Dep. 35:7-11, 49:1-22.

[3] Roberts Dep. 131:4-132:21; Chouffet Dep. 89:1-17; Bledsoe Dep. 155:23-157:20.

had an expectation based on sources other than Cummins.[4] Erben testified he tracked his Truck's fuel economy and was satisfied. Erben Dep. 115:24-116:2. Five Plaintiffs swore that they were satisfied with their Truck.[5]

Plaintiffs testified that their purchases were motivated by a desire for torque to tow their RV (unsurprising, given the class of vehicles at issue) (Forshaw Dep. 97:17-98:5), good experiences with prior RAM Trucks (Ward Dep. 168:2-8; Chouffet Dep. 72:25-73:3, 89:7-13), or because the Truck was "pretty" (Roberts Dep. 57:13). Three Plaintiffs bought their Trucks from dealerships located in States different from where they now reside.[6]

Six Plaintiffs still use their Trucks, while three have sold them; despite having already filed this lawsuit, none of these three sellers told the next buyer the Truck had deficient emissions or fuel economy performance.[7] Every Plaintiff used Trucks

---

[4] Erben Dep. 92:17-96:13; Forshaw Dep. 221:8-20; Ganz Dep. 126:22-127:15; Perdue Dep. 41:13-43:13; Ward Dep. 49:8-50:19; Witberg Dep. 78:14-20, 145:8-146:24.

[5] Chouffet Dep. 87:23-25; Erben Dep. 115:6-10; Perdue Dep. 89:1-6; Ward Dep. 55:19-25; Roberts Dep. 102:11-13.

[6] Witberg Dep. 58:8-12, 60:24-61:7; Forshaw's Supp. Fact Sheet, Ex. 11, at ¶¶ 15, 19, 22; Erben Dep. 33:22-34:9, 37:2-6, 54:14-16, 102:20-25.

[7] Witberg Dep. at 360:4-362:15; Roberts Dep. at 105:4-8, 118:24-119:11; Chouffet Dep. at 113:17-114:6, 120:7-121:6.

to tow trailers or RVs.[8] Ganz owns a construction and snow removal business for which he uses his Truck. Ganz Dep. 51:19-53:5.

## ARGUMENT

It is Plaintiffs' burden to prove every element of Rules 23(a) and 23(b)(3) are "in fact" met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). This Court must conduct a "rigorous analysis," which "will frequently entail overlap with the merits of the plaintiff's underlying claim," *Comcast*, 569 U.S. at 33-34 (quotation omitted). Evidence related to the *prima facie* case and any defenses must be considered, and the Court cannot presume Plaintiffs' allegations as true. *Id*. at 33-34.

Although the elements of each claim varies, and the state laws contain further variations as to each claim, at a minimum, each class member must prove each of the following facts to prevail on their emissions claims against Cummins: (1) Cummins deceived the class member about the emissions performance of their Trucks, including that Cummins failed to accurately disclose the Trucks' emissions performance to the Regulators; and (2) that deception caused the class member to "overpay for [the Trucks] at the point of sale." Pls' Opp. to Mot. to Dismiss, Dkt.

---

[8] Perdue Dep.61:18-62:7; Bledsoe Dep. 129:6-17; Roberts Dep.45:25-47:19; Ganz Dep. 136:6-12; Erben Dep. 59:18-60:6, 105:18-106:6; Ward Dep. 45:18-46:4, 47:2-18; Perdue Dep. 61:7-63:5; Forshaw Dep. 97:17-98:5, 131:17-18; Witberg Dep. 42:16-22.

70, at 4. Plaintiffs' fuel economy theory likewise requires proof that: (1) Cummins deceived the class member about the fuel economy of their Trucks; and (2) that deception caused the class member to overpay for their Truck.

## I. THE COURT CANNOT CERTIFY PLAINTIFFS' PROPOSED CLASSES BECAUSE THEY CONSIST OF MEMBERS WHO LACK STANDING TO ASSERT CLAIMS AGAINST CUMMINS.

Before the Court can certify a class, it must assure itself that the Plaintiffs have standing to pursue their claims against each defendant. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Plaintiffs seeking certification must define their class "in such a way that anyone within it would have standing," as a "class cannot be certified if it contains members who lack standing." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Every class member must have Article III standing in order to recover individual damages"). Plaintiffs lack standing because they lack a concrete, particularized injury in fact caused by Cummins. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). That failing means the Court cannot certify the proposed classes. *See, e.g., Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 987 (8th Cir. 2021); *Colley v. Procter & Gamble Co.*, No. 16-0918, 2016 WL 5791658, at *8 (S.D. Ohio Oct. 4, 2016).

### A. Plaintiffs Do Not Offer Evidence Of A Defeat Device.

Plaintiffs claim they were injured because "Defendants manufactured the

Trucks to include 'defeat devices' that alter the Trucks' performance so that they perform within the range of compliance when tested under regulatory conditions, but not during normal on-road use." Dkt. 97 at 11. Plaintiffs thus assert they have standing because "they suffered an economic injury by overpaying for or purchasing their vehicles" that did not perform consistent with Defendants' representations. Dkt. 70 at 29-30. Plaintiffs' basis for Article III standing has collapsed, however, because Plaintiffs have no evidence of a defeat device and therefore cannot show their Trucks perform differently than what Cummins disclosed to Regulators and the public.

Plaintiffs' technical expert, Juston Smithers, testified he had ***not*** concluded that: (1) the Trucks contained a defeat device; (2) the Trucks operate differently when being tested than when operated in real world condition; or (3) Cummins failed to disclose anything to the Regulators. Smithers Dep., Ex. 12, 10:16-23; 38:23-39:2; 176:13-177:5. In fact, Smithers admitted he had not been asked to reach a conclusion concerning the Trucks' alleged use of a defeat device. *Id*. 10:16-11:8.

Plaintiffs' failure to offer evidence that supports their defeat device theory ends their Article III standing and, consequently, their quest for certification.[9]

---

[9] Plaintiffs each testified that the only evidence they had to support their defeat device theory was what their attorneys told them. Bledsoe Dep. 15:8-16:7; Chouffet Dep. 29:19-30:4, 32:16-33:12; Erben Dep. 30:18-31:14; Forshaw Dep. 43:9-44:5; Ganz Dep. 189:13-22; Perdue Dep. 20:13-21:15; Roberts Dep. 32:22-33:1; Ward Dep. 79:3-80:23; Witberg Dep. 22:15-23:14; 397:13-25.

Having failed to identify any difference between Cummins' representation of the Trucks, and the Trucks' on-road performance, Plaintiffs received precisely what they paid for. Thus they suffered no "concrete and particularized harm" sufficient to confer Article III standing. *Rickman v. BMW of N. Am.*, No. 18-4363, 2019 WL 2710068, at *13-15 (D.N.J. June 27, 2019) (no standing where defeat device allegations were insufficient and "all of [plaintiffs'] alleged injuries are contingent upon an inference that the Subject Vehicles had some type of defeat device").

### B.    The *Counts* Show Cause Order Shows Plaintiffs Lack Standing.

Plaintiffs' counsel filed a substantially identical lawsuit against General Motors LLC and Robert Bosch LLC. *See Counts v. General Motors LLC*, No. 1:16-cv-12541 (E.D. Mich. July 7, 2016) ("*Counts*"). As in this case, the *Counts* plaintiffs relied on the same proffered experts, and alleged the presence of a defeat device that resulted in the subject vehicle emitting higher amounts of NOx than the regulatory limits. *Counts* Complaint, Dkt. 1, at ¶ 76. Upon viewing the record, Judge Ludington issued an Order Directing Plaintiffs To Show Cause Why The Case Should Not Be Dismissed For Lack Of Jurisdiction for failure to show an "injury in fact." *Counts,* Dkt. 429 at 25-26. The grounds that led Judge Ludington to question whether the *Counts* plaintiffs had suffered an "injury in fact" apply with full force here:

| *Counts* Show Cause Order | *Bledsoe* Plaintiffs |
|---|---|
| Eight years after Cruze developed, no defeat device investigation by | Fourteen years after RAM Truck developed, no defeat device investigation |

| | |
|---|---|
| Regulators. (Order at 23) | by Regulators. (Smithers Dep. 82:22-83:11) |
| Plaintiffs' expert Smithers relies on testing of single Cruze vehicle. (Order at 25) | For 3500 Trucks, Plaintiffs' expert Smithers relies on testing of single Truck. (Smithers Dep. 319:3-5) |
| No corroborative documentary evidence of deliberate conspiracy to deceive regulators. (Order at 25) | No corroborative documentary evidence of deliberate conspiracy to deceive regulators. |
| Smithers identifies defeat device, which is supported by "little more than Plaintiffs' speculation." (Order at 31) | Smithers has not identified any defeat device. (Smithers Dep. 10:16-23) |
| Plaintiffs' expert Stockton assumes existence of defeat device to support economic damages model. (Order at 31) | Plaintiffs' expert Stockton assumes existence of undisclosed excessive emissions device to support economic damages model. (Stockton Rep., Ex. 13, at ¶ 50) |
| Plaintiffs' discovery answers did not "demonstrate **measurable expectations** regarding the emission control system that exceeds EPA or CARB requirements," but instead merely reflected that Plaintiffs "expected the Chevy Cruze diesel to meet the EPA or CARB emission requirements." (Order at 26-27 (emphasis added)) | Plaintiffs could not identify any expectation for emissions performance other than that Trucks met legal standards. (*See* Background, § II) |

### C.   Plaintiffs And Putative Class Members Lack Standing To Pursue Their Fuel Economy Claims.

Plaintiffs' standing based on disappointing fuel economy is even weaker.

First, as reflected in Erben's testimony, the Truck's fuel economy met expectations,

for some putative class members. *See, e.g.,* Erben Dep. 115:24-116:2. Second, as

noted in §II(B) below, ***none*** of the Plaintiffs identified a representation from

Cummins forming the basis of their expectations as to the Trucks' fuel economy.

10

Given these admissions, Plaintiffs failed to demonstrate they suffered an injury in fact attributable to Cummins. *TransUnion LLC*, 141 S. Ct. at 2208 ("Every class member must have Article III standing in order to recover individual damages" and "must demonstrate standing for each claim that they press and for each form of relief that they seek"). At a minimum, necessary individualized inquiries to determine standing for putative class members who may possibly demonstrate some expectation of fuel economy attributable to Cummins precludes certification. *Johannessohn*, 9 F.4th at 985, 988 ("Because the class has not been defined in such a way that anyone within it would have standing, the class cannot be certified").

### D.     RAM 3500 Purchasers Lack Standing.

Plaintiffs' proposed classes include purchasers of both 2500 and 3500 RAM Trucks. Mot. at 1 n.1. Plaintiffs have failed to carry their burden to demonstrate that purchasers of RAM Trucks 3500s have suffered an injury in fact for a separate reason: Smithers tested a single 3500 Truck. Smithers Dep. 319:3-5. Smithers concluded his test data was insufficient to reach any conclusions for four of his five test scenarios. For the fifth, the 3500 emitted NOx at a ***lower*** rate than permitted by the Regulators. Smithers Dep. 337:23-341:22.

Plaintiffs' testing of a single vehicle is insufficient to extrapolate their allegations of injury to the entire fleet of 3500s. Dkt. 60 at 23; *Counts* Show Cause Order at 25-26 (testing of single vehicle); *see also Rickman*, 2019 WL 2710068, at

*11-13, 15 (dismissing defeat device complaint where single vehicle tested).[10]

## II.   INDIVIDUALIZED ISSUES PRECLUDE A FINDING OF PREDOMINANCE OR SUPERIORITY.

Plaintiffs' Motion also fails because individualized proof is necessary to determine whether: Plaintiffs' Trucks performed worse than disclosed; such performance was due to Cummins rather than to factors outside Cummins' control; Plaintiffs received and considered Cummins' representation concerning the Trucks or had any special relationship with Cummins giving rise to a duty to speak; the Trucks' performance met Plaintiffs' expectations (and the basis for that expectation); and Plaintiffs' "overpaid" for the Trucks.

### A.   Plaintiffs' Nationwide RICO Class Cannot Be Certified.

To prevail on their § 1962(c) RICO claim, Plaintiffs must prove, *inter alia*, "an injury to [their] business or property by reason of" the alleged racketeering activity. *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993). RICO plaintiffs must establish they have suffered a concrete, out-of-pocket loss of tangible property. *Wall v. Michigan Rental*, 852 F.3d 492, 494-95 (6th Cir. 2017). By contrast, "speculative, expectation-based, benefit-of-the-bargain damages [are] incompatible

---

[10] This Court also lacks jurisdiction over claims brought against Cummins by Plaintiffs and class members who purchased their Trucks or allegedly suffered injury outside of Michigan. *See Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1783-84 (2017); *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 252 (5th Cir. 2020); *but see Lyngaas v. Ag*, 992 F.3d 412, 433 (6th Cir. 2021) (declining to extend *Bristol-Myers Squibb* from mass actions to class actions).

with RICO." *In re GM LLC Ignition Switch Litig.*, No. 14-2543, 2016 WL 3920353, at *16 (S.D.N.Y. July 15, 2016). The Court cannot certify Plaintiffs' nationwide RICO class because it is overbroad, is based on a newly-asserted and faulty Excessive Emissions Device ("EED") theory, and because individual questions necessary to prove Plaintiffs' claims will predominate.

### 1.   Plaintiffs' Class Definition Is Overbroad

Plaintiffs' proposed nationwide RICO class does not differentiate between purchasers of the 2500 and 3500 Trucks. If the Court were to conclude that putative class members who purchased the 3500s lack standing (but decline to find that 2500 purchasers lack standing), the Court should deny Plaintiffs' Motion in its entirety because the putative classes includes 3500 purchasers who lack standing. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514-15 (7th Cir. 2006) (certification denied because class included members who suffered no harm); *Jaber v. GC Servs. Ltd. P'ship*, No. 2:17-cv-19371-VAR-SDD, 2019 WL 2579459, at *2-3 (E.D. Mich. June 24, 2019) (denying certification due to overbroad class definition).

Likewise, Plaintiffs' definition does not differentiate amongst the Trucks' model years. There are differences among model years in both the emission system's hardware and software that relate to Plaintiffs' EED theory. In particular, Plaintiffs assert that the Trucks emitted higher amounts than disclosed due to the frequency of active regeneration events that were necessary to prevent soot build-up. Mot. at 7.

Cummins improved the DPF's sooting (and thus affected the frequency of active regeneration events) with hardware changes and through the course of calibration downloads and running changes made available to the Trucks' owners when they brought their vehicle in for maintenance and repairs. Harrington Rep. at § 6.2. Thus, the emissions performance of each class member's Truck will vary depending on the model year, the calibration uploads and running changes to the customer's Truck, the Truck's usage, and the customer's practice of maintenance and repairs. *Id.*

### 2. The Court Cannot Certify A Class Based On Plaintiffs' Newly-Asserted EED Theory.

The Court cannot certify Plaintiffs' proposed nationwide RICO Class (nor any state subclass) based on Plaintiffs' newly-invented EED theory. Plaintiffs' EED theory appears nowhere in their SAC, nor in any briefing prior to their Motion; rather, Plaintiffs' expert admits it is "a shorthand that I made up for [Plaintiffs' expert] report." Smithers Dep. 139:5-6.[11] The Motion should be denied because it is axiomatic that "a motion for class certification is an improper platform for Plaintiff to advance new claims that [s]he did not plead in [her] FAC." *Gustafson v. Goodman*

---

[11] Smithers admitted that he made up the term for this case and that it has no regulatory, scientific, or other meaning. Smithers Dep. 139:3-141:9. He agreed that the term was not synonymous with "defeat device," and testified further that he had not concluded that any of the EEDs qualified as defeat devices. *Id.*, 141:10-19.

*Mfg. Co. LP*, No. 13-8274, 2016 WL 1029333, at *4 (D. Ariz. Mar. 14, 2016).[12] Certifying un-pled claims and theories deprives the defendant of adequate notice of the claims against which it must defend itself, and fundamentally "change[s] the nature of the lawsuit and render[s] the complaint inadequate." *Anderson v. United States Dep't of HUB*, 554 F.3d 525, 529 (5th Cir. 2008).

### a) Smithers' PEMS Testing Was Substandard And Does Not Support His Opinions.

If considered, Smithers' PEMS testing is insufficient to support a finding that the Trucks contain a so-called EED, let alone a defeat device. First, Smithers' comparison of on-road PEMS measurements to federal certification standards is invalid because, among other things, on-road measurements obtained from PEMS are not comparable to regulated and standardized laboratory testing. Harrington Rep. at § 7.1.2. A Truck's emissions performance on PEMS testing may be affected by many factors, including ambient conditions, specific vehicle usage, and variable cargo or towing loads. *Id.* Similarly, PEMS equipment may not be properly set up, resulting in measurement uncertainty and analyzer inaccuracy. *Id.* It is precisely for these reasons that the Regulators favor a level playing field and require laboratory

---

[12] *See also In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*, 288 F.R.D. 445, 448 n.4 (C.D. Cal. Jan. 9, 2013) ("A motion for class certification is not the appropriate mechanism to introduce new claims"); *Simington v. Lease Fin. Grp., LLC*, No. 10-6052, 2012 WL 6681735, at *8-9 (S.D.N.Y. Dec. 14, 2012) (holding same).

testing for certification standards rather than PEMS testing. *Id.*

Moreover, Smithers failed to adhere to procedures designed to ensure the PEMS test captures meaningful data. *Id.* Smithers did not verify his PEMS testing unit against laboratory dynamometer equipment, did not control his driving routes, and did not apply adjustment factors to relate on-road PEMS testing results to dynamometer standards. *Id.* Rather, his team merely drove five Trucks for hours at a time, and then subsequently segmented the data. Smithers Dep. 94:3-104:3; 117:5-121:24. In short, Smithers disregarded standards in the manner in which he administered his testing, failed to account for the variables that did not comport with regulatory requirements, and did not credit Cummins for the increased emissions permitted under EPA regulations for in-use testing. Harrington Rep. at § 7.1.2-.3. His testing is unreliable and his resulting opinions should be disregarded.

> **b)** **Plaintiffs' EED Theory Does Not Support Plaintiffs' Claim They Were Injured By Cummins' Actions.**

Smithers attributes the Trucks' emissions performance to five EEDs that increase the NOx emissions of the Trucks: (1) Active Regeneration EED; (2) Ambient Temperature EED; (3) EED on Road Grades; (4) EED During Trailer Towing; and (5) Cold and Hot Start EED. Smithers Dep. 145:24-146:11. While Smithers refers to his EEDs as "devices," Smithers does not identify any software or hardware responsible for the emissions impact of the EED. Rather, Smithers testified, the EED is "everything"—the hardware, the engine, the aftertreatment

system, and the software. Smithers Dep. 176:7-12. Such failure to identify with particularity the emissions-increasing mechanism is insufficient to survive pleading standards, let alone establish the existence of any such device after over two years of discovery. *See Rickman*, 2019 WL 2710068, at *11-13.

Rather than a "device," four of the five so-called "EEDs" are statements of physics that do not relate to any software calibration by Cummins. Plaintiffs, in fact, ignore these "EEDs" entirely in their Motion. The lone EED that refers to more than mere physics (and the lone EED cited in Plaintiffs' Motion) is Smithers' "active regeneration EED." Smithers opines that the Trucks emit higher amounts of NOx during active regeneration events, and that Cummins was required to account for the emissions impact of these active regenerations in their certification applications.

Smithers misunderstands Cummins' adjustment factor calculations, which accounted for the frequency of active regenerations in on-road use. Harrington Rep. at § 6.1. To capture the anticipated real-world usage of the Trucks, the Regulators and Cummins agreed that the IRAF and UAF calculations would include a bias factor, which allocated the regeneration frequency across four separate test cycles (LA4, US06, SC03, and HFET), and applied a percentage to the regeneration frequency relating to each cycle based on how often real-world usage would match each test cycle. *Id.* Every step of this process was disclosed to the Regulators. Cummins disclosed the survey data on which the allocation of the four test cycles

17

was based. *Id.* Cummins disclosed the test results from which its IRAF and UAF calculations were based. *Id.* And Cummins disclosed its IRAF and UAF methodology. *Id.* When shown Cummins' spreadsheet reflecting the regeneration frequency percentages across different test cycles, Smithers acknowledged Cummins' results were consistent with his own data. Smithers Dep. 237:20-239:21.

### 3. Individual Analysis As To Whether Each Class Member Suffered An Injury "By Reason Of" Cummins' Actions Will Predominate Over Common Questions.

To prove their RICO claims against Cummins, Plaintiffs and the putative class members must show they suffered a concrete, out-of-pocket loss of tangible property, *Wall*, 852 F.3d at 494-95, that was caused "by reason of" Cummins' actions. 18 U.S.C. § 1962(c). That means Plaintiffs and class members must show Cummins caused their Trucks to perform below Plaintiffs' (actionable) expectations and Cummins' representations caused Plaintiffs to purchase their Trucks. *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, 2018 WL 3586182, at *19 (N.D. Ill. July 26, 2018) (denying certification of RICO claim based on mail and wire fraud).[13] Plaintiffs cannot rely on common evidence to prove either

---

[13] Plaintiffs assert they need not show first person reliance to prevail on RICO claims. Mot. at 21. But Plaintiffs ignore they must "demonstrate reliance on a defendant's common misrepresentation to establish causation under RICO." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013). At a minimum, to prove causation, Plaintiffs must demonstrate "someone relied on the defendant's misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658

element, but instead must offer individualized evidence from each class member. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 225-226 (2d Cir. 2008) (abrogated in part on o.g.); *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 978 (5th Cir. 2000).

Plaintiffs must prove their higher emissions or lower fuel economy was caused by Cummins rather than by their own usage or other external factors. Of the five EEDs that Smithers opines contributes to higher emissions, four of those EEDS relate to external driving conditions that, by their very nature, will differ depending on the location and usage of each Truck's owner. Thus, individual analysis will be required to measure the impact of these EEDs and whether they have suffered any injury "by reason of" Cummins' actions, rather than the external conditions outside of Cummins' control. Individual issues will also predominate Plaintiffs' claims relating to their Trucks' fuel economy. Smithers admitted that external factors such as elevation, temperature/weather conditions, and whether a vehicle was towed, as well as the Trucks' operator's habits, would affect the Trucks' fuel economy. Smithers Dep. 385:21-390:18; *see also* "Fuel Economy Testing and Labeling Questions and Answers," EPA Office of Transportation and Air Quality, Ex. 14 (explaining why laboratory tests are more reliable than road tests).

---

(2008). Even if Plaintiffs attempted to satisfy this requirement by arguing the Regulators relied on a misrepresentation by Cummins, Plaintiffs have not identified **any** representation made to the Regulators that was false, and their proffered expert is unable to identify one either. Smithers Dep. 176:13-183:17.

Plaintiffs' testimony demonstrates that a determination of reliance and/or causation cannot be presumed or resolved on a class basis. Plaintiffs' purchasing decisions were based on factors that differed by individual; several Plaintiffs testified they did not consider emissions or fuel economy in making purchasing decisions. Background, § II. Even those Plaintiffs who did consider representations regarding the Trucks' fuel economy or emissions performance did not cite any centralized message by Cummins, but rather the individualized discussions with dealership salespersons or other sources, even friends. *Id.* A presumption of reliance is unwarranted. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998); *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002).[14]

Plaintiffs rely on warranty cases in which all class vehicles contained a manifested defect. Mot. at 19 (citing, *e.g., Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir.

---

[14] To the extent Plaintiffs base their fuel economy claims on Cummins' statement that the Trucks "maintain[] fuel efficiency compared to the 2006 model" and "maintain[] the diesel engine's 30 percent fuel economy savings over gasoline engines," Mot. at 2, Plaintiffs have not offered any evidence this statement is false, or that Plaintiffs relied on it to make their purchases. Plaintiffs have not performed testing comparing the fuel efficiency of the 2006 and 2007 model years; Smithers only opines that fuel efficiency decreases during active regenerations. Smithers Rep. at 48. Diesel engines generally have better fuel economy than gasoline, as diesel is denser and contains more energy per gallon of fuel. *See Counts* Show Cause Order at 28 (quoting EPA guidance on fuel economy). In any event, the alleged statement on its own terms applies only to MY 2007 and does not support a claim for any later model year.

2010); *Rosen v. J.M. Auto. Inc.*, 270 F.R.D. 675 (S.D. Fla 2009)). This is a fraud case, not a defect case, and Plaintiffs do not advance breach of warranty claims.

**B.      Plaintiffs' State Law Claims Cannot Be Certified.**

Plaintiffs have not explained how the Court will manage in a single trial, before a single jury, their claims brought by nine Plaintiffs arising under seven states, involving six different model years, two different engine platforms (with two different regulatory standards), 34 separate running changes, 36 separate AECD disclosures, and 104 separate calibrations. *See In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (reversing certification of class on fraudulent concealment claims as unmanageable because the "claims must be adjudicated under the law of so many jurisdictions"); *Marshall v. H&R Block Tax Servs. Inc.*, 270 F.R.D. 400, 407 (S.D. Ill. 2010) (noting lack of proposed trial plan to deal with individualized issues). Because Plaintiffs' consumer protection and fraudulent concealment claims each require proof of reliance, causation, and/or that the alleged omission was material ***to that person at the time of their transaction***, and because resolution of these issues requires individualized inquiry into numerous factors, certification is improper. *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000) (certification of fraud claims inappropriate when individual reliance at issue).

**1.      Application Of The State Laws Preclude Certification.**

**a)      The State Consumer Protection Claims.**

Three of the seven state consumer protection statutes do not apply to this case. The Michigan Consumer Protection Act does not apply to claims arising from the purchase of an automobile from a registered dealer. *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 800 (E.D. Mich. 2019); *Divis v. Gen. Motors LLC*, No. 18-13025, 2019 WL 4735405, at *9 (E.D. Mich. Sept. 27, 2019).[15] Similarly, the Idaho Consumer Protection Act requires a contractual relationship between the plaintiff and defendant, which Plaintiffs lack against Cummins. *Taylor v. McNichols*, 149 Idaho 826, 846 (2010). And Plaintiffs admit they cannot bring a class action under South Carolina's Unfair Trade Practices Act. Mot. at 23 n. 25.

Further, the state consumer protection laws that may apply to Plaintiffs' claims all require proof of actual reliance or proximate causation. *See D C Custom Freight, LLC v. Tammy A. Ross & Assocs.*, 273 N.C. App. 220, 221 (2020); Tex. Bus. & Com. Code § 17.50(a)(1)(B); *Clark v. Experian Info. Sols., Inc.*, 256 F. App'x 818, 822 (7th Cir. 2007) (Illinois); *Porcell v. Lincoln Wood Prods., Inc.*, 713

---

[15] The Michigan and Illinois consumer protection statutes also apply only to the sale of "consumer" goods, not purchases for commercial use, like Plaintiff Ganz's for his snowplow business. *Chi. Male Med. Clinic, Inc. v. Ultimate Mgmt.*, No. 12-5542, 2012 WL 6755104, at *5 (N.D. Ill. Dec. 28, 2012); *Sautner v. Fleetwood Enters., Inc.*, No. 05-73252, 2007 WL 1343806, at *7 (E.D. Mich. May 8, 2007). Thus, an individualized inquiry is necessary to determine the primary purpose for which each Michigan class member purchased their Truck. *In re OnStar Contract Litig.*, 278 F.R.D. 352, 380-81 (E.D. Mich. 2011) (denying certification of consumer protection act claim because individualized analysis of consumer's use of product would predominate over common questions).

F. Supp. 2d 1305, 1308, 1321 (D.N.M. 2010); *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 134 (Cal. Ct. App. 2009) (reliance cannot be presumed unless omitted fact is material, and determining materiality requires individualized analysis); *In re OnStar Contract Litig.*, 278 F.R.D. at 384 (same).[16] To succeed on their consumer protection claims, Plaintiffs must show not only that Cummins acted in a manner that tended to deceive consumers, but also that they in fact relied on Cummins' representations or that Cummins otherwise caused them to suffer harm.

To resolve these claims, the trier of fact will need to consider, at a minimum: the fuel and emissions performance of each Truck; the class member's expectations in making their purchasing decisions; what representations by Cummins they received in making those decisions; their purchase price, including any negotiations that would have reduced any purported "price premium"; their use of the Truck, including their maintenance history and whether they installed any aftermarket

---

[16] The cases that Plaintiffs cite in support of their claim that reliance can be presumed under California law are distinguishable. The class was defined in *Ehret v. Uber Techs., Inc.*, 148 F.Supp.3d 884 (N.D. Cal. 2015), such that all class members received the defendant's allegedly misleading representation. *Herremans v. BMW of N. Am., LLC*, No. 14-2363, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014), involved a defect that posed a "serious safety hazard" that immediately affected the vehicle's operation, and thus the materiality of the undisclosed defect was readily established. By contrast, several Plaintiffs testified they did not consider the Trucks' emissions in their purchasing decision or that they could not identify any specific expectation they had for the Trucks' fuel economy. Other Plaintiffs sold their vehicles without disclosing the very issues about which they complain. Background, § II.

devices; whether they sold the Truck, and whether they can establish any special relationship **with Cummins** that would give rise to a duty to disclose.

### b) Fraudulent Concealment Claims.

The elements of state fraudulent concealment claims demonstrate that certification of Plaintiffs' claims is inappropriate. New Mexico does not recognize the tort of fraudulent concealment. *JM v. New Mexico Dep't of Health*, No. 07-0604, 2009 WL 10698495, at \*2 (D.N.M. Mar. 5, 2009). For those states that do recognize the tort, each state has different standards for the Plaintiff's reliance on the absence of the concealed fact such that common issues do not predominate. Under North Carolina law, fraud in the inducement requires a "concealment of material fact" that "does in fact deceive." *Media Network, Inc. v. Long Haymes Carr, Inc*., 197 N.C. App. 433, 453 (2009). In California, a Plaintiff must prove that he "would not have acted as he did if he had known of the concealed or suppressed fact." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1130 (2014). In Illinois, a Plaintiff must prove both that the plaintiff could not have discovered the truth through reasonable inquiry, and that the concealed information was such that the plaintiff would have acted differently had they known. *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 IL App (2d) 140952, ¶27.

State laws likewise differ on whether Cummins—a components part manufacturer with no privity with the class members—had any legal duty to

disclose. Some states, including Illinois and North Carolina, preclude any duty where the defendant is a third party to the challenged transaction. *See, e.g., Garrett v. Cassity*, No. 09-1252, 2011 WL 3235633, at *7 (E.D. Mo. July 28, 2011); *Bd of Educ. Of Perquimans Cty. v. Deitrick*, 221 N.C. 38, 38 (1942). Other states consider if the parties have a "special relationship" warranting a duty to disclose. *See, e.g., Levine v. Blue Shield of California*, 189 Cal. App. 4th 1117. 1131 (2010); *Sowards v. Rathbun*, 134 Idaho 702, 707 (2000); *McMullen v. Joldersma,* 174 Mich. App. 207, 209-211 (1988); *Pitts v. Jackson Nat. Life Ins. Co.*, 352 S.C. 319, 335-336 (Ct. App. 2002); *AT&T Corp. v. Rylander*, 2 S.W.3d 546, 558 (Tex. App. 1999).[17]

## 2.    Plaintiffs' Differential Experiences Preclude Certification.

*a.* No Plaintiff testified they relied on any statement by Cummins in deciding to purchase a Truck. No plaintiff could specify a Cummins-specific statement that influenced their purchase decision. Five Plaintiffs testified that they did not conduct ***any*** independent research prior to purchasing the vehicle, nor did they review ***any*** advertisements about the subject vehicle.[18]

---

[17] EPA regulations did not require the Monroney sticker for these Trucks to identify any expected fuel economy, and there are no standards or ratings of fuel economy for any of the Trucks. Smithers Dep. 379:5-12.

[18] Bledsoe Dep. 144:17-147:8; Roberts Dep. 73:1-14; Erben Dep. 58:11-13, 139:20-140:15; Forshaw Dep. 118:10-119:14, 212:22-213:17; Chouffet Dep. 77:3-12.

Of the four Plaintiffs who testified they researched the Truck prior to purchase, **none** testified that they viewed statements made by Cummins. Ward conducted internet research on the Truck by reviewing FCA's website, the brochures contained on the website, and advertisements on television. Ward Dep. 171:14-25, 176:4-20. Perdue only researched the Truck via word of mouth and unidentified online forums discovered after a Google search, but did not consider television or radio advertisements, nor did he visit Cummins' website. Perdue Dep. 77:11-78:25, 81:6-82:18. Witberg reviewed several different car and truck magazines, an FCA brochure and website, and an online tool for FCA employees. Witberg Dep. 68:12-77:18, 266:21-267:18. He also considered television and print advertisements, but none by Cummins. Witberg Dep. 262:14-265:16.

*b.* Evidence of uniform materiality is lacking. Perdue removed the DPF from his Truck and replaced it with an illegal aftermarket device that increased the Trucks' NOx emissions, so he clearly would not have acted differently had he known more about the Trucks' emissions before his purchase. Perdue Dep. 99:18-112:24. (Perdue is far from alone; the EPA estimates that in the United States, 15% of vehicles similar to the Trucks are modified by the installation of tuners or emissions system delete kits).[19] Two Plaintiffs testified that they did not even consider the Trucks' emissions

---

[19] Tampered Diesel Pickup Trucks: A Review of Aggregated Evidence from EPA Civil Enforcement Investigations, Ex. 15, at 1; *see also* Expert Rep. of Bharadwaj

performance (Erben Dep. 158:21-159:3; Roberts Dep. 125:18-22, 128:3-14), and the rest simply expected the Trucks met legal emissions limits.[20] Given that Plaintiffs differ as to whether Truck emissions performance was a material factor, certification is inappropriate. *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:09-md-02100, 2012 WL 865041, at *10, *26 (S.D. Ill. Mar. 13, 2012) (denying certification when "misrepresentations or omissions at issue here may not have been material to a number of class members"); *In re Vioxx Class Cases*, 180 Cal. App. 4th at 129, 132-33 (certification denied where materiality differed based on who the product was marketed to and their purchasing motives).

    *c.* There are other differences that preclude certification. Perdue purchased a used Truck, while the other Plaintiffs purchased new Trucks. Because used Truck purchasers "present significant differences in, among other things, the channels of distribution . . . the amount and quality of information available to buyers, the condition of the vehicles at the time of purchase, and the prices paid for the vehicles," a case-by-case analysis is required as to which class members purchased used Trucks compared to new Trucks. *In re OnStar Cont. Litig.*, 278 F.R.D. at 381-82. Each

---

Sathiamoorthy ("Sathiamoorthy Rep."), Ex. 16, at ¶¶15-27 (explaining prevalence of aftermarket devices and impact on emissions).

[20] Bledsoe Dep. 78:7-10; Chouffet Dep. 45:2-17; Ganz Dep. 68:3-20; Forshaw Dep. 218:10-219:3; Ward Dep. 92:12-22; Witberg Dep. 142:11-143:11; Perdue Dep. 35:7-11, 49:1-22.

Plaintiff individually negotiated the price of their Truck, which will also affect whether Plaintiffs and putative class members actually paid a price premium. *Martin v. Ford Motor Co.,* 292 F.R.D. 252, 281 (E.D. Pa. 2013) ("price and circumstance[s] under which each individual Class member obtained [vehicle] must be considered").

*d.* Additionally, the Plaintiffs used their Trucks differently – some used it for hauling heavy payloads (Bledsoe, Roberts, Ganz, Ward, Forshaw, Chouffet), daily driving (Roberts, Perdue), rare or occasional driving (Erben, Ward), driving long distances (Perdue, Erben, Roberts, Bledsoe), in city or suburban traffic (Chouffet, Ganz), or on rough terrain (Erben).[21] As Plaintiffs' proffered technical expert testified, these factors all have a substantial effect on both the emissions efficiency and the fuel economy performance of the Truck. Smithers Dep. 379:2-390:18.

*e.* Moreover, there are material differences in Plaintiffs' Trucks, depending on what class of Truck, what model year they purchased, and the calibrations downloaded. Plaintiffs' proposed classes group the 2500 and 3500 models together into their single definition of "Class Vehicles," but the two models have different weights, have different emissions performance, and are subject to different

---

[21] Bledsoe Dep. 129:6-17, 108:11-109:10, 142:23-143:2, 168:5-13, 238:21-239:24; Roberts Dep. 45:25-47:19, 80:25-81:11, 82:9-83:11; Ganz Dep. 49:4-50:6, 142:6-10; Ward Dep. 45:18-46:4, 47:2-18; Forshaw Dep. 97:17-98:5; Chouffet Dep. 75:1-18; Perdue Dep. 61:7-63:5; Erben Dep. 64:22-25, 65:23-66:18, 59:18-60:6, 105:18-106:6.

emissions standards. *See* Background, § I. In addition, there are material differences between model years, including changes to the aftertreatment system's hardware and software that affected the emissions and fuel economy. *Id.* Thus, the emissions performance of any single Truck varies on numerous factors, all of which require an individual analysis of the class member.

### C.    Injury, Causation, And Damages Issues Preclude Certification.

### 1.    Plaintiffs' Damages Model Does Not Fit Their Claims.

This Court must review the evidence and carefully scrutinize whether the models offered by Plaintiffs' experts to show common injury and damages are realistic and reliable, and tied to Plaintiffs' theory of the case. *Comcast*, 569 U.S. at 35-36. The damages model advocated by Plaintiffs and described by their proffered expert, Edward Stockton, is incompatible with the evidence in this case.

First, "Stockton's conclusions . . . are only as valid as the premises he was asked to accept." *Counts* Show Cause Order at 31. As in *Counts*, Stockton's damages model fails because he erroneously assumes the existence of an EED. Stockton Rep. at ¶¶ 11-13, 18, 22, 36, 89. Second, while Stockton claims he will identify and calculate the fair market value of the Trucks' emissions system had it met Plaintiffs' expectations, *id.* at ¶¶ 94-98, Stockton has not identified any way to account for the supply-side of this fair market value analysis. This is the same flaw that caused the court in *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 235-40

(S.D.N.Y. 2019), to disregard as unreliable a "conjoint analysis" damages model substantially identical to the model Stockton intends to offer in this case. *See also In re Volkswagen "Clean Diesel" Mktg. Sales Pracs., & Prods. Liab. Litig.*, 500 F. Supp. 3d 940, 952 (N.D. Cal. 2020) (Stockton's opinions irrelevant and dismissing case for lack of standing).[22] Thus, neither Plaintiffs nor Stockton can demonstrate that injury (or damages) can be proved based on reliance on what Stockton proposes to—but has of yet not —done.

Further, Plaintiffs' admissions disprove that their injury or damages can be demonstrated through common proof. Plaintiffs allege they were injured because they paid a premium for their Truck based on their expectation that it would be "low emissions." SAC ¶¶ 39, 260, 328(a). Seven of the Plaintiffs (Bledsoe, Chouffet, Ganz, Forshaw, Ward, Witberg, Perdue), however, testified that the only expectation they had with regard to the Trucks' emissions performance was that the Trucks met the 2010 EPA emissions standards. *See* Background, § II. These Plaintiffs cannot maintain state law claims, as the Clean Air Act preempts any such claims. *See Counts* Show Cause Order at 26-27. The remaining Plaintiffs testified that they had no expectations whatsoever as to the Trucks' emissions performance. Erben Dep. at 158:21-159:3; Roberts Dep. at 125:18-22, 128:3-14. Thus, they (and putative class

---

[22] Cummins adopts, and incorporates by reference, FCA's argument in full as to why Stockton's opinion does not support Plaintiffs' Motion.

members who also lack such expectations at the time of purchase) could not demonstrate they suffered any injury based on receiving a Truck whose emissions system performed worse than their (non-existent) expectations. *In re Cheerios Mktg and Sales Practices Litig.*, No. 09-cv-2413, 2012 WL 3952069, at *12 (D.N.J. Sept. 10, 2012) (no standing where plaintiffs unable to demonstrate what they received was of lesser value than expected).[23] Moreover, because each putative class member individually negotiated the price of their Truck, individual analysis is necessary to determine whether the class member in fact paid such a premium.

Similarly, Plaintiffs have not pointed to any advertising or marketing statements ***from Cummins***, much less any they purportedly relied upon in purchasing the Trucks. Absent a connection between Plaintiffs' purchasing decision and Cummins' marketing, an individual class member cannot establish they suffered a "concrete harm" that is "fairly traceable" to Cummins. *Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 984 (N.D. Cal. 2009) (purchase not based on disputed advertising).

## III.   PLAINTIFFS CANNOT SATISFY RULE 23(A)'S REQUIREMENTS.

Plaintiffs have the burden to prove numerosity, commonality, typicality, and, adequacy. Fed. R. Civ. P. 23(a); *see also Dukes*, 564 U.S. at 349-50. A class representative must be part of the class and possess the same interest and suffer the

---

[23] Likewise, individuals who received the fuel economy they expected or are satisfied with the fuel economy (like Plaintiff Erben) have no claim for relief, and determining those expectations would be a highly individualized analysis.

same injury as its members. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625–26 (1997); *Vasalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013).

### A.    Plaintiffs' Claims Are Not Common

As discussed in more detail in Part II addressing predominance, there are significant differences in the Trucks that Plaintiffs seek to include in their overbroad classes. There must be a named Plaintiff that satisfies commonality for each proposed class. Perdue, Chouffet, Erben, Witberg, and Forshaw owned MY 2007-2009 Trucks with Blackbird Engines. Commonality is therefore, at a minimum, lacking as to absent class members with Trucks with different engines or model years (let alone as to those with different calibrations or other modifications that could be at issue). The same is true with respect to Ward, Roberts, and Ganz, who had MY 2010-2012 Trucks with Blackhawk engines. Some of the named Plaintiffs owned 3500s, while others owned 2500s. As discussed in Part I, Plaintiffs have not presented ***any*** testing reflecting higher emissions by 3500 Trucks, and owners of 2500s and 3500s are subject to different claims and defenses. These differences are material, and certification should be denied because "common answers" are not "apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

### B.    Typicality

Typicality is "not met where 'a named plaintiff who proved his [or her] own claim would not necessarily have proved anybody else's claim.'" *Johnson v. ITS*

*Fin. LLC*, 314 F.R.D. 441, 446 (S.D. Ohio 2015) (quoting *Sprague*, 133 F.3d at 399). As reflected in Argument §II, that is true here. Both Plaintiffs' expectations, and the emissions and fuel performance of their Trucks, can vary significantly, and thus proof of their individual claims will not prove the claims of absent class members.

Moreover, the Plaintiffs and class members are subject to unique defenses that destroy typicality. "Courts of appeals have held that unique defenses bear on both the typicality and adequacy of a class representative." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006). For example, Perdue replaced his Truck's DPF and installed an illegal aftermarket product that changed the Truck's emissions system and performance, causing the Truck to emit higher amounts of NOx in exchange for increased horsepower. Perdue Dep. 99:18-112:24; *see also* Sathiamoorthy Rep. at ¶¶16-17. In doing so, he is subject to defenses that the Truck's emissions performance was not a factor in his purchasing decision, and that he spoliated evidence, preventing Defendants from investigating his Truck's emissions system. *Falcon v. Philips Elec. N. Am. Corp.*, 304 F. App'x 896, 897 (2d Cir. 2008); *Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 257 (N.D.Cal. 2012). Similarly, Erben testified he is satisfied with the fuel economy performance of his Truck, precluding any claim relating to expected fuel economy and is thus not typical of the class members who seek to advance fuel economy claims. Erben Dep. 115:24-116:2.

Roberts, Witberg and Chouffet disposed of their Trucks, while the other Plaintiffs still own them.[24] Background, § II. Each received something of value for the trade in; Chouffet traded his Truck in for a new Dodge, Roberts was forgiven $28,733 in outstanding loans on the Truck when he traded it in, while Witberg received $10,000. Chouffet even testified that the dealer gave him a better price for his Truck than the estimate he looked up online before trading it in. Chouffet Dep. 114:12-116:1. The fact that these former owners can and did "avail themselves of a different set of remedies than current owners undercuts the typicality of [their] claims." *Cholakyan v. Mercedes-Benz, USA, LLC* 281 F.R.D. 534, 557 (C.D. Cal. 2012); *see also Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 338 (4th Cir.1998) (sale of product may reduce class member's "zeal for damages").

## C.  Several Plaintiffs Are Not Adequate Representatives

First, the North Carolina and South Carolina classes fail because a plaintiff cannot adequately represent a class in which she is not a member, and the court cannot certify a class that lacks a named plaintiff. *Shipp v. Memphis Area Office, Tennessee Dep't of Employment Security*, 581 F.2d 1167, 1172-73 (6th Cir. 1978);

---

[24] As a result, these Plaintiffs (like Perdue) are subject to potential spoliation defenses inapplicable to other members of the putative classes that render them atypical of the class and inadequate representatives. *Falcon v. Philips Elecs. N.A.*, 304 F. App'x 896, 898 (2d Cir. 2008) (certification denied where named plaintiff disposed of product at issue during litigation); *Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 150 (E.D.N.Y. 2012) (same).

*see also Sosna v. Iowa*, 419 U.S. 393 (1975). Perdue (North Carolina) did not purchase his RAM Truck from an "***FCA-authorized dealer*** or distributor in North Carolina" and Forshaw (South Carolina) did not purchase from an "FCA-authorized dealer ***in South Carolina***." *Compare* Mot. at 2 *with* Perdue's Fact Sheet, Ex. 17, at ¶ 21 (purchase at ***Chevrolet*** dealership) and Forshaw Dep. 107:5-120:14 (purchase from dealership based outside of South Carolina).

Second, the only proposed representative of the Texas class, Chouffet, is inadequate based on his own testimony that he did not know what a class representative was, did not know if he was representing any classes, did not want to be a class representative, and was unwilling to take on any of the corresponding responsibilities, attend the trial, travel for court appearances, stay informed about the case, or represent other unnamed plaintiffs in the class.[25] Chouffet Dep. 126:6-128:4; *Miller v. Mercedes-Benz USA LLC*, No. 06-05382, 2009 WL 1393488, at *2 (C.D. Cal. May 15, 2009) (adequacy lacking where plaintiff "has already shown that she is less than interested in prosecuting the action vigorously on behalf of the class") (internal quotation omitted).

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion should be denied.

---

[25] Following a break, Chouffet stated he wanted to "retract" those statements, Chouffet Dep. 170:12-171:17, but his lack of adequacy is clear from his testimony.

Dated: October 28, 2021                    Respectfully submitted,

                                           FOLEY & LARDNER LLP

                                           /s/ Jonathan W. Garlough
                                           Jeffrey A. Soble
                                           Jonathan W. Garlough
                                           Susan Poll Klaessy
                                           321 N. Clark Street, Suite 3000
                                           Chicago, IL 60654-5313
                                           (312) 832-4500
                                           jsoble@foley.com
                                           jgarlough@foley.com
                                           spollkaessy@foley.com

                                           Vanessa L. Miller (P67794)
                                           500 Woodward Avenue, Suite 2700
                                           Detroit, MI 48226-3489
                                           (313) 234-7100
                                           vmiller@foley.com

                                           Michael D. Leffel
                                           150 East Gilman Street, Suite 5000
                                           Madison, WI 53703-1482
                                           (608) 257-5035
                                           mleffel@foley.com

                                           *Attorneys for Defendant-Cummins Inc.*

## CERTIFICATE OF SERVICE

I, Jonathan W. Garlough, hereby certify on October 28, 2021, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filing.


/s Jonathan W. Garlough