# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JAMES BLEDSOE, *et al*., on behalf of themselves and all others similarly situated , | Case No. 4:16-cv-14024 |
| | Hon. Terrence G. Berg |
| Plaintiffs, | |
| v. | |
| FCA US LLC, *et al*. , | |
| Defendants. | |

## DEFENDANTS CUMMINS INC.'S AND FCA US LLC'S MOTION TO STRIKE PLAINTIFFS' EXPERT JUSTON SMITHERS' REPORT AND OPINIONS

Pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993) and its progeny, Defendants Cummins Inc. ("Cummins") and FCA US LLC ("FCA US") respectfully move the Court to exclude the report and opinions of Plaintiffs' retained expert Juston Smithers. The basis for exclusion is detailed in the "Memorandum in Support of Cummins Inc.'s Motion to Exclude Expert Opinion," filed concurrently with this Motion.

Pursuant to Local Rule 7.1(a), Defendants state that they have conferred with counsel for Plaintiffs, who do not concur in this motion.

Dated: October 28, 2021

Respectfully submitted,

By: */s/ Jonathan W. Garlough*
Jeffrey A. Soble
Jonathan W. Garlough
FOLEY & LARDNER LLP

321 North Clark Street, Suite 2800
Chicago, IL 60654
Tel: 312-832-4500
Fax: 312-832-4700
Email: jsoble@foley.com
Email: jgarlough@foley.com

Leah R. Imbrogno
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
Tel: 313-234-7100
Email: limbrogno@foley.com

*Attorneys for Defendant Cummins Inc.*

By: */s/ Stephen A. D'Aunoy (w/consent)*
Carl Rowley
Stephen A. D'Aunoy
Thomas L. Azar, Jr.
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri  63101
Telephone:  (314) 552-6000
Facsimile:  (314) 552-7000
Email: crowley@thompsoncoburn.com
Email: sdaunoy@thompsoncoburn.com
Email: tazar@thompsoncoburn.com

James P. Feeney
Paul L. Nystrom
DYKEMA GOSSETT
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI  48304-2820
Telephone:  248-203-0700
Email: jfeeney@dykema.com
Email: pnystrom@dykema.com

*Attorneys for Defendant FCA US LLC*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JAMES BLEDSOE, *et al*., on behalf of themselves and all others similarly situated ,

       Plaintiffs,

  v.

FCA US LLC, *et al*. ,

       Defendants.

Case No. 4:16-cv-140244:16-cv-140244:16-cv-14024

Hon. Terrence G. Berg

## MEMORANDUM IN SUPPORT OF DEFENDANTS CUMMINS INC.'S AND FCA US LLC'S MOTION TO STRIKE PLAINTIFFS' EXPERT JUSTON SMITHERS' REPORT AND OPINIONS

1

## **TABLE OF CONTENTS**

I.   SMITHERS INVENTS EEDS AND FORMS IRRELEVANT
     OPINIONS FROM THEM. ...............................................................3

    A.   Smithers' Methodology In Creating And Testing EEDs Is Not
          Reliable. ...............................................................................4

        1.   Without Reference To Credible Sources Or
               Methodologies, Smithers Invents EEDs For This
               Litigation. ....................................................................4

        2.   Smithers Makes No Attempt To Confirm His EED
               Conclusions, Rendering Them Unreliable. ................................6

    B.   Smithers Admits His EED Opinions Are Irrelevant. ...........................8

    C.   Smithers Does Not Draw Any Conclusions From His EEDs
          That Will Be Helpful To The Jury. .....................................................11

II.  SMITHERS' REPORT DOES NOT ADDRESS ISSUES AT THE
     HEART OF THIS CASE. ...............................................................13

III. SMITHERS' OPINIONS REGARDING THE 3500 CLASS
     VEHICLES ARE UNRELIABLE AND NOT RELEVANT. .....................15

    A.   Smithers Does Not Have Reliable Data For Four Out Of The
          Five EEDs Within The Context Of The 3500 Class Vehicles. ...........15

    B.   Smithers Only Tested One 3500 Class Vehicle, And That
          Vehicle Passed Half Of His EED Testing. ..........................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Honda Motor Co. v. Allen*,
   600 F.3d 813 (7th Cir. 2010) ...............................................................................17

*Baker v. Chevron U.S.A., Inc.*,
   533 F. App'x 509 (6th Cir. 2013) .........................................................................5

*Berry v. City of Detroit*,
   25 F.3d 1342 (6th Cir. 1994) ................................................................................9

*Bledsoe v. FCA US LLC*,
   307 F. Supp. 3d 646 (E.D. Mich. 2018) .............................................................17

*Brown v. Electrolux Home Prods., Inc.*,
   2017 WL 2952281 (S.D. Ga. 2017).....................................................................17

*Counts et al. v. Gen.l Motors LLC*,
   No. 1:16-cv-12541 (July 7, 2016).......................................................................17

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993)......................................................................................*passim*

*Dow Corning Corp. v. Jie Xiao*,
   No. 11-10008-BC, 2013 WL 992773 (E.D. Mich. Mar. 13, 2013)....................15

*Dow v. Rheem Mfg. Co.*,
   No. 09-13697-BC, 2012 WL 1621368 (E.D. Mich. May 9, 2012) ............6, 7, 10

*Ebert v. Gen. Mills, Inc.*,
   2015 U.S. Dist. LEXIS 23736 (D. Minn. Feb. 27, 2015), *class certification
   reversed at* 823 F.3d 472 (8th Cir. 2016) ......................................................2, 12

*Ezra v. DCC Litig. Facility, Inc.*,
   667 F. App'x 538 (6th Cir. 2016)...................................................................9, 14

*Greenwell v. Boatwright*,
   184 F.3d 492 (6th Cir. 1999) ..............................................................................12

*Jahn v. Equine Servs., PSC*,
   233 F.3d 382 (6th Cir. 2000) ................................................................6

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*,
   474 F.3d 288 (6th Cir. 2007) ............................................................2, 3

*Johnson v. Manitowoc Boom Trucks, Inc.*,
   484 F.3d 426 (6th Cir. 2007) ..........................................................6, 10

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)...............................................................................6

*Newell Rubbermaid, Inc. v. Raymond Corp.*,
   676 F.3d 521 (6th Cir. 2012) ..........................................................2, 15

*Pomella v. Regency Coach Lines, Ltd.*,
   899 F. Supp. 335 (E.D. Mich 1995) ................................................8, 17

*Tamraz v. Lincoln Elec. Co.*,
   620 F.3d 665 (6th Cir. 2010) ..............................................................14

**Statutes**

40 CFR
   § 86.1803-01 ...................................................................................4, 13
   § 86.1809-10 .......................................................................................13
   § 86.1816–08........................................................................................8
   § 86.1844–01(d)(11) .............................................................................4

Fed. R. Evid. 702 ............................................................................2, 3, 9

iii

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.    Should the Court exclude Juston Smithers' report and opinions when he invents new terminologies and methodologies that are not reliable and he does not offer any opinions or conclusions related to issues present during class certification?

Cummins and FCA Answer:  Yes.

## INTRODUCTION

In moving for class certification, Plaintiffs proffer and rely upon the opinions of Juston Smithers, a purported expert on emissions.  Smithers' opines that Dodge RAM Pickups Model Year 2007-2012 (the "Class Vehicles") "all contain an Excessive Emissions Device ('EED') that uniformly causes excessive emissions during real-world driving conditions and decreased fuel economy." (Dkt. 183 at xi). His opinions, however, are rife with non-answers and half-answers on the issues central to class certification.

Smithers has admittedly **not** determined to a reasonable degree of engineering certainty whether: (1) the Class Vehicles contain a defeat device (Deposition of Juston Smithers ("Dep."), attached as Ex. A, at 10:16–23); (2) the PEMS testing data confirms the existence of an active regeneration defeat device (*Id.* at 16:5–12); (3) Cummins failed to disclose anything to the regulators (*Id*. at 174:24-175:8); or (4) the Class Vehicles operate differently when being tested versus when they are driven on the road (*Id.* at 76:11–20). He even admits he has no opinion about whether the Class Vehicles should or should not contain the "excessive emissions devices" ("EEDs") Smithers invented solely for his Report. (*Id.* at 490:9–20).[1]

---

[1] Plaintiffs attached Smithers' Report as Exhibit 1 to their Amended Motion for Class Certification, and filed Smithers' Report under seal.

Not only did Smithers fail to reach any such opinions, but the opinions he did express are not based on reliable and industry-accepted methods, and his conclusions are not relevant. For example, Smithers invents the term EED while ignoring terms defined by the applicable regulations. Moreover, Smithers' opinion regarding the 3500 Class Vehicles is not based on any data, since Smithers concluded that almost all his test data for those vehicles was unreliable and would not support any conclusions.

## LEGAL STANDARD

Expert testimony must be "the product of reliable principles and methods," and must be "reliably applied . . . to the facts of the case." Fed. R. Evid. 702. The Court must "determine whether [the] evidence 'both rests on a reliable foundation and is relevant to the task at hand.'" *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citation omitted); *see also Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007) (courts "evaluating the relevance and reliability of proffered expert testimony with heightened care"). At the class certification stage, a *Daubert* inquiry "scrutinizes the reliability of expert testimony in light of the criteria for class certification and the current state of the evidence." *Ebert v. Gen. Mills, Inc.*, 2015 U.S. Dist. LEXIS 23736, at *8 (D. Minn. Feb. 27, 2015) (citation omitted), *class certification reversed at* 823 F.3d 472 (8th Cir. 2016).

## ARGUMENT

Smithers' opinions fail both the reliability and relevance prongs under the *Daubert* analysis. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993) (requiring "any and all scientific testimony or evidence admitted is not only relevant, but reliable"). First, Smithers invents a new category of devices that lacks any foundation in reliable principles and methods. Second, Smithers' opinions do not address factual issues related to the case. In fact, Smithers' opinions are intentionally void of meaningful conclusions. Finally, Smithers' opinions regarding the 3500 Class Vehicles lack any supporting data.

## I.    SMITHERS INVENTS EEDS AND FORMS IRRELEVANT OPINIONS FROM THEM.

Smithers draws his opinion from unreliable scientific inquiry that this Court should exclude. Rule 702 requires that expert testimony be the "product of reliable principles and methods." Fed. R. Evid. 702. Under *Daubert*, courts assess this reliability by determining: (1) whether the theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether there is a "known or potential error rate"; and (4) whether the theory or technique enjoys general acceptance in the relevant scientific community. 509 U.S. at 579. Because Smithers admits that his opinions meet none of those four criteria, Plaintiffs do not satisfy their "heightened" burden of showing the reliability of Smithers' testimony. *See Surles*, 474 F.3d at 295.

A.     **Smithers' Methodology In Creating And Testing EEDs Is Not Reliable.**

Smithers created the EEDs without implementing any known or accepted methodologies, rendering EEDs unreliable. Further, several of Smithers' EED conclusions lack any data to support them and were never adequately tested, and therefore will not assist the trier of fact. *Daubert*, 509 U.S. at 591.

1.     **Without Reference To Credible Sources Or Methodologies, Smithers Invents EEDs For This Litigation.**

Smithers' opinions focus on Excessive Emissions Devices—a concept created by Smithers and completely unknown to the engineering community. (Dep. at 138:4–139:15). "EED" does not appear in any EPA or CARB literature, has never been subject to peer review, and is not in any published treatise, textbook, or article. (*Id.* at 139:20–140:9). Smithers admits that this is not a "generally accepted scientific term." (*Id.* at 138:24–139:2). He admits that an EED is neither an Auxiliary Emission Control Device[2] ("AECD") nor a Defeat Device[3], as defined by the applicable regulations. (*Id.* at 141:15–17 ("AECD and defeat device ***don't apply*** to the devices

---

[2] 40 CFR, § 86.1844–01(d)(11).

[3] "*Defeat device* means an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use, unless: (1) Such conditions are substantially included in the Federal emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles. . . ." 40 CFR § 86.1803-01.

I'm talking about.")). Unable to draw any conclusions using industry-accepted standards and terminology, Smithers resorts to creating an entirely new category of "devices." Smithers states, "***It's a shorthand that I made up for this report***." (*Id.* at 139:5-6).

Smithers explained that he invented the term EED: the "idea is to be fairly generic in the definition.…" (*Id.* at 174:16–21). While the term itself purports to identify a "device," Smithers could not specifically identify what the "device" actually is. Unable to offer even a modicum of specificity, Smithers testified that "EED" includes "everything" – the hardware, the engine, the aftertreatment system, and the software working in conjunction. (*Id.* at 174:5–15, 176:7-12). A definition this broad and vague is not a workable foundation from which reliable testing principles could be applied to prove or disprove a hypothesis. *Baker v. Chevron U.S.A., Inc.*, 533 F. App'x 509, 514 (6th Cir. 2013) (affirming exclusion of "unreliable, vague, and conclusory" expert opinion).

Accordingly, this Court should strike Smithers' opinions related to EEDs as unreliable. Smithers' EEDs fail to meet three of the four criteria of *Daubert's* reliability inquiry: EEDs have not been subject to peer review; EEDs do not have a known rate of error; and EEDs are not accepted by the engineering community. *Daubert*, 509 U.S. at 579. Furthermore, the convenience of Smithers' inventing EEDs for Plaintiffs' class certification brief warrants scrutiny. While every expert

report is drafted for the purpose of litigation, Smithers' EED creation and Smithers'
methodology represents something created solely for litigation that indicates a
"quintessential expert for hire." *Johnson v. Manitowoc Boom Trucks, Inc*., 484 F.3d
426, 435 (6th Cir. 2007) (citation omitted) (where purported expert's testimony was
prepared solely for litigation, there could be grounds for exclusion); *Dow v. Rheem
Mfg. Co.*, No. 09-13697-BC, 2012 WL 1621368, at *8 (E.D. Mich. May 9, 2012)
(opinion created solely for litigation was a "red flag").

### 2.      Smithers Makes No Attempt To Confirm His EED Conclusions, Rendering Them Unreliable.

An expert must apply "the same level of intellectual rigor that characterizes
the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526
U.S. 137, 152 (1999). Though experts are permitted wide latitude in their opinions,
an opinion must have "a reliable basis in the knowledge and experience of the
discipline." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting
*Daubert*, 509 U.S. at 592). Here, Smithers formulates opinions without considering
differences in Class Vehicles, without reviewing key documents, and without relying
on industry standards.

First, Smithers glosses over differences between the Class Vehicles. He
concludes that, because the test data between different vehicles is similar, the
vehicles and EEDs he contrives as contained within the vehicles are the same. (Dep.
at 488:3–489:16). But this conclusion is not based on any rigorous analysis typical

6

of an industry expert. An expert opinion based on an underlying theory that relies on "improper extrapolation" is not a product of reliable scientific principles and methods. *Dow*, 2012 WL 1621368 at *8. In many instances, Smithers did not even test a Class Vehicle for each Model Year, instead relying on the assumption that it was possible to "extrapolate the results to other model years." (Dep. at 489:8–16).

Second, Smithers did not undertake a rigorous analysis of Cummins' AECDs, as disclosed within Cummins' AECD Disclosures. In fact, he analyzed only a small fraction of the AECD Disclosures. In his deposition, Smithers claimed he had reviewed the "official" AECD Disclosure for each Model Year, but based that conclusion only on what counsel provided to him and what his staff reviewed. (*Id.* at 43:19–44:14). Plaintiffs admit that Smithers "only had oral discussions with his staff about AECD disclosures," suggesting that Smithers may have never personally received or reviewed *any* AECD. (Oct. 14, 2021 J. Patterson letter to J. Soble, attached as Ex. B). Smithers admitted that he did not know Cummins submitted AECD Revisions, and that he did not review any Running Changes that Cummins submitted, despite citing them in his Report. (Dep. at 29:18–30:17, 42:23–43:21). Further, Smithers describes EEDs as including software, yet he has not viewed *any* of the software for the Class Vehicles: he did not review a single calibration.[4] (Dep.

---

[4] This omission is particularly troubling since Plaintiffs have alleged that "these defeat devices are always the result of some software manipulation." Transcript of

at 19:23-20:7). Smithers cannot possibly testify that his invented EED "device" includes the software when he has not viewed any software. *See Pomella v. Regency Coach Lines, Ltd.*, 899 F. Supp. 335, 342 (E.D. Mich 1995) ("an expert's opinion must be supported by 'more than subjective belief and unsupported speculation'") (quoting *Daubert*, 509 U.S. at 590).

Third, Smithers compares PEMS testing data for the Class Vehicles to an inappropriate standard value. He compares the data against the 0.2 g/mi standards for both 2500 and 3500 Trucks on the FTP75 dynamometer emissions test. (*See, e.g.*, Rept. at 83). In choosing this comparison, Smithers ignores a more appropriate standard to compare against on-road emissions. Specifically, the regulators would have compared these vehicles to 0.3 and 0.5 g/mi for in-use verification testing (IUVP) of Model Year 2007-2011 Class Vehicles. 40 CFR § 86.1816–08. Smithers knew such a standard existed, but chose to ignore it. (Dep. at 74:17-76:2).

**B.    Smithers Admits His EED Opinions Are Irrelevant.**

Smithers' report centers on the existence of EEDs. But a closer examination of Smithers' opinions on EEDs reveals they are not reliable and will not help the trier of fact. He has yet to conclude, within a reasonable degree of scientific certainty, whether the EEDs are improper, let alone how or why. This lack of conclusions is

---

Hearing on Defendants' Motion to Dismiss Second Consolidated and Amended Class Action Complaint, Dkt. 96, attached as Exhibit C, at 45:1-25.

unhelpful to the jury. *Ezra v. DCC Litig. Facility, Inc.,* 667 F. App'x 538, 539 (6th Cir. 2016).

Smithers' opinion does not take issue with the increase in emissions from the components labeled as EEDs. He admits that "under certain conditions…you would expect that emissions would be higher." (Dep. at 146:16-150:4). In reality, four of Smithers' EEDs are well-known principles of physics that do not require expert opinion. "If everyone knows [a particular fact], then we do not need an expert because the testimony will not 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994) (quoting Fed. R. Evid. 702). Smithers admits that four of his EEDs simply identify issues known to increase load on an engine:

| Smithers' EED | Layperson Knowledge |
|---|---|
| Ambient Air EED | Outside air temperature can affect emissions. (Rept. at 53, 61-63) |
| Road Grade EED | Road incline can require more torque, increasing emissions. (Rept. at 66-68) |
| Trailer Towing EED | Towing can increase emissions. (Rept. at 79) |
| Cold and Hot Start EED | Starting an engine when hot or cold can affect emissions. (Rept. at 80-81) |

In an effort to keep his EEDs relevant, Smithers attempts to distinguish well-known engineering and physics principles from EEDs with another unsupported and invented concept: "linearity." Smithers posits, without reference to any support, that

9

an increase in load on the engine should result in a proportional increase in emissions. (Dep. at 149:23-150:4). For example, according to Smithers, if he were driving at a 0 percent road grade versus a 50 percent road grade, he would expect "those changes to be roughly proportional to the additional load that's on the engine." (*Id*. at 148:18-149:22).

Smithers does not articulate where the line between linearity and excess emissions lies. He does not provide any foundation for this belief. He does not provide any testing or validation in coming to this conclusion. *Dow*, 2012 WL 1621368, at *8 (denying motion to reconsider order excluding expert testimony, where expert did not test or validate hypothesis). Similar to Smithers' EED invention, linearity represents another "red flag" from Smithers, as it is opinion created solely for the purpose of litigation without regard to *Daubert's* reliability criteria. *Id.* at *8 (opinion prepared solely for litigation was a "red flag"); *Johnson*, 484 F.3d at 435 (where purported expert's testimony was prepared solely for litigation, there could be grounds for exclusion) (citation omitted).

In fact, the regulations applicable to these vehicles disprove Smithers' unsupported and unproven hypothesis. Specifically, the 3500 Class Vehicles are permitted 100% higher emissions than the lighter, 2500 Class Vehicles. However, the 3500 Class Vehicles are only approximately 16 percent heavier than the 2500 Class Vehicles. Smithers acknowledges that 100% higher emissions is not linearly

correlated with 16 percent more load. (Dep. at 320:25-323:14): When asked why regulators would grant twice as much NOx for vehicles that are roughly 16 percent heavier, and that Smithers claims have the same engine and emissions strategy, Smithers could not answer. Instead, he pointed to nonspecific and vague "lobbying" from manufacturers, "political decisions" and a "whole rats nest of consideration. . . . " (*Id*. at 322:24-323:11).

Finally, a closer look into Smithers' Active Regeneration EED reveals that there is nothing in dispute here. His Active Regeneration EED claims that the active regeneration is higher than disclosed. To the contrary, Cummins expressly disclosed the effect of regenerations and discussed the topic at length with agencies, as Smithers had to admit under oath. (*Id*. at 174:22-175:8; Rept. at 48).

Cummins disclosed the test results from which its infrequent regeneration adjustment factors ("IRAF") and upward adjustment factor ("UAF") calculations were based. Cummins also disclosed its IRAF and UAF methodology. When shown Cummins' spreadsheet reflecting the regeneration frequency percentages across different test cycles, Smithers acknowledged that the figures Cummins used and disclosed to the regulators were consistent with his own data. (Dep. 237:20-239:21).

### C.   Smithers Does Not Draw Any Conclusions From His EEDs That Will Be Helpful To The Jury.

Smithers' contrived EEDs are nothing more than aspects of functionality that Cummins disclosed to regulators in its AECD Disclosures. Even if Smithers'

opinions were reliable (they are not), there still would be no "fit" between his opinions and the issues to be resolved at trial. *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999) ("The relevance requirement ensures that there is a 'fit' between the testimony and issues to be resolved by the trial"). The expert's opinion must be "sufficiently tied to the facts of the case that it will aid the [trier of fact] in resolving a factual dispute." *Daubert*, 509 U.S. at 591. Likewise, Smithers' opinion is not linked to issues to be resolved for class certification, and thus does not satisfy *Daubert*'s relevance prong. *Ebert*, 2015 U.S. Dist. LEXIS 23736.

Plaintiffs rely on testing to show that "[a]ll owners of the Class Vehicles overpaid at the point of sale because they purchased trucks with an undisclosed EED." (Dkt. 183, at ¶ 2). Yet Smithers offers no such opinion. Smithers has not identified any undisclosed software or hardware feature that resulted in higher emissions. (Dep. at 174:24-175:8). Smithers has not reached any opinions to a reasonable degree of engineering certainty as to whether the Class Vehicles should or should not have the EEDs he conceives. (*Id.* at 490:9–20). Additionally, Plaintiffs effectively concede that these EEDs could not support certification of their claims, as they do not reference them at all in their Amended Motion for Class Certification. (*See* Dkt. 183).

## II.   SMITHERS' REPORT DOES NOT ADDRESS ISSUES AT THE HEART OF THIS CASE.

Smithers does not address issues at the core of this case—whether there is a defeat device in the Class Vehicles, and whether Cummins deceived regulators. Smithers' opinions are not a reliable method for determining whether the Class Vehicles contain an AECD or defeat device that cause elevated NOx emissions.

Smithers admitted under oath that he did not use defined regulatory terms as the basis for his opinion because "AECD and defeat device don't apply to the devices I'm talking about." (Dep. at 141:15–17). Regulations provide a clear definition of "defeat device" and clear guidance on the prohibition of their use. 40 CFR § 86.1803-01; 40 CFR § 86.1809-10. Instead of using the reliable, established, and widely-used references and guidance on AECDs and defeat devices to shape his opinion, Smithers invented his own device.

Plaintiffs' allegations center on whether there is a defeat device within the Class Vehicles. (Dkt. 62, at ¶ 18; *see also* Ex. C at 45:1-25; Transcript of Hearing on Defendants' Motions to Dismiss, Oct. 11, 2017, attached as Ex. D, at 42:7-12;. According to the Second Amended Complaint ("SAC"), part of Smithers' opinions show testing confirming "the frequency of active regeneration found in the PEMs testing and the existence of an active regeneration defeat device." (Dkt. 62, at ¶ 27). Yet during his deposition, Smithers admitted that he had not reached a conclusion to a reasonable degree of engineering certainty that the defeat device allegations within

the SAC were true. (Dep. at 16:5-12). Smithers' Report expressly disclaims any conclusion regarding defeat devices: "In future work, I intend to address the question of whether any of these EEDs constitutes a defeat device." (Rept. at 85). At his deposition, Smithers again confirmed that he had no opinion on whether the Class Vehicles contained a defeat device:

> Q:   [A]t this time, as of sitting here today, have you reached any conclusions to a reasonable degree of engineering certainty whether there are any defeat devices in any of the vehicles that you have looked at in this case?
>
> A:   I have not.

(Dep. at 10:16-23).

Smithers' opinions, as they stand, are nothing more than a working hypothesis. A working hypothesis is not helpful to the trier of fact. *Tamraz v. Lincoln Elec. Co.,* 620 F.3d 665, 670 (6th Cir. 2010) (explaining that a "working hypothesis" is not "admissible scientific knowledge"). Smithers has not reached any opinions to a reasonable degree of scientific certainty as to whether the vehicles operate differently when being tested than when on the road. (Dep. at 76:14-20). These non-opinions on defeat devices do nothing to advance Plaintiffs' claims and do not assist the trier of fact. *Ezra,* 667 F. App'x at 539 (expert offering no opinion on specific subject in report was not permitted to testify to subject at trial).

Smithers also fails to identify a single thing that Cummins or FCA US failed to disclose to regulators and consumers. If Smithers has reached any opinions to a

14

reasonable degree of scientific certainty, this Court would never know because Plaintiffs have claimed privilege over this issue and prevented Smithers from answering. (*See, e.g.*, Dep. at 22:4-24:9). Smithers did not address this in his Report, and declined to answer during his deposition. (*See, e.g.*, *id.* at 22:4-24:9). Thus, Smithers' EED analysis is not only rooted in unreliable methodology, but also amounts to a series of non-conclusions that are irrelevant to the Court's task at hand (assessing class certification) at hand. *See Rubbermaid*, 676 F.3d at 527.

## III.   SMITHERS' OPINIONS REGARDING THE 3500 CLASS VEHICLES ARE UNRELIABLE AND NOT RELEVANT.

Smithers' opinions regarding the RAM 3500 Class Vehicles contain little to no analysis and are unreliable. "Red flags that caution against certifying an expert [include] reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Dow Corning Corp. v. Jie Xiao*, No. 11-10008-BC, 2013 WL 992773, at *14 (E.D. Mich. Mar. 13, 2013). Smithers' opinions have several of these "red flags" regarding the RAM 3500.

### A.   Smithers Does Not Have Reliable Data For Four Out Of The Five EEDs Within The Context Of The 3500 Class Vehicles.

Smithers tried to test a RAM 3500. But Smithers was unable to obtain results on which he could rely with respect to his Ambient Air EED, Road Grad EED, Trailer Towing EED, and Cold and Hot Start EED. (Rept. at 52; 67; 72; 80). Having

attempted (but failed) to obtain test results for the 3500 Class Vehicles, Smithers decided to rely only on the 2500 Class Vehicles results.

Smithers needed test results from the 3500 Class Vehicles to form a reliable, relevant opinion. If test results were not necessary, Smithers would not have attempted to test the 3500 Class Vehicles in the first place. Additionally, applying the 2500 Class Vehicle results to the 3500 Class Vehicles is an improper methodology that ignores key differences in the vehicles. There are key differences between the vehicles that affect the emissions of each during testing. Namely, the 3500 Class Vehicles are 16 or 17 percent heavier than the 2500 Class Vehicles (Dep. at 320:22-321:2); have increased towing capacity by 4,000 to 5,000 pounds (*Id.* at 321:25-322:6); and have differences in torque (*Id*. at 322:10-18). The regulators recognize these differences by allowing the 3500 to emit twice as much NOx as the 2500 and still meet certification standards. (*Id*. at 111:14-24).

Smithers' analysis is inappropriate and renders his opinions on the 3500 Class Vehicles unreliable. If Smithers had followed established scientific methods, he would have tested his theories. "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified." *Daubert*, 509 U.S. at 593. Smithers initially attempted to do this. Having failed to get useable data, he abandoned scientific methodology and extrapolated conclusions from his other testing. Smithers makes no attempt to determine whether applying the results from

the 2500 Class Vehicles to the 3500 Class Vehicles is valid under established methodologies. Smithers' opinions do not have "good grounds," showing that his conclusions regarding the 3500 Class Vehicles are only "unsupported speculation." *Pomella*, 899 F. Supp. at 342 (citation omitted).

**B.      Smithers Only Tested One 3500 Class Vehicle, And That Vehicle Passed Half Of His EED Testing.**

After failing to obtain usable data for four EEDs, Smithers was able to obtain test data from one Model Year 2011 RAM 3500 Pickup. (Dep. at 319:3-5). Smithers relies on the data from this single vehicle to support his conclusions regarding the Active Regeneration EED in 3500 Class Vehicles. This is contrary to Smithers' testing of numerous 2500 Class Vehicles. It is also not enough under the law to form a reliable opinion. *Bledsoe v. FCA US LLC*, 307 F. Supp. 3d 646, 657 (E.D. Mich. 2018) ("Plaintiffs' allegations of the presence of a defect or a defeat device in the identified vehicles, based on results of their PEMS testing on a single Truck, are conclusory; they are not founded on specific allegations of fact."); *Counts et al. v. Gen.l Motors LLC*, No. 1:16-cv-12541, at 25 (July 7, 2016) (issuing Order to show cause where Smithers relied upon testing of only one vehicle); *see also Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 818 (7th Cir. 2010) ("a sample size of one is rarely, if ever, sufficient" to make extrapolations to a larger sample); *Brown v. Electrolux Home Prods., Inc.*, 2017 WL 2952281, at *2 (S.D. Ga. 2017) (excluding testimony

that "there would be no differences among the machines" in the proposed class because it was based upon "a sample size of just one machine").

The limited testing Smithers did complete shows that 3500 Class Vehicles met emissions standards half the time. "The 2011 Ram 3500 test vehicle has a result of 432 mg/mi is [sic] well within the range of in-use vehicles and also meets the IUVP standard. Thus, it is expected that the 2011 Ram 3500 test vehicle is representative of the current in-use population." (Rept. at 28). Under Smithers' analysis, the 3500 Class Vehicles are within the emissions levels and cut against Smithers' conclusion that "the effects of active regeneration are so severe that the resulting overall NOx emissions are significantly above the standard." (Rept. at 47).

## CONCLUSION

Cummins and the regulators were fully aware of the physics and mechanical outcomes that Smithers labels "EEDs." Smithers does not offer any helpful opinion. He does not come to any conclusions regarding defeat devices, failure to disclosure, or even the boundaries of his own EEDs. The few opinions he does offer are rooted in flawed methodology. More specifically, Smithers' opinions provide this court with: i) EEDs created by Smithers without industry approval or adequate testing; ii) no conclusions regarding the existence of defeat devices or any device that was not disclosed to regulators within the Class Vehicles; and iii) conclusions on the 3500

Class Vehicles based on testing of one vehicle or the testing of completely different vehicles—the 2500 Class Vehicles.

WHEREFORE, Cummins and FCA US respectfully requests this Court enter an order striking Juston Smithers' Report, Attachment A to Plaintiffs Class Certification brief (Dkt. 183), and all opinion and testimony related to the Report.

Dated: October 28, 2021            Respectfully submitted,

FOLEY & LARDNER LLP

/s/ Jonathan W. Garlough
Jeffrey A. Soble
Jonathan W. Garlough
Susan Poll Klaessy
321 N. Clark Street, Suite 3000
Chicago, IL 60654-5313
(312) 832-4500
jsoble@foley.com
jgarlough@foley.com
spollkaessy@foley.com

Vanessa L. Miller (P67794)
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
(313) 234-7100
vmiller@foley.com

Michael D. Leffel
150 East Gilman Street, Suite 5000
Madison, WI 53703-1482
(608) 257-5035
mleffel@foley.com

*Attorneys for Defendant Cummins Inc.*

19

THOMPSON COBURN LLP

*/s/ Stephen A. D'Aunoy (w/consent)*
Carl Rowley
Stephen A. D'Aunoy
Thomas L. Azar, Jr.
One US Bank Plaza
St. Louis, Missouri  63101
Telephone:  (314) 552-6000
Facsimile:  (314) 552-7000
crowley@thompsoncoburn.com
sdaunoy@thompsoncoburn.com
tazar@thompsoncoburn.com

DYKEMA GOSSETT
James P. Feeney
Paul L. Nystrom
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI  48304-2820
Telephone:  248-203-0700
jfeeney@dykema.com
pnystrom@dykema.com

*Attorneys for Defendant FCA US LLC*

20

## CERTIFICATE OF SERVICE

I, Jonathan W. Garlough hereby certify on October 28, 2021, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filing.

/s Jonathan W. Garlough