UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| **JAMES BLEDSOE, *et al.*,** individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> **FCA US LLC,** a Delaware corporation, and **CUMMINS INC.,** an Indiana corporation, <br><br> Defendants. | **4:16-CV-14024-TGB-RSW** <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AGAINST PLAINTIFFS BLEDSOE, ERBEN, FORSHAW, WITBERG, AND CHOUFFET** |

Plaintiffs in this proposed putative class action allege that Defendant FCA's 2007–2012 Dodge Ram 2500 and 3500 diesel trucks (the "Trucks" or "Affected Vehicles"), equipped with 6.7-liter Turbo Diesel engines manufactured by Defendant Cummins Inc., emit nitrogen oxides ("NOx") at levels that exceed federal and state emissions standards as well as the expectations of reasonable consumers. Plaintiffs allege that they purchased their trucks on the basis of advertising from Defendants that touted the trucks as more fuel efficient and environmentally friendly than other diesel trucks. Plaintiffs allege that despite marketing the trucks as containing "clean diesel engines," Defendants knew the trucks discharged emissions at levels greater than what a reasonable customer

would expect based on the alleged representations. In Plaintiff's operative Second Consolidated and Amended Class Action Complaint ("SCAC"), they allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"), the Magnuson Moss Warranty Act ("MMWA"), and consumer protection, breach of contract, and fraudulent concealment laws of 50 states as well as the District of Columbia. Defendants FCA and Cummins moved to dismiss (ECF Nos. 67, 68), and this Court entered an Order granting Defendants' motions as they relate to the MMWA but denying as they pertain to all other claims. ECF No. 97.

Pending before the Court is Defendant FCA's Motion for Judgment on the Pleadings as to Plaintiffs, Bledsoe, Erben, Forshaw, Witberg, and Chouffet ("Select Plaintiffs"), pursuant in part, to Fed. R. Civ. P. 12(c), for failure to plead facts supporting a basis to hold FCA liable. Specifically, FCA argues (1) because FCA as an entity did not exist at the time the vehicles of the Select Plaintiffs were manufactured and sold, the claims relating to the vehicles of the Select Plaintiffs could not involve any conduct committed by FCA; (2) the SCAC does not allege in any manner that FCA should be subject to successor liability for the conduct of Chrysler, LLC, which was the manufacturer that made and sold the Select Plaintiffs' vehicles; and, (3) an Order entered by the United States Bankruptcy Court for the Southern District of New York bars Select

2

Plaintiffs from bringing fraud-based claims against FCA and attaining the type of relief they seek.

For the reasons outlined below, the Court will **GRANT** FCA's Motion for Judgment on the Pleadings and enter judgment in favor of FCA on the claims of Plaintiffs Bledsoe, Erben, Forshaw, Witberg, and Chouffet. Accordingly, Select Plaintiffs will be removed from the putative class as potential class representatives.

## I.   BACKGROUND

Plaintiffs seek to bring claims on behalf of themselves and a nationwide class of all persons or entities in the United States who, as of November 1, 2016, owned or leased a 2007 to 2012 Dodge Ram 2500 or Dodge Ram 3500 pickup truck equipped with a Cummins 6.7-Liter diesel engine ("the Trucks").

Plaintiffs also seek to establish sub-classes representing owners and/or lessees of the Trucks in all 50 states and the District of Columbia, alleging deceptive advertising, breach of contract, and fraudulent concealment claims under the laws of those respective states.

FCA is a limited liability company organized and existing under the laws of the State of Delaware. SCAC, ¶ 56. FCA did not exist until April 28, 2009. FCA is a motor vehicle "Manufacturer" and a licensed "Distributor" of new, previously untitled Chrysler, Dodge, Jeep, and Ram brand motor vehicles. After its formation, FCA agreed to purchase certain assets of the bankrupt entity Old Carco LLC (f/k/a Chrysler LLC)

3

ECF No. 171, PageID.18039. The purchase of the bankrupt estate required court approval. *Id*. The official "Closing Date" for the purchase was June 10, 2009, when the United States Bankruptcy Court for the Southern District of New York ("the Bankruptcy Court") granted final approval of the asset purchase in the form of a "Sale Order." *Id*. at 18038-39 (citing *In re Old Carco LLC* (f/k/a Chrysler LLC), Case No. 09-50002 (Bankr. S.D.N.Y. June 10, 2009), (ECF No. 171-3)).

As threshold matter, FCA points out that the SCAC cannot allege conduct by FCA occurring in connection with the Select Plaintiffs' vehicles because these vehicles were all purchased before FCA's purchase of the bankruptcy estate was approved.  Moreover, the SCAC does not specifically allege that FCA is the successor in interest to Chrysler, LLC. The core of FCA's argument, however, is that in the Sale Order, the Bankruptcy Court ruled that FCA would have no liabilities for any claims which existed against Chrysler except for those liabilities which it expressly assumed. ECF No. 171-3, PageID.18100-101 ¶ 35. Thus, Defendant FCA alleges the "Sale Order expressly and unequivocally bars all claims against FCA US 'related to the production of vehicles prior to the Closing Date,' except for those expressly assumed by FCA US." ECF No. 171, PageID.18039.

The material term of the Sale Order provides as follows:

Except for the Assumed Liabilities expressly set forth in the Purchase Agreement or described therein or Claims against any Purchased Company, ***none of the Purchaser, its***

4

> **successor or assigns or any of their respective affiliates
> shall have any liability for any Claim that** (a) arose prior
> to the Closing Date, (b) **relates to the production of
> vehicles prior to the Closing Date** or (c) otherwise is
> assertable against the Debtors or is related to the Purchased
> Assets prior to the Closing Date. The Purchaser shall not be
> deemed, as a result of any action taken in connection with the
> Purchase Agreement or any of the transactions or documents
> ancillary thereto or contemplated thereby or the acquisition
> of the Purchased Assets to: (a) be a legal successor, or
> otherwise be deemed a successor to the Debtors (other than
> with respect to any obligations arising under the Assumed
> Agreements; from and after the Closing); (b) have, de facto, or
> otherwise, merged with or into the Debtors; or (c) be a mere
> continuation or substantial continuation of the Debtors or the
> enterprise of the Debtors. Without limiting the foregoing, the
> **Purchaser shall not have any successor, derivative or
> vicarious liabilities of any kind or character for any
> Claims**, including, but not limited to, on any theory of
> successor or transferee liability, de facto merger or continuity,
> environmental, labor and employment, **products** or antitrust
> **liability, whether known or unknown as of the Closing,
> now existing or thereafter arising,** asserted or unasserted,
> fixed or contingent, liquidated or unliquidated. *Id.*

(emphasis added). ECF No. 171-3, PageID.18100-101 ¶ 35

Accordingly, FCA claims the Sale Order bars the following Select
Plaintiffs (Bledsoe, Erben, Forshaw, Witberg, and Chouffet) from
bringing a claim because they purchased their vehicles prior to the
Closing Date.  As FCA summarizes in its motion, citing to paragraphs in
the SCAC:

> Bledsoe purchased a model-year 2007 Dodge Ram 2500 truck
> in September 2007. SCAC, ¶ 41. Erben purchased a model-
> year 2008 Dodge Ram 2500 truck in May 2008. *Id.* at ¶ 46.
> Forshaw purchased a model year 2007 Dodge Ram 3500 truck

in April 2008. *Id.* at ¶ 49. Witberg purchased a model-year 2008 Dodge Ram 2500 truck in July 2008. *Id.* at ¶ 50. Chouffet purchased a model-year 2009 Dodge Ram 2500 truck in May 2009. *Id.* at ¶ 53.

ECF No. 171, PageID.18048. In addition, FCA also points out that Plaintiffs claims are all grounded in fraud, which the Sale Order unequivocally precludes for pre-bankruptcy vehicles purchased prior to June 10, 2009.

In response, Plaintiffs argue that on two separate occasions—in its 2017 and 2019 motions to dismiss—FCA previously urged the Court to dismiss the claims of certain plaintiffs based on Chrysler's bankruptcy in 2009. See ECF Nos. 27, 68. And in its Orders deciding both motions, because this Court did not explicitly accept FCA's arguments, the case of the law doctrine precludes FCA from presenting the same argument, in the same action, again.

## II.   STANDARD OF REVIEW

In a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), district courts must take as true "all well-pleaded material allegations of the pleadings of the opposing party." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 578 (6th Cir. 1973)). A motion for judgment on the pleadings uses the same standard as for a motion to dismiss under Rule 12(b)(6). *Warriors Sports, Inc. v. National Collegiate Athletic Ass'n.*, 623 F.3d 281, 284-85 (6th Cir.

2010). The motion may be granted "only if the moving party is nevertheless clearly entitled to judgment." *Id*. But courts "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Paskvan v. City of Cleveland Civil Serv.* Comm'n, 946 F.2d 1233, 1235 (6th Cir. 1991).

Where, as here, the motion is filed by the defendant, "[t]he court must construe the complaint in a light most favorable to the plaintiff." *Lowden v. Cty. of Clare,* 709 F. Supp. 2d 540, 545 (E.D. Mich. 2010) (quoting *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir.1998)). [A]ll of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." *Id*. (quoting 5C Wright & Miller, Federal Practice & Procedure § 1368).

Consideration of a motion under Rule 12(b)(6) or Rule 12(c) is generally confined to the pleadings. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Courts may, however, consider any exhibits attached to the complaint or the motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.

2001)). The exhibits attached by the parties in this case satisfy those parameters.

## III.   DISCUSSION

### A. FCA's Motion is not Untimely

FCA moves for judgment on the pleadings against the Select Plaintiffs on the grounds that the Bankruptcy Court Order precludes relief for claims grounded in fraud. In response, Plaintiffs interpose two procedural objections: 1) FCA's motion is untimely; 2) FCA's defense is barred by the law of the case doctrine.

First, Plaintiffs claim that FCA's motion for judgment on the pleadings is untimely because Defendant is essentially attempting to file a tardy motion for reconsideration, which must be filed within 14 days of the entry of the court's Order. *See* E.D. Mich. L.R. 7.1(h)(1). Second, Plaintiffs argue, even if FCA's motion were timely, FCA fails to meet the requirements for requesting a motion to reconsider because FCA is attempting to bring the same arguments that have already by decided upon by this Court.

Under Rule 59(e) the Court "may grant a . . . motion to alter or amend judgment . . . if there is: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). This standard is consistent

with the language found in this District's Local Rules. *Id.* Under Local Rule 7.1, the Court generally will not grant motions for rehearing or reconsideration unless there was a mistake, an intervening change in the law, or new facts that were not discoverable with reasonable diligence, such that it would affect the outcome of the decision. Notably, FCA's motion is not arguing that the Court made a mistake, or that there was an intervening change in the law or that new facts have been discovered that would affect the Court's prior ruling.

Nevertheless, Plaintiffs contend that FCA presented the argument made here in prior motions and the Court's disposition of those motions did not accept FCA's argument, thereby indicating that it was implicitly rejected by the Court.  As will be explained, however, the Court disagrees with Plaintiffs' contention.

In its motion to dismiss Plaintiffs' Consolidated and Amended Class Action Complaint ("CAC") pursuant to Rule 12(b)(6), FCA sought dismissal, in part, of certain Plaintiffs because of the bankruptcy. FCA argued that the claims of Select Plaintiffs "should be dismissed" because "they are barred by a Sale Order entered in the Chrysler Bankruptcy." ECF No. 27 at PageID.3635. FCA contended that "[a]ll Dodge Ram 2500 or 3500 trucks manufactured prior to June 10, 2009 were manufactured by Chrysler LLC – not FCA." *Id.* at PageID.3635–36 (citing *In re Old Carco LLC/Ricks*, 2013 WL 1856330, at *2 (Bankr. S.D.N.Y. May 2, 2013)).

But this Court did not address this particular argument and instead dismissed the Complaint on other grounds without prejudice, determining that Plaintiffs failed to adequately allege an injury in fact that would "allow this Court to draw a reasonable inference that the results from Plaintiffs' PEMS testing of one vehicle plausibly shows the presence of a defeat device." *See* ECF No. 60, PageID.8295; *Bledsoe v. FCA US LLC*, 307 F. Supp. 3d 646, 654 (E.D. Mich. 2018) ("*Bledsoe I*").

Although FCA had a second opportunity to appropriately raise these issues it failed to do so in any detail. Instead, in its motion to dismiss the Second Consolidated and Amended Class Action Complaint ("SCAC"), FCA stated in a footnote that it had raised several grounds for dismissal other than standing in its first motion (including the bankruptcy bar), and it would be ready to discuss those grounds at oral argument or at the Court's request. ECF No. 68, PageID.10255 fn.2. As the issue was not fully joined by the parties, the Court did not discuss FCA's footnote in *Bledsoe II*, and again based its decision on other grounds that were fully developed in the briefing, denying the motion to dismiss as to all claims except the MMWA claim. ECF No. 97; *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626 (E.D. Mich. 2019) (*Bledsoe II*).

For a prior decision to control, the prior tribunal must have actually decided the issue. Wright et al., supra, § 4478. "A position that has been assumed without decision for purposes of resolving another issue is not

the law of the case." *Id. Howe v. City of Akron*, 801 F.3d 718, 739–40 (6th Cir. 2015).

In both *Bledsoe I* and *Bledsoe II*, the Court never addressed FCA's bankruptcy Order-related arguments. Therefore, although Plaintiffs are essentially correct that FCA is presenting the same argument for a third time, the prior decisions do not control the disposition of this issue because the Court did not rule on it.  Accordingly, FCA's Motion cannot properly be considered an untimely motion for reconsideration and the interests of justice demand that this Court decide this pertinent question before this case can proceed any further.

## B. The Law of the Case Doctrine does not bar FCA's Defense

FCA's defense is not barred by the law of the case doctrine for the same reasons. The law of the case doctrine provides that courts should not reconsider a matter once resolved in a prior proceeding. *Howe v. City of Akron,* 801 F.3d 718, 739 (6th Cir. 2015) (*Howe II*). "The purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *Howe II*, 801 F.3d at 739 (emphases in original) (internal citations and quotations omitted); *see also Arizona v. California*, 460 U.S. 605, 618 (1983) ("the [law-of-the-case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); 18B Charles Alan Wright et al., Federal Practice & Procedure: Jurisdiction & Related Matters §

11

4478 (4th ed. 2015) ("Law-of-the-case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.") (footnotes omitted)

The doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pelzer v. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506, (2011)). It is, however, a prudential doctrine that merely "directs [our] discretion, it does not limit [our] power." *Id.* (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983)). "We may revisit our prior holdings when confronted with new evidence or relevant law, or if we are convinced our prior decision was clearly erroneous and adhering to it would work a manifest injustice." *Id; see White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir. 1967); *see generally* 18B Wright, et al., supra, § 4478.

In *Howe II*, defendant requested that the Sixth Circuit grant a full review of plaintiff's liability judgments made in *Howe I*, contending that *Howe I* was a review of a preliminary injunction, and therefore did not provide a full review of defendant's arguments.  The Sixth Circuit, in finding that the doctrine of law of the case applied, determined that the court had "carefully considered" each argument that defendant raised as to why the plaintiffs' liability judgment would not be upheld on appeal and issued a reasoned judgment.  *Id.* at 741 (quoting *Entergy, Arkansas, Inc. v. Nebraska*, 241 F.3d 979, 987 (8th Cir. 2001)). Therefore, the Court

12

of Appeals' prior ruling, in upholding the district court's preliminary injunction that plaintiffs were likely to prevail on the merits of their claims, was law of the case.

Plaintiffs correctly point to the fact that the law of the case doctrine is applicable to formerly raised issues that are addressed "implicitly or by necessary inference from the disposition." *Burrell v. Henderson*, 483 F. Supp. 2d 595, 598 (S.D. Ohio 2007) (citing *McKenzie v. BellSouth Telecomm. Inc.,* 219 F.3d 508, 513 n. 3 (6th Cir.2000) (internal quotations and citations omitted). However, that is not the case here. As already discussed, neither *Bledsoe I* nor *Bledsoe II* addressed expressly, or implicitly, whether Chrysler's bankruptcy Sale Order shielded FCA from liability as to some of the plaintiffs' claims. In both of the previous Orders, the grounds upon which the Court ruled were completely independent of this issue. Therefore, those Orders did not create law of the case regarding the arguments raised in FCA's motion.

## C. The Bankruptcy Court's Sale Order Precludes Relief for Select Plaintiffs' Claims

FCA points out that the SCAC alleges it should be liable for acts committed when the vehicles were sold, specifically, that FCA made representations at the point of sale concerning the emissions and fuel economy of the Trucks that were false or misleading, that the Trucks had a device that resulted in excess emissions, and that the Plaintiffs therefore paid more for the Trucks than they should have.  The SCAC

makes these claims directly against FCA, it does not allege any form of successor liability between FCA and Chrysler, LLC.  FCA contends that the SCAC fails to make any connection between the purchase of the Select Plaintiffs' vehicles, all of which were manufactured and sold before June 10, 2009, and FCA—because FCA did not exist at the time of purchase.

But even if the Court were to somehow construe the SCAC as effectively alleging successor liability, the terms of the Bankruptcy Court Sale Order (ECF No. 171-3) specifically bar recovery for successor liability against FCA for conduct by Old Chrysler, the company which manufactured and sold Select Plaintiffs' vehicles prior to 2009. In response, Plaintiffs argue "FCA's efforts to use the Sale Order to escape liability violates the Due Process Clause of the U.S. Constitution." *See In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016).

A bankruptcy court has "arising under" or "arising in" jurisdiction to decide the scope of a sale order provision authorizing certain assets to be sold "free and clear of liens." *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 665 (1st Cir. 2017); *see also Elliott v. GM LLC* (*In re Motors Liquidation Co.*), 829 F.3d at 153 ("A bankruptcy court's decision to interpret and enforce a prior sale order falls under . . . 'arising in' jurisdiction."). A bankruptcy court may approve a § 363 sale [the type of sale conducted here] "free and clear" of successor liability claims if those claims flow from the debtor's ownership of the sold assets. Such a claim must arise from a

14

(1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim. Further, there must be some contact or relationship between the debtor and the claimant such that the claimant is identifiable. *In re Motors Liquidation Co.*, 829 F.3d at 156.

Accordingly, FCA argues that "[t]his District has expressly recognized it should 'defer to the bankruptcy court's interpretation of its sale order because it plainly had jurisdiction to interpret its own prior orders.'" ECF No. 171, PageID.18053 (citing *Grundy v. FCA US LLC*, 2020 WL 7353515, *3 (E.D. Mich. 2020) (citation and internal punctuation omitted).

Indeed, in an unpublished opinion, Judge Stephen J. Murphy, III, held that a bankruptcy court's interpretation of its sale order supersedes this Court's authority because the bankruptcy court has "'jurisdiction to interpret . . . its own prior orders.'" *Grundy*, 2020 WL 7353515 at *3 (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). There, the Court dismissed Plaintiffs' request for injunctive relief with respect to its breach of warranty claims, deferring to the prior bankruptcy court proceeding where the court determined that recovery against FCA for claimants who purchased vehicles from FCA's predecessor—Chrysler— was limited to the costs of repairs and labor for any alleged damages.

Similarly, FCA points to prior proceedings before the bankruptcy court in which that court interpreted its Sale Order, limiting FCA's

liability to costs for repairs.  In *In re Old Carco LLC/Tulacro v. Chrysler Group LLC*, Plaintiff attempted to bring suit against FCA under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et. seq. (the "Song-Beverly Act") based upon a failure to repair certain alleged defects in plaintiff's 2003 Dodge vehicle which was manufactured by the debtors and purchased as a used vehicle 6 years prior to entry of the Sale Order. Adv. Proc. No. 11-09401 (S.D.N.Y. October 28, 2011) ("*Tulacro*"); ECF No. 171-4. FCA moved to dismiss the complaint, arguing that plaintiff's claims were barred by the Sale Order approving the sale of substantially all of the debtors' assets to Chrysler Group, free and clear of all claims other than liabilities expressly assumed by FCA, pursuant to Section 363 of title 11 of the United States Code (the "Bankruptcy Code").

The Sale Order authorized the debtors to enter into a Master Transaction Agreement ("MTA") with Chrysler Group, with a closing date of June 10, 2009. The bankruptcy court agreed with FCA, finding that the Song-Beverly Act is a "lemon law" and that pursuant to Paragraph 19 of the Sale Order, FCA only assumed lemon-law liabilities for vehicles manufactured by the debtors in the five years prior to the Closing Date. In interpreting the Sale Order, the bankruptcy court determined FCA could not be held liable for the breach of warranty claim because Paragraph 19 of the Sale Order served as "exclusive source" for FCA US's liabilities for claims relating to motor vehicles manufactured

16

prior to June 10, 2009, "whether the claims arose before or after" it was entered, *id.* at PageID.18116, and FCA did not assume liability with respect to vehicles manufactured prior to June 10, 2004.

Subsequently, *In re Old Carco LLC/Tatum v. Chrysler Group LLC*, the bankruptcy court expressly addressed the issue of FCA's liabilities for fraud-based claims arising out of sales of vehicles prior to June 10, 2009. Adv. Proc. No. 11-09411 (S.D.N.Y. February 15, 2012) ("*Tatum*"); ECF No. 171-5. Rejecting the plaintiff's argument that the Sale Order could be interpreted as allowing fraud claims as "a mechanism to enforce lemon-law claims," the court unequivocally stated that under the Sale Order the relief available from FCA for claims related to vehicles sold before the "Closing Date" is "limited to the costs of repairing parts and labor," and "[t]o the extent [] any repair is not effective, in that the parts and labor provided do not prevent the reoccurrence of the problem, that liability was not assumed" by FCA. ECF No. 171-5, PageID.18124; *See also In re Old Carco LLC/Ricks*, 2013 WL 1856330, *5 (Bankr. S.D.N.Y. May 2, 2013) ("*Ricks*"); ECF No. 171-6, PageID.18130. ("[FCA] did not assume any liabilities based on fraud or fraudulent practices, and accordingly, the fraud claims are dismissed."); *see also Burton v. Chrysler Group LLC*, 492 B.R. 392, 405 (S.D.N.Y. June 26, 2013) (FCA "did not assume any liabilities with respect to any pre-existing defects except for the Repair Warranty, Lemon Law claims and Product Liability claims involving accidents," "had no duty to extend lifetime warranties to any

17

owner" of a vehicle it did not sell, "did not assume Old Carco's duty to warn its customers," and, in fact, "any claim based on the breach of Old Carco's duty to warn [was] barred by the Sale Order.").

Plaintiffs argue that the present facts are inapposite to *Grundy*, and instead resemble those of *In re Motors Liquidation Co.*, where the Second Circuit overruled the bankruptcy's court's interpretation of a sale order on grounds that plaintiffs had been deprived of due process.

The Due Process Clause provides, "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Certain procedural protections attach when "deprivations trigger due process." *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991). Generally, legal claims are sufficient to constitute property such that a deprivation would trigger due process scrutiny. *See Lewis v. Whirlpool Corp.*, 630 F.3d 484, 490 (6th Cir. 2011); *In re Motors Liquidation Co.*, 829 F.3d at 158. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

In *Mullane* the Supreme Court held that "whether a particular form of notice satisfies due process requirements depends on whether that form of notice 'is in itself reasonably certain to inform those affected . . .'"

*In re Park Nursing Ctr., Inc.,* 766 F.2d 261, 263 (6th Cir. 1985) (quoting *Mullane*, 339 U.S. at 315). "[N]otice must be such as is reasonably calculated to reach interested parties." *Id.* (quoting *Mullane*, 339 U.S. at 318). This requirement also applies to bankruptcy proceedings. *See Martin v. Wilks*, 490 U.S. 755, 762, n.2 (1989) ("[W]here a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate, legal proceedings may terminate preexisting rights if the scheme is otherwise consistent with due process." *See also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 529–530, n. 10 (1984) ("[P]roof of claim must be presented to the Bankruptcy Court . . . or be lost").

Plaintiffs claim Chrysler's 40-day bankruptcy violated the Select Plaintiffs' due process rights because Chrysler never provided direct notice to potential claimants like the Select Plaintiffs about its pending bankruptcy, and legal claims are "property" under the due process doctrine.

In *In re Motors Liquidation Co.*, plaintiffs sought to bring a class action lawsuit before the bankruptcy court against New GM after it began recalling cars due to a potentially lethal ignition switch defect. Many of the cars in question were built years before the Old GM filed for bankruptcy. In the bankruptcy proceeding, under a process authorized in 11 U.S.C. § 363 of the Bankruptcy Code, Old GM was allowed to sell its assets to New GM "free and clear" of Old GM's liabilities. In plain terms,

where individuals might have had claims against Old GM, a "free and clear" provision in the bankruptcy court's sale order barred those same claims from being brought against New GM as the successor corporation. *Id.* at 143. Nonetheless, plaintiffs initiated class action lawsuits against New GM before the bankruptcy court, seeking to assert "successor liability" claims and requesting damages for losses and injuries arising from the ignition switch defect and other defects in vehicles manufactured and sold by Old GM.

New GM argued that, because of the "free and clear" provision, claims could only be brought against Old GM, and not New GM. But Plaintiffs challenged the bankruptcy court's ability to enforce the sale order against them because, they claimed, they did not receive notice of the bankruptcy proceeding sufficient to satisfy due process. The Second Circuit reversed the bankruptcy court's determination that plaintiffs were not prejudiced by the lack of notice because the bankruptcy court would have approved the sale order even if Plaintiffs had been put on notice. *Id.* at 161–65. Rejecting the bankruptcy court's conclusion regarding prejudice, the Second Circuit held that knowledge about existing claims would have likely changed the terms of the sale order, particularly in a case where the U.S. government was a large stakeholder and participant in the negotiation of the sale, and the order had also been amended after objections were made by a group of state attorneys general. *Id.* The Second Circuit determined that the sale order barred

pre-closing accident claims and economic losses arising from the ignition switch defects or other defects, but not independent claims relating only to New GM's conduct or used car purchasers' claims. *Id*. at 156.

In reaching its conclusion, the Second Circuit considered many aspects unique to the case before it, noting that the bankruptcy court failed to recognize that the terms of the § 363 sale were not within its exclusive control. Instead, the GM sale was a negotiated deal with input from multiple parties—Old GM, New GM, the United States Treasury, and other stakeholders. *Id*. at163. The Court also noted that had the ignition switch defect been revealed in the course of the bankruptcy proceeding before the sale order was adopted, plaintiffs could have petitioned the government, as the majority owner of New GM, to consider how millions of faultless individuals with defective Old GM cars could be affected. Indeed, during the later congressional hearings, Representatives and Senators questioned New GM's CEO on her invocation of the liability shield when the government guided the process. *Id*. at 165.

The Second Circuit also discussed the considerable record before the bankruptcy court showing that Old GM was aware of complaints concerning the ignition switch defect going back to 2002, which included an investigation by the National Highway Traffic Safety Administration (NHTSA), articles in the news media in 2005, and even a police report associating the defect with fatalities in 2005-06. *Id*. at 148-51. Because

the ignition switch claims were known or reasonably ascertainable by Old GM prior to the bankruptcy sale, the plaintiffs were entitled to actual notice of the terms of the sale order before it went into effect.  *Id.* at 151. The Second Circuit explained, "If the debtor knew or reasonably should have known about the claims, then Due Process entitles potential claimants to actual notice of the bankruptcy proceedings, but if the claims were unknown, publication of notice suffices." *Id.* at 159.   Accordingly, "[t]he bankruptcy court found that because Old GM knew or reasonably should have known about the ignition switch defect prior to bankruptcy, it should have provided direct mail notice to vehicle owners." The Second Circuit found no clear error in that factual finding. *Id.*

In the case before the Court, the SCAC does not contain allegations sufficient to suggest that, at the time the Chrysler bankruptcy order was approved in 2009, that either Chrysler or FCA had sufficient information to be aware of the specific claims of the Select Plaintiffs.   Rather, the theory in this case is that Chrysler and Cummins essentially designed the engines and vehicles to be defective from the very beginning.

Here, Plaintiffs' SCAC alleges:

> FCA and Cummins' business decision to install defeat devices in the 2500 and 3500 trucks at issue here, was spurred by the EPA's 2001 announcement that stringent emissions standards for heavy-duty highway diesel engines would take effect in 2010. Cummins Inc. and Chrysler (now known as FCA US LLC) saw a golden business opportunity, and worked together to build a truck that, at least on paper, met these standards, three years ahead of schedule. (footnotes omitted)

ECF No. 62, PageID.8341-42, ¶ 15. Additionally, Plaintiffs contend:

> The comprehensive body of evidence set forth below plausibly demonstrates that the Dodge Ram 2500 and 3500, model years 2007-2012 diesel vehicles (the "Polluting Vehicles") have at least two designed software features that operate to derate or turn down the emissions controls when the vehicle operates outside the test environment. When the Polluting Vehicles are not in a test environment, they emit massive amounts of NOx well in excess of the legal standard and at levels inconsistent with the promises that FCA and Cummins made.

*Id.* at PageID.8338, ¶6. According to Plaintiff's theory then, Chrysler and FCA knew, or at the very least should have known, that these vehicles would have had defects that could lead to possible claims being brought. But this allegation is a far cry from the kind of record of prior complaints and evidence of an actual defect that was before the bankruptcy court in *In re Motors Liquidation Co.*

Still, Plaintiffs contend "[a]t the very least, notice provided to Plaintiffs is a factual dispute that cannot be resolved on a Rule 12(c) motion." ECF No. 180, PageID.20897.

Plaintiffs also cite to a more recent Sixth Circuit case, where the Court held a bankruptcy sale order did not bar prebankruptcy purchasers' interests, or right to seek relief, where purchasers did not receive adequate notice of the pending bankruptcy proceeding. *In re HNRC Dissolution Co.*, 3 F.4th 912, 919 (6th Cir. 2021); *See also In re Nortel Networks, Inc.*, 531 B.R. 53, 62 (Bankr. D. Del. 2015), citing *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953); (In

23

bankruptcy, "a creditor who does not receive proper notice of the claims bar date is not bound thereby.")  As in the GM case, the Sixth Circuit found that because the purchaser's interest was "known" or "reasonably ascertainable" to the debtor at the time of the bankruptcy sale, it was entitled to direct notice of the proceeding rather than notice by publication.  *In re HNRC,* 3 F.4th at 919.

In both *In re Motors Liquidation Co*., and *In re HNRC*, the record before the bankruptcy court established that plaintiffs were owed notice of the pending bankruptcy proceeding either due to a known defect (*In re Motors Liquidation Co.*), or because plaintiffs had a known interest in the property being conveyed to a successor (*In re HNRC*). Here, Plaintiffs argue that this Court should find a due process violation on the strength of its allegation that a defeat device exists, Chrysler knew of its existence prior to the bankruptcy proceeding, and therefore plaintiffs were owed notice of the defect.

But the purpose of the Sale Order was clearly intended to bar just this kind of "after-the-fact" claim.  It would not have been possible for Chrysler or the bankruptcy court to identify known claimants as to this alleged defeat device, or false and misleading claims by Chrysler regarding the efficiency of the Trucks' engines, because those claims by plaintiffs had not been made yet.

Plaintiffs' position rests on the untenable expectation that a bankrupt automaker—one that does not believe it intentionally designed

a defective engine or exhaust system or misrepresented their performance to buyers—should be responsible for notifying all existing purchasers of the Trucks of their possible claims for the conduct that the automaker does not believe it committed. Consequently, this Court finds that Plaintiffs' due process argument is misapplied.  Because Plaintiffs have not alleged proof of claims filed prior to, or during the bankruptcy proceeding, alleging facts that relate in any way to the existence of a defeat device, the Sale Order became binding once the Sale Order was entered. 11 U.S.C. § 1141(d)(1)(A)(i); *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 530 (1984) ("[T]he filing of a proof of claim is a necessary condition to the allowance of an unsecured or priority claim, since a plan of reorganization is binding upon all creditors once the plan is confirmed, whether or not the claim was presented for administration.")

The terms of the Sale Order cover the Select Plaintiffs' claims, and there is insufficient evidence pleaded in the SCAC to support the argument that those claims would have been known or reasonably ascertainable to the debtor so as to require direct notification.

### D. Plaintiffs' Continued Tortious Conduct Claim Fails because Select Plaintiffs are barred by the Bankruptcy Court's Sale Order from Recovering Relief

Finally, Plaintiffs argue that Chrysler's bankruptcy does not absolve FCA for "tortious conduct that involved pre-bankruptcy vehicles." ECF No. 180, PageID.20893. Plaintiffs claim that FCA breached its duty

*after* the Sale Order with respect to *all* Class Vehicles. Specifically, Plaintiffs allege that FCA continued to make false statements through its advertisements and sales brochures, and omitted material information concerning *all* Class Vehicles, including failing to disclose deficiencies of those vehicles and using emissions credits to build larger and heavy-polluting vehicles. ECF No. 62, PageID.8413–16; ECF No. 180, PageID.20898.

For the same reasons this Court finds Plaintiffs' claims are barred by the Sale Order, the Court also finds that Plaintiffs' tortious conduct claim fails. Plaintiff continues to assert fraud-based claims against FCA on behalf of Select Plaintiffs and alleging FCA breached its duty to warn or disclose is a claim grounded in fraud. As FCA notes, the Bankruptcy Court has "unequivocally" established that all fraud-based claims against FCA are "barred and must be dismissed because they arise out of vehicles manufactured and sold prior to June 10, 2009." ECF No. 171, PageID.18052. Because Select Plaintiffs purchased vehicles that were manufactured and sold prior to FCA's existence, these vehicles could not have been purchased upon the reliance of alleged false statements proffered by FCA. Therefore, Plaintiffs' claims for tortious conduct as it pertains to these Select Plaintiffs, can only be cognizable as a duty to warn or disclose claim, which "'is a typical successor liability case dressed up to look like something else, and is prohibited by the plain language of the bankruptcy court's Order.'" *Burton v. Chrysler Group*, LLC (*In re Old*

*Carco LLC*), 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013) (quoting *Otoski v. Avidyne Corp.,* 2010 WL 4739943, at \*7 (D.Or. Oct. 6, 2010) (report and recommendation), *adopted,*2010 WL 4737815 (D.Or. Nov. 15, 2010)).

Moreover, even if plaintiff had alleged successor liability against FCA in its SCAC, the Select Plaintiffs' claims would still fail because Plaintiffs have failed to plausibly plead FCA had a duty to warn prebankruptcy purchasers of vehicles purchased or manufactured before the Closing Date.

In *Burton*, the bankruptcy court established the standard for prevailing on a successor's duty to warn claim post-bankruptcy:

> New Chrysler did not assume Old Carco's duty to warn its customers about the "fuel spit back" problem, and any claim based on the breach of Old Carco's duty to warn is barred by the Sale Order. Nevertheless, the law may impose a separate duty to warn on New Chrysler. Here, New Chrysler purchased Old Carco's assets. Succession alone does not impose a duty to warn a predecessor's customers of pre-existing defects, *Florom v. Elliott Mfg.*, 867 F.2d 570, 577 (10th Cir. 1989); *Travis v. Harris Corp.*, 565 F.2d 443, 448–49 (7th Cir. 1977), but the duty may arise where the successor (1) succeeds to the predecessor's service contracts that cover the particular machine, (2) actually services the machine, (3) is aware of the defect and (4) knows the location of the machine's owner. *Florom*, 867 F.2d at 577; *Polius v. Clark Equip. Co.*, 802 F.2d 75, 84 (3d Cir. 1986); *Travis*, 565 F.2d at 449; *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 464 N.Y.S.2d 437, 451 N.E.2d 195, 199 (1983); Restatement (Third) of Torts § 13 cmt. b (1998). In these circumstances, the law imposes a duty to warn because the successor has entered into a relationship with the customer and derives an actual or potential economic benefit. *Schumacher*, 451 N.E.2d at 199.

*Holland v. FCA US LLC*, 656 F. App'x 232, 239 (6th Cir. 2016) (quoting *Burton*, 492 B.R. at 405). Moreover, the bankruptcy court in *Burton* emphasized the importance of the type of injury in determining whether there is a duty to warn:

> The duty to warn cases typically involve a plaintiff who suffers a personal injury because someone failed to warn him about a dangerous product, and the failure to warn *proximately caused* his *subsequent* injury.

*Id.* at 240 (quoting Burton, 492 B.R. at 405) (italics in original). Similar to the courts' holdings in *Burton* and *Holland*, this Court finds that Plaintiffs have failed to plausibly allege that an economic relationship existed between FCA and Select Plaintiffs, that Select Plaintiffs suffered the type of injury the duty to warn was designed to protect, or that FCA proximately caused their economic injury.

First, Plaintiffs do not allege the existence of a current service contract between Select Plaintiffs or that an injury resulted from FCA's servicing of these vehicles, thereby giving rise to an economic relationship. Second, Select Plaintiffs allege they suffered an economic injury, not a personal one. Third, and most important, Plaintiffs have failed to plausibly allege that FCA's failure to warn Select Plaintiffs that they purchased an allegedly defective vehicle manufactured by Old Chrysler *proximately caused* their economic injury.

Plaintiffs allege they have suffered an economic injury for overpaying for a vehicle that does not meet the emissions standards and

28

fuel economy advertised, but Plaintiffs who made pre-bankruptcy purchases would have this injury "irrespective of any warning" issued by FCA sometime after their purchases took place. *Id*. The injuries were the result of the defect, not FCA's failure to warn. Thus, the Select Plaintiffs have failed to sufficiently allege that FCA's failure to warn *caused* their injury to survive a motion for judgment on the pleadings. *Id*.

## CONCLUSION

For all of the above reasons, Defendant FCA's Motion for Judgment on the Pleadings as to the claims of Plaintiffs Bledsoe, Erben, Forshaw, Witberg, and Chouffet is **GRANTED**.  Judgment may be entered in favor of FCA as to those Plaintiffs only.

Plaintiffs Bledsoe, Erben, Forshaw, Witberg, and Chouffet may no longer serve as Class Representatives regarding any claims against Defendant FCA.

In view of this decision, the Court will schedule a status conference with the parties to discuss its effect on the pending motions for class certification and other motions.

**IT IS SO ORDERED.**

Dated: March 31, 2022          s/Terrence G. Berg
                              TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE

29